# UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| In re:<br><br>　　NEW ENGLAND CONFECTIONERY<br>　　COMPANY, INC.,<br><br>　　Debtor. | **Chapter 7**<br>**(conversion pending)**<br><br>**Case No. 18-11217-MSH** |

## INTERIM ORDER (I) AUTHORIZING DEBTOR TO OBTAIN POSTPETITION SECURED FINANCING; (II) AUTHORIZING DEBTOR TO USE CASH COLLATERAL; (III) GRANTING ADEQUATE PROTECTION TO PREPETITION SECURED LENDER; AND (IV) MODIFYING THE AUTOMATIC STAY

Upon the motion, dated April 16, 2018 (the "Motion")[1] of New England Confectionery

Company ("NECCO"), as debtor and debtor-in-possession in the above captioned case, for interim

and final orders under sections 105, 361, 362, 363(c), 364(c), 364(d) and 364(e) of title 11 of the

United States Code, 11 U.S.C. §§ 101, *et seq.* (as in effect for this case, the "Bankruptcy Code"),

and Rules 2002, 4001 and 9014 of the Federal Rules of Bankruptcy Procedure (as in effect for this

case, the "Bankruptcy Rules"), and Rule 4001-2 of the Local Rules of Bankruptcy Practice and

Procedure of the United States Bankruptcy Court for the District of Massachusetts (the "Local

Rules"), seeking:

> (I)　　authorization for the Debtor to obtain postpetition secured financing from the Lender (as defined below) in a principal amount outstanding at any time equal to the lesser of (x) one million five hundred thousand dollars ($1,500,000) or (y) the amount shown, for any week in the Approved Budget, as the "DIP Ending Balance (Maximum Outstanding DIP Balance)" for such week (the "Maximum Amount"), on the same terms and conditions as set forth in the Revolving Credit Agreement (defined below) subject to and as supplemented by this Interim Order,[2] together with all documents and instruments required to be delivered or executed pursuant thereto or in connection therewith, including,

---

[1] Capitalized terms used but not defined herein shall have the meaning assigned to such terms in the Motion.

[2] To the extent the terms and provisions set forth in the Revolving Credit Agreement and this Interim Order conflict, this Interim Order controls. Lender's rights, remedies and protections shall include those set forth in the Revolving Credit Agreement and those additional rights, remedies and protections set forth in this Interim Order.

without limitation, the Approved Budget (as defined below), in each case as hereafter amended, supplemented or otherwise modified from time to time with Lender's express written consent (the "Postpetition Financing Agreement") and to perform such other and further acts as may be necessary or appropriate in connection therewith;

(II)    authorization for the Debtor to (a) subject to the terms and provisions hereof, continue to use Cash Collateral (as defined below) pursuant to sections 361, 362 and 363 of the Bankruptcy Code, and all other Prepetition Collateral (defined below), and (b) provide adequate protection to the prepetition lender, ACAS, LLC, formerly known as American Capital, Ltd. (the "Lender") under the following documents (the "Prepetition Loan Documents"):

    A.    Credit Agreement, entered into on December 21, 2007, between NECCO as borrower, and American Capital Financial Services, Inc., as Lender's agent (in such capacity, "Agent"), as subsequently revised and amended, concerning certain loans made by Lender to NECCO (the "Term Loans").

    B.    Pledge and Security Agreement entered into on December 21, 2007, whereby NECCO, as borrower, granted to Agent, for the benefit of Lender, a lien on and security interest in all of its assets, including all accounts receivable, deposit accounts, inventory and proceeds thereof (the "Term Loan Collateral").

    C.    Loan and Security Agreement entered into on August 8, 2008, between NECCO, as borrower, and Core Business Credit, LLC ("Core"), as lender as subsequently revised and amended ("Revolving Credit Agreement") for revolving loans made by Core to the Debtor (the "Revolving Line of Credit"), with all advances and other amounts owed under the Revolving Line of Credit being secured by the Revolving Line of Credit Collateral (as defined below);[3] and

    D.    Deposit Account Control Agreement entered into on October 10, 2014, between Lender, NECCO and Eastern Bank, pursuant to which Lender perfected its interest in NECCO's deposit account at Eastern Bank (the "Account Agreement").

(III)    to schedule, pursuant to Bankruptcy Rule 4001, an interim hearing (the "Interim Hearing") on the Motion to be held before this Court to consider entry of the proposed interim order annexed to the Motion (the "Interim Order"); and

(IV)    to schedule, pursuant to Bankruptcy Rule 4001, a final hearing for this Court to consider entry of a final order approving the Motion.

---

[3] On August 8, 2008, Core assigned all of its rights under the Revolving Credit Agreement to Core Business Funding, LLC, which on November 1, 2010 assigned all such rights to Agent for the benefit of Lender.

The Interim Hearing having been held by this Court on April __, 2018; and this Court

having considered all of the pleadings, documents and other papers of record filed in connection

with the Motion and the Interim Hearing; and upon the record made by the Debtor at the Interim

Hearing, and after due deliberation and consideration and sufficient cause appearing therefore;

**IT IS FOUND, DETERMINED, ORDERED AND ADJUDGED,** that:

1.    *Jurisdiction.* This Court has jurisdiction over this chapter 11 case pursuant to 28

U.S.C. § 1334. The Motion is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper

before this Court pursuant to 28 U.S.C. §§ 1408 and 1409. The Debtor is operating its business as

debtor-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.[4] An official

committee of unsecured creditors (a "Committee") had not been appointed as of the time of the

Interim Hearing.

2.    *Notice.* On April 1̲7̲, 2018, the Debtor filed the Motion with this Court and

pursuant to Bankruptcy Rules 2002, 4001 and 9014, and the Local Rules, the Debtor provided

notice of the Motion and the Interim Hearing by ~~[INSERT METHOD(S) OF NOTICE]~~ *the means specified in the Cert. of service* to the *#50*

following parties and/or to their counsel as indicated below: (ii) holders of the thirty (30) largest

unsecured claims against the Debtor; (iii) the Debtor's senior secured pre-petition lender; (iv) all

other secured or potentially secured creditors; (iv) all taxing authorities whom the Debtor believes

may have, or may, assert claims against the Debtor or any of the Debtor's assets; (v) counsel to

each of the petitioning creditors that are party to Involuntary Petition; and (vi) all parties who have

filed a notice of appearance and request for service of papers pursuant to Bankruptcy Rule 2002

(collectively, the "Notice Parties"). Given the nature and exigency of the relief sought in the

---

[4] This case was originally commenced as an involuntary chapter 7 by three petitioning creditors (the "Petitioning Creditors"). On April 16, 2018, the Debtor consented to the entry of an order for relief and converted the case to chapter 11 pursuant to Bankruptcy Code § 706(a).

Motion, this Court concludes that the form, scope and timing of the foregoing notice was sufficient and adequate under the circumstances and complies with the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and any other applicable law, and no further notice relating to the Interim Hearing or Motion is necessary or required.

3.    *Debtor's Stipulations*.   Without prejudice to the rights of any other party (but subject to the limitations thereon contained below), the Debtor admits, stipulates and agrees that:

(a)    On and as of the Involuntary Date, the outstanding balance on the Term Loans was not less than $85,745,025, plus certain other amounts, including costs of collection;

(b)    On and as of the Involuntary Date, the outstanding balance on the Revolving Line of Credit was not less than $21,362,907, plus certain other amounts, including costs of collection;

(c)    On December 21, 2007, NECCO, as borrower, and Agent, for the benefit of Lender, entered into a Pledge and Security Agreement, whereby NECCO granted Agent a lien on and security interest in the Term Loan Collateral.   Agent perfected its security interest in the Term Loan Collateral by filing UCC-1 Financing Statements against NECCO, covering all assets;

(d)    As security for the Revolving Line of Credit, NECCO granted to Core a continuing security interest in, lien on and collateral assignment of, among other things, all of NECCO's personal property, including its right, title and interest in and to all accounts receivable, inventory, equipment, general intangibles, chattel paper, letter of credit rights, proprietary rights, instruments, documents and documents of title, investment property, deposit accounts, commercial tort claims, money, cash, cash equivalents,

4

securities and other personal property of any kind at any time held directly or indirectly by Core or any affiliate of Core, all books and records, whether in tangible or intangible form, all other assets, if any, and all accessions to, substitutions for and replacements, products and proceeds of any of the foregoing (the "Revolving Line of Credit Collateral"). On August 8, 2008, Core perfected its security interest in the Revolving Line of Credit Collateral by filing UCC-1 Financing Statements against NECCO.  On August 8, 2008, Core assigned all of its rights under the Revolving Credit Agreement (including its liens on and security interests in the Revolving Line of Credit Collateral) to Core Business Funding, LLC, which on November 1, 2010 assigned all such rights to Agent for the benefit of Lender.

   *(e)*  On October 10, 2014, Lender, NECCO and Eastern Bank executed a Deposit Account Control Agreement, pursuant to which Lender perfected its interest in NECCO's deposit account at Eastern Bank. Lender maintains a perfected first-priority security interest in NECCO's deposit accounts, both by reason of the Deposit Account Control Agreement and by reason of the status of funds in such accounts as proceeds of accounts receivable and inventory in which Lender has a first-priority security interest;

   *(f)*  Lender (or Agent on Lender's behalf) continues to maintain duly perfected, unavoidable, first priority liens on and security interests in the Term Loan Collateral and the Revolving Line of Credit Collateral, including but not limited to the Debtor' accounts, inventory, equipment, general intangibles and all proceeds thereof (such Collateral, together with all proceeds thereof, the "Prepetition Collateral"); and

   *(g)*  The aggregate indebtedness under the Term Loans and Revolving Line of Credit (collectively, the "Prepetition Obligations") constitute the legal, valid and

binding obligations of the Debtor, enforceable in accordance with their terms (other than in

respect of the stay of enforcement arising under section 362 of the Bankruptcy Code), and

the Debtor has no claims or counterclaims against Agent or Lender and no defenses to any

such Prepetition Obligations.

4.    *Effect of Debtor's Stipulations on Third Parties.*

In accordance with Local Rule 4001(d), the Debtor's stipulations set forth in

paragraph 3 of this Interim Order (the "Debtor's Stipulations") have been conspicuously

set forth and are approved by this Court notwithstanding their variance from the provisions

of Local Rule 4001(c). The Court finds that such variance is appropriate because, *inter*

*alia*, the right of other parties to challenge such stipulations is preserved, on the terms set

forth in this Interim Order. The Debtor's stipulations shall be binding on all parties-in-

interest, including, without limitation, any Committee appointed in the above-captioned

chapter 11 case and any trustee of the Debtor's estate (in this case or in any successor case,

including any chapter 7 case to which this case may be converted), unless, and solely to

the extent that such Committee, trustee, or other party-in-interest with standing and

requisite authority has timely filed the appropriate pleadings, and timely commenced the

appropriate proceedings, as required under the Bankruptcy Code and Bankruptcy Rules,

including, without limitation, as required pursuant to Part VII of the Bankruptcy Rules,

challenging the Debtor's Stipulations by no later than forty-five (45) days after entry of

this Interim Order. For the avoidance of doubt, notwithstanding payment of Excess

Proceeds (as defined in paragraph 5(f) below) to Lender on account of the Prepetition

Obligations, such proceeds (reduced by any re-advances by Lender under paragraph 5(g)

of this Interim Order) shall be subject to recovery pursuant to any final judgment obtained in an action brought in accordance with the preceding sentence.

5.    *The Postpetition Financing Agreement.*

The Lender has agreed to lend funds to the Debtor in accordance with the terms and provisions of the Revolving Credit Agreement (subject to and as supplemented by the terms of conditions provided in this Interim Order), in a principal amount not to exceed the Maximum Amount; *however*, notwithstanding any Borrowing Base limitations on availability set forth in the Revolving Credit Agreement, the Debtor shall have borrowing availability under the Postpetition Financing Agreement, to the extent set forth in this Interim Order and the Approved Budget. Such funds may be used solely for the purposes set forth in the Approved Budget, which is attached to this Interim Order as Exhibit A (the "Approved Budget"), and as provided for in this Interim Order. In connection therewith, the Debtor and the Lender have agreed and stipulated to the following terms and conditions, which the Court approves and orders:

(a)    The Debtor may exceed the Budget on a line-item or cumulative basis only with the advance consent of the Lender in Lender's sole discretion;

(b)    In accordance with the Revolving Credit Agreement, which shall govern all postpetition borrowings by the Debtor hereunder, subject to and as supplemented by the terms of this Interim Order, Lender shall have a first priority lien on any bank account(s) maintained by the Debtor (which lien shall be deemed perfected without the need for Lender to take any action, provided that Lender may in its discretion take such actions as it deems appropriate to further evidence such perfection), and Lender shall be entitled to sweep funds from such account(s) on a daily basis or as otherwise provided for under the Revolving Credit Agreement, provided that such swept funds shall be applied by

Lender to Postpetition Obligations (as defined below) and not to the Prepetition Obligations. Notwithstanding the foregoing, Lender shall not be obligated to sweep funds in the Debtor's accounts.  Any funds in Debtor's accounts that are not swept by Lender, and any other funds of the Debtor wherever located, shall be used only in accordance with the Approved Budget and this Interim Order;

(c)      Notwithstanding anything herein or in the Approved Budget, (i) the Debtor may not, without Lender's express written consent, borrow funds under the Postpetition Financing Agreement or spend any Cash Collateral for the payment of any expense or obligation unless and until such expense or obligation is due and payable, and (ii) any expense denoted on the Approved Budget as being payable only after consummation of an Approved Sale (as defined below) may not, without Lender's express written consent, be paid prior to consummation of such Approved Sale.

(d)      Notwithstanding that the terms and conditions of the Revolving Credit Agreement apply to the Postpetition Financing Agreement (i) any representation or warranty set forth in the Revolving Credit Agreement that would be untrue solely as a result of the Debtor's bankruptcy filing or the entry of this Interim Order shall not constitute an Event of Default under the Postpetition Financing Agreement, (ii) no Event of Default as defined in the Revolving Credit Agreement that occurred or existed solely prior to the Involuntary Date shall constitute an Event of Default with respect to the Postpetition Financing Agreement, and (iii) Debtor's failure to deliver to Lender certain Financial Statements and Projections as required by Section 7.6 of the Revolving Credit Agreement shall not constitute an Event of Default under the Postpetition Financing Agreement;

*however*, notwithstanding the foregoing, the following events shall each constitute an

Event of Default with respect to the Postpetition Financing Agreement:

(i)    Any Event of Default under the Revolving Credit Agreement arising on or after the entry of this Interim Order;

(ii)    any failure by the Debtor to timely pay any Postpetition Obligations to the Lender upon the Maturity Date (defined below) or when otherwise due;

(iii)    any representation or warranty made by Debtor in connection with the Postpetition Financing Agreement that is or was untrue in any material respect as of the date on which it was made;

(iv)    the use of proceeds of the Postpetition Financing Agreement or any Cash Collateral other than strictly in accordance with the Approved Budget, except to the extent Lender has expressly consented to such use of funds prior to such use;

(v)    failure of the Debtor in any material respect to satisfy its reporting requirements in connection with the Approved Budget, as provided for or contemplated by in the Revolving Credit Agreement or herein;

(vi)    denial by this Court of a motion for authority to enter into an Approved Sale, or an Approved Sale has not, for any reason, been consummated on or before May 6, 2018;

(vii)    ~~appointment of a chapter 11 trustee for the Debtor, appointment of an examiner for the Debtor, conversion of this chapter 11 case to a case under chapter 7 of the Bankruptcy Code, or dismissal of this case;~~

(viii)    entry of an order granting relief from the automatic stay to any party (other than one sought or consented to by Lender) permitting such party to take any action against the Debtor or any property of the estate;

(ix)    entry by the Court of any order (other than one sought or consented to by Lender) modifying, terminating or shortening the period during which the Debtor has the exclusive right to propose or to solicit acceptances of a chapter 11 plan;

(x)    commencement of any litigation by the Debtor or by any person acting or purporting to act by, through, or on behalf of the Debtor or its estate, against Lender or any person or entity affiliated with Lender;

(xi)    if Debtor is enjoined, restrained or in any way prevented by any legislative, administrative or regulatory action, or by any court order (other than an order of this Court consented to by Lender) from continuing to conduct all or any material part of its business;

(xii)    if Debtor shall grant or suffer any lien on any Postpetition Collateral without Lender's express written consent; or

(xiii)    failure by the Debtor to abide by any of its obligations set forth in this Interim Order.

(e)    Upon an Event of Default, the Lender shall have no obligation to provide any further financing or other advances or financial accommodations to the Debtor and shall have the right to request from this Court an emergency hearing, on three business days' notice, to seek relief from automatic stay (including without limitation for the purposes of exercising any or all rights and remedies available with respect to the Prepetition Collateral or the Postpetition Collateral, whether under the Postpetition Financing Agreement, the Prepetition Loan Documents, any other prepetition or postpetition agreements with the Debtor, this Interim Order, or applicable law) and any other relief as is just and proper, *provided, however,* that if the automatic stay is no longer in effect as to Lender, Lender may exercise all such rights and remedies without further order of this Court;

(f)    The following shall be conditions precedent to any advances under the Postpetition Financing Agreement within the first twenty days (20) following entry of this Order (collectively, the "Interim Conditions"): (i) All documentation relating to the Postpetition Financing Agreement shall be in form and substance satisfactory to Lender; (ii) The Court shall have entered an Interim Order approving the Postpetition Financing Agreement in form and substance acceptable to Lender; (iii) Lender shall be satisfied that all Postpetition Obligations are secured by valid, enforceable and non-avoidable first priority priming liens and security interests; (iv) there has been no Event of Default under the Postpetition Financing Agreement or any Court order related thereto, and no event that, with the passage of time or the giving of notice, could become an Event of Default; (v) the

Debtor shall not have sold any of its assets, outside the ordinary course of business, without Lender's consent; and (vi) if the Debtor has consummated a sale of all or substantially all of its assets in a transaction, and pursuant to documentation, that is acceptable to Lender (an "Approved Sale"), all proceeds from such Approved Sale shall have been paid to Lender for application first to the Postpetition Obligations, with any proceeds that exceed the amount of Postpetition Obligations ("Excess Proceeds") having been applied to the Prepetition Obligations. The following shall be conditions precedent to any advances under the Postpetition Financing Agreement after the date that is twenty (20) days from entry of this Order: (i) all of the Interim Conditions have been, and remain, satisfied in all respects; (ii) the Court shall have entered a Final Order approving the Postpetition Financing Agreement in form and substance acceptable to Lender; and (iii) the Debtor shall have consummated an Approved Sale and all proceeds from such Approved Sale shall have been paid to Lender for application first to the Postpetition Obligations, with any Excess Proceeds having been applied to the Prepetition Obligations.

(g)      Following Lender's receipt of the Excess Proceeds from the Debtor, any subsequent advances by Lender pursuant to the Postpetition Financing Agreement, up to the aggregate amount of such Excess Proceeds, shall be deemed immediately repaid by changing the application of an amount of Excess Proceeds paid to Lender equal to the amount of each such advance from the Prepetition Obligations to the Postpetition Obligations.

6.      *Findings Regarding the Postpetition Financing*.

(a)      *Good Cause*. Good cause has been shown for the entry of this Interim Order. The Debtor has an immediate need to obtain postpetition financing and to

continue to use the Prepetition Collateral, including Cash Collateral (as defined below), in order to, among other things, permit the orderly continuation of its business, preserve the going concern value of the Debtor, make payroll and satisfy other working capital and general corporate purposes of the Debtor.  The Postpetition Financing Agreement and the Debtor's continued use of the Prepetition Collateral (including Cash Collateral) are necessary to ensure that the Debtor has sufficient working capital and liquidity to preserve and maintain the going concern value of the Debtor's estate, during the course of this bankruptcy proceeding.  Further, the Postpetition Financing Agreement and the Debtor's continued use of the Prepetition Collateral (including Cash Collateral) are necessary to facilitate an orderly process (a) for NECCO's operations to be conducted until the assets of the business can be sold, and (b) for sale of NECCO's assets to take place on such terms and within such time frame as will maximize the value to be received for such assets.  The Debtor and its estate will suffer immediate and irreparable harm unless the Debtor is immediately authorized to obtain postpetition financing as contemplated herein and to use Cash Collateral on the terms and subject to the conditions set forth in this Interim Order.

   *(b)*  <u>*No Alternative Sources of Financing*</u>.  The Debtor is unable to obtain financing on more favorable terms than those provided for under this Interim Order.  The Debtor is unable to obtain adequate unsecured credit allowable under section 503(b)(1) of the Bankruptcy Code as an administrative expense.  The Debtor is also unable to obtain secured credit allowable under sections 364(c)(1), 364(c)(2), 364(c)(3) and 364(d) of the Bankruptcy Code other than from Lender on the terms set forth in this Interim Order.  Because the Debtor requires immediate financing in order to be able to continue to operate, so that it can preserve and realize the value of its assets through a sale transaction, and

because there is no source of financing available to the Debtor other than pursuant to the

Postpetition Financing Agreement as described in this Interim Order, denial of the relief

sought by the Debtor would result in an immediate liquidation of the Debtor and a resulting

substantial dissipation of value.

(c)    *Reasonably Equivalent Value*.    The terms of the Postpetition

Financing Agreement and the continued use of the Prepetition Collateral (including Cash

Collateral) pursuant to this Interim Order are fair and reasonable, reflect the Debtor's and

its officers' and directors' exercise of prudent business judgment consistent with their

fiduciary duties, and constitute reasonably equivalent value and fair consideration. The

Debtor requires both additional financing and the continued use of Cash Collateral under

the terms of this Interim Order for legitimate business purposes and in order to satisfy its

postpetition liquidity needs.    After considering all of its alternatives, the Debtor has

concluded, in an exercise of its sound business judgment, that the financing to be provided

by the Lender pursuant to the terms set forth in this Interim Order represents the best (and,

indeed, the only) financing available to the Debtor.[5]

(d)    *Good Faith*.    The terms of the Postpetition Financing Agreement

and the continued use of the Prepetition Collateral (including Cash Collateral) have been

the subject of extensive negotiations conducted in good faith.  All Postpetition Obligations

have been, and shall be deemed to have been, extended by the Lender in "good faith" as

such term is used in section 364(e) of the Bankruptcy Code, and in express reliance upon

the protections set forth therein, and shall be entitled to, and are hereby granted, the full

---

[5] Although the Lender, which indirectly owns the equity interests in the Debtor, has appointed two representatives to the Debtor's board of directors, those two individuals did not participate in the board's consideration or vote regarding the Postpetition Financing Agreement. Instead, the Debtor's decisions regarding postpetition financing were made solely by those directors who are not affiliated with the Lender.

13

protection of section 364(e) of the Bankruptcy Code in the event that this Interim Order or any provision hereof is stayed, vacated, reversed, amended or modified on appeal or otherwise.

        (e)    *Immediate Entry/Effectiveness of Order*. The Debtor has requested immediate entry and effectiveness of this Interim Order pursuant to Bankruptcy Rules 4001(b)(2) and 4001(c)(2) and Local Rule 4001-2(b). Absent immediate granting of the relief set forth in this Interim Order, the Debtor's estate will be immediately and irreparably harmed. Therefore, it is in the best interest of the estate for the Postpetition Financing Agreement and the continued use of the Prepetition Collateral (including Cash Collateral) to take effect immediately.

       7.    *Authorization of the Postpetition Financing Agreement*.

        (a)    *Maximum Amount*. The terms and conditions of the Postpetition Financing Agreement are hereby approved on an interim basis. The Debtor is hereby authorized to enter into and perform the transactions contemplated by this Interim Order, including to borrow under the Postpetition Financing Agreement principal up to the Maximum Amount. The Maximum Amount may be increased, without further Court order, but only with the express written consent of Lender, in Lender's sole discretion. For the purposes of this Interim Order, the term "Postpetition Obligations" shall include the principal of, interest on, fees, costs, expenses and other charges owing in respect of, such amounts (including, without limitation, any reasonable attorneys', accountants', financial advisors', and other fees, costs and expenses that are incurred by Lender under or in connection with the Postpetition Financing Agreement and this Interim Order, including in connection with the negotiation and documentation thereof and any

enforcement of Lender's rights and remedies thereunder or in connection therewith), and (subject to Section 7(b) below) any indemnity claims, in each case whether fixed or contingent, liquidated or unliquidated.

(b)  *Indemnification*.  Subject to entry of a final order approving the Postpetition Financing, Debtor shall indemnify and hold harmless Lender and any affiliated persons and entities for any losses, damages, fees, costs and expenses incurred in connection with the Postpetition Financing Agreement, including without limitation any such amounts arising from or incurred in connection with any exercise of remedies by Lender.  Any such indemnification right shall be a part of the Postpetition Obligations.

(c)  *Maturity Date*.  Notwithstanding anything to the contrary in the Revolving Credit Agreement or herein, all Postpetition Obligations shall mature and become immediately due and payable in full by Debtor to Lender, without the need for any notice by Lender, on the date that is 45 days after entry of this Interim Order (the "Maturity Date") or such earlier date as is defined as the Termination Date below.  Lender may, in its sole discretion, extend the Maturity Date in writing.

(d)  *Interest Rate*.  All loans and advances under the Postpetition Financing Agreement shall bear interest at the non-default rate (as calculated pursuant to Section 3.1(a) of the Revolving Credit Agreement); however, from and after the occurrence of a postpetition Event of Default of the type described in Section 5(c) above, all such loans and advances shall bear interest at the Default Rate (as such term is defined and calculated in the Revolving Credit Agreement).

(e)  *Further Assurances*.  In furtherance of the foregoing and without further notice, motion or application to, order of, or hearing before, this Court, the Debtor

is authorized and directed to perform all acts and to execute and deliver all instruments and documents that the Lender determines to be reasonably required or appropriate in connection with the Debtor's performance of its obligations under the Postpetition Financing Agreement and this Interim Order, including without limitation:

    (i)    the performance of the transactions contemplated by the Postpetition Financing Agreement, including any matters respecting the Approved Budget;

    (ii)    upon Lender's request, the execution and delivery by Debtor of such additional loan and security documents, instruments and agreements as Lender deems appropriate to reflect and evidence the terms set forth in this Interim Order, *provided, however,* that the failure to execute and deliver any such documents, instruments or agreements shall not affect in any way Lender's rights under and in accordance with this Interim Order; and

    (iii)    payment to Lender of the Postpetition Obligations as and when due as set forth in this Interim Order; and the prompt performance of all other acts required under or in connection with this Interim Order and the Postpetition Financing Agreement, including, without limitation, prompt delivery to Lender of such reporting and financial information (in addition to reports expressly required by this Interim Order) and access to the Debtor's books and records as, in each case, may be contemplated by the Revolving Credit Agreement or otherwise reasonably requested by Lender from time to time.

    *(f)*    *Corporate Authorization*. Except for such corporate authorization as the Debtor has already obtained, no board of directors, shareholder or other approval or resolutions shall be required to consummate, effect or validate the liens, claims and other rights granted to Agent and Lender, and the transactions contemplated by the Postpetition Financing Agreement or this Interim Order.

    8.    *Permitted Use*.

    *(a)*    *Generally*. The Debtor may use Cash Collateral and proceeds of the Postpetition Financing Agreement, solely in accordance with and pursuant to the terms and

16

conditions set forth in the Approved Budget and this Interim Order, but in all events only until the occurrence of the earlier of the Maturity Date or an Event of Default (the "Termination Date") and regardless of whether the Debtor has expended the entire amount of Cash Collateral or proceeds of the postpetition financing permitted by the terms of this Interim Order prior to the Termination Date.  Notwithstanding the foregoing, (i) if the Lender in its discretion advances funds, provides other extensions of credit to the Debtor or permits the continued use of Cash Collateral (as applicable) in excess of such financing contemplated by the Approved Budget, such advances, extensions of credit and uses of Cash Collateral shall be entitled to, and are hereby granted, the rights, priorities, benefits and protections of this Interim Order and (ii) upon any sale of its assets, Debtor shall be required to utilize the proceeds from such sale to repay the Postpetition Obligations, unless Lender expressly agrees otherwise.     Lender has consented and the Debtor has acknowledged that the Lender has consented to the use of its Cash Collateral on the condition that the Debtor abides by the Approved Budget and all applicable provisions of the Revolving Credit Agreement, the Postpetition Financing Agreement and this Interim Order.  Any expenditure of Cash Collateral in accordance with this paragraph may not be avoided or recovered from any party on any basis, including pursuant to section 549 of the Bankruptcy Code, paragraph 4 of this Order, or otherwise.

(b)    _Budget Reports_.  The Debtor shall provide to Lender a budget-to-actual report in a form and with a frequency requested by Lender, and shall provide such other reporting as Lender shall reasonably require.

9.    *Liens*.

(a)    *Superpriority Liens*.  As security for the full and timely repayment of all of the Postpetition Obligations, Lender is hereby granted, pursuant to sections 364(c)(2) and 364(d) of the Bankruptcy Code, valid, binding, enforceable, unavoidable and fully perfected first priority priming security interests and liens (collectively, the "Postpetition Liens") in and upon the Prepetition Collateral and all other prepetition and postpetition real and personal, tangible and intangible property and assets of the Debtor or its estate of any kind or nature whatsoever, wherever located, whether now existing or hereafter acquired or arising, including, without limitation, all cash (including all Cash Collateral, wherever held), cash equivalents, bank accounts, accounts, other receivables, chattel paper, contract rights, inventory, instruments, documents, securities (whether or not marketable), equipment, goods, fixtures, real property interests, intellectual property, general intangibles, investment property, supporting obligations, letter of credit rights, commercial tort claims, one hundred percent (100%) of the capital stock of the Debtor's direct and indirect domestic subsidiaries (if any), all notes or other securities held by the Debtor, trademarks, trade names, licenses, rights to payment including tax refund claims, and causes of action (excepting, however, avoidance actions under sections 544, 545, 547, 548, 549, and 550 of the Bankruptcy Code other than claims for recovery of any unauthorized disposition of Postpetition Collateral), and any and all proceeds, products, offspring, rents and profits of all of the foregoing, including insurance proceeds (all of the foregoing together with the Prepetition Collateral, the "Postpetition Collateral").  The Postpetition Liens shall be senior to any and all other liens on, security interests in, or rights with respect to the Postpetition Collateral, subject only to the Adequate Protection

Liens (as defined below) granted to Lender pursuant to this Interim Order and the Carve-Out (as defined below).

10.    *Super-Priority Claims*.  In addition to the Postpetition Liens, Lender is hereby granted, for all Postpetition Obligations, an allowed super-priority administrative expense claim pursuant to section 364(c)(1) of the Bankruptcy Code (the "Super-Priority Claim") against the Debtor and its estate, which claim shall be senior in priority to any and all other administrative expenses, subject only to the 507(b) Claim (as defined below) and to a carve-out for allowed professional fees incurred by estate professionals (including, without limitation, Debtor's and any Committee professionals)  prior to the Termination Date in accordance with the Approved Budget and allowed by the Court in an aggregate amount not to exceed the amount set forth for such professionals in the Approved Budget less all amounts previously paid, plus fees owed to the Clerk of the Court or to the Office of the United States Trustee pursuant to 28 U.S.C. section 1930 (the "Carve-Out").  The foregoing shall not excuse the filing of fee applications by estate professionals nor shall it limit the right of Lender or any other party-in-interest to object to any such fee applications.

11.    *Modification of Automatic Stay; Exercise of Remedies*.

The Court hereby orders that (i) the automatic stay pursuant to section 362 of the Bankruptcy Code is hereby modified as to Agent and Lender to permit such parties to perform the actions described in or permitted by this Interim Order, in each case without further notice, application or motion to, or order from the Court, (ii) such modification shall take effect immediately, notwithstanding Bankruptcy Rule 4001(a)(3) or any other applicable rule that would otherwise stay or delay the effectiveness of such modification, and (iii) neither section 105 of the Bankruptcy Code nor any other provision of the Bankruptcy Code or applicable law shall be utilized to prohibit such party's exercise,

enjoyment and enforcement of any of such rights, benefits, privileges and remedies regardless of any change in circumstances (whether or not foreseeable).

12.    _Cash Collateral_. For purposes of this Order, the term "Cash Collateral" shall mean and include all "cash collateral" as defined by section 363(a) of the Bankruptcy Code and shall include, without limitation, all of the cash, cash equivalent, or other proceeds of the accounts, inventory and other property constituting Prepetition Collateral in which Agent or Lender has an interest (including, without limitation, any adequate protection lien or security interest), whether such interest existed as of the Involuntary Date or arises thereafter pursuant to this Interim Order, any other order of this Court, applicable law or otherwise.

13.    _Use of Prepetition Collateral including Cash Collateral_. Subject to the Lender's rights under the Revolving Credit Agreement and this Interim Order (including, without limitation, Lender's right to sweep funds on a daily basis or as otherwise permitted by the Revolving Credit Agreement for application to the Postpetition Obligations), the Debtor is hereby authorized to continue to use the Prepetition Collateral and all Cash Collateral during the period from the Involuntary Date through and including the Termination Date (but in no event thereafter, without Lender's written consent at that time) for general corporate purposes in accordance with and subject to the terms and conditions of the Revolving Credit Agreement, this Interim Order and the Approved Budget. The foregoing authorization includes the Debtor's use of Cash Collateral from the Involuntary Date through the entry of this Interim Order (the "Previous Use"), for which the Debtor obtained the Lender's consent pursuant to section 363(c)(2)(A) of the Bankruptcy Code, and the provisions of this Interim Order apply in all respects to such Previous Use.

14.     *Adequate Protection*.  Lender is entitled to and is hereby granted, pursuant to sections 361, 363(c)(2) and 363(e) of the Bankruptcy Code, adequate protection of its interests in property of the Debtor and its estate, including the Prepetition Collateral and Cash Collateral, in an amount equal to the aggregate diminution in value of such collateral occurring on or after the Involuntary Date, including, without limitation, any such diminution resulting from the use (including the Previous Use) by the Debtor of the Cash Collateral and any other Prepetition Collateral and the imposition of the automatic stay pursuant to section 362 of the Bankruptcy Code (such diminution in value, the "Adequate Protection Obligations").  As adequate protection (and without prejudice to Lender's right to seek additional adequate protection at any time), the Lender is hereby granted the following (but only to the extent of any Adequate Protection Obligations):

(a)     *Adequate Protection Liens*.

Pursuant to sections 361(2), 362, 363(c)(2), and 363(e) of the Bankruptcy Code, the Lender is hereby granted continuing valid, binding, enforceable and perfected, first priority liens and security interests in and on all of the Postpetition Collateral to the extent of the Adequate Protection Obligations (the "Adequate Protection Liens").  The Adequate Protection Liens shall be deemed legal, valid, binding, enforceable, and perfected liens, and not subject to subordination, impairment or avoidance, for all purposes in this chapter 11 case or any successor case.  The Adequate Protection Liens shall be senior to any and all other liens on, security interests in, or rights with respect to the Postpetition Collateral. In no event shall any person or entity other than Lender (including the Debtor, any creditor, trustee or other estate representative) have, or be granted, any interest in or

right with respect to the Adequate Protection Liens, without Lender's express written
consent.

       (b)    *507(b) Claims*.

       Pursuant to section 507(b) of the Bankruptcy Code, Lender is hereby
allowed a super-priority administrative expense claim (the "507(b) Claim") against the
Debtor and its estate to the extent that the adequate protection afforded herein for any
Adequate Protection Obligations proves to be inadequate.  Such claim shall be senior in
priority to all other claims, including administrative expense claims, against the Debtor or
its estate. In no event shall any person or entity other than Lender (including the Debtor,
any creditor, trustee or other estate representative) have, or be granted, any interest in or
right with respect to the 507(b) Claim, without Lender's express written consent.

     15.  *Limitation on Use of Postpetition Financing Agreement Proceeds and
Collateral.*

       Notwithstanding anything herein or in the Postpetition Financing Agreement to the
contrary, no portion or proceeds of the Postpetition Financing Agreement, the Postpetition
Collateral, the Prepetition Collateral, the Cash Collateral, or disbursements set forth in the
Approved Budget, and no Carve-Out funds, shall be used for the payment of professional
fees, disbursements, costs or expenses incurred in connection with: (a) objecting to,
contesting, seeking to avoid, subordinate, recharacterize or otherwise impair, or raising any
defense to the validity, perfection, priority or enforceability of, any amount due under the
Postpetition Financing Agreement or Prepetition Loan Documents or any security interests,
liens or claims granted under the Prepetition Loan Documents or this Interim Order, or any
other claim or lien asserted by Agent or Lender; (b) asserting any claims, actions or causes
of action against Agent, Lender any of their respective agents, affiliates, subsidiaries,

directors, officers, representatives, employees, attorneys or advisors; (c) preventing, hindering or otherwise delaying Agent's or Lender's assertion, enforcement or realization on the Prepetition Collateral or the Postpetition Collateral in accordance with the terms and conditions of this Interim Order, the Postpetition Financing Agreement and any other loan or security documents as applicable; or (d) contesting or seeking to amend, modify or impair any of the rights granted to Lender or Agent under the Postpetition Financing Agreement or this Interim Order.

16.   *Perfection of Postpetition Liens and Adequate Protection Liens.*

The Postpetition Liens and the Adequate Protection Liens shall not be subject to challenge and shall attach and become valid, perfected, enforceable, non-avoidable and effective pursuant to this Interim Order and by operation of law as of the Involuntary Date without any further notice, act or action of or by any person or entity, and without the necessity of execution by the Debtors, or the filing or recordation, of any financing statements, security agreements, vehicle lien applications, mortgages, filings with the U.S. Patent and Trademark Office, or other documents. Agent or Lender may, however, if it so desires, make any filings or take any other actions in order to further evidence, confirm or perfect any such liens, and Debtor shall cooperate in any such action, including executing and delivering any necessary or appropriate instruments and documents, upon Agent's or Lender's request as applicable.

17.   *Waiver of Section 506(c) Surcharge.*

Subject to entry of a final order approving the Postpetition Financing Agreement, no costs or expenses of administration or other charge, lien, assessment or claim incurred at any time (including, without limitation, any expenses set forth in the

Approved Budget) by the Debtor or any other person or entity shall be imposed or charged against the Lender's claims, or the Postpetition Collateral, under section 506(c) of the Bankruptcy Code or otherwise, and the Debtor, on behalf of its estate, successors and assigns (including any trustee in this case or in any successor case), waives any and all such rights. It is expressly understood by the Debtor that in making all such undertakings and proceeding in compliance with this Interim Order, the Lender has relied on the foregoing provisions of this paragraph. Notwithstanding any approval of or consent to an Approved Budget, nothing in this Interim Order shall constitute or be deemed to constitute consent by the Lender to the imposition of any costs or expense of administration or other charge, lien, assessment or claim (including, without limitation, any amounts set forth in the Approved Budget) against the Lender, its claims or its collateral under section 506(c) of the Bankruptcy Code or otherwise and no such consent shall be implied from any other action or inaction by Lender (or Agent acting on its behalf).

18.    *Preservation of Rights Granted Under this Order.*

The provisions of this Interim Order and any actions taken pursuant hereto: (a) shall survive the occurrence of the Termination Date or entry of any order: (i) converting this chapter 11 case to a case under chapter 7 of the Bankruptcy Code; (ii) dismissing or closing this case, or (iii) confirming a plan of reorganization; and (b) shall continue in full force and effect notwithstanding the occurrence of the Termination Date or entry of any such order. The claims, liens, and security interests granted pursuant to this Interim Order shall maintain their priority, validity and perfection as provided by this Interim Order until all of the Postpetition Obligations and any 507(b) Claim have been indefeasibly paid in full in cash.

19.    _Application of Collateral Proceeds_.

Regardless of the order in which proceeds of Postpetition Collateral are received, the Postpetition Obligations shall be deemed to be paid first by any Postpetition Collateral that is not Prepetition Collateral or replacement liens or proceeds thereof ("Postpetition-Only Collateral"), and for the avoidance of doubt if the Postpetition Obligations are paid in full and the Debtor's estate subsequently receives proceeds of Postpetition-Only Collateral, the Debtor shall be deemed to pay such proceeds to Lender for application to the Postpetition Obligations and Lender shall apply to the Prepetition Obligations a corresponding amount of proceeds of other Postpetition Collateral that is not Postpetition-Only Collateral.

20.    _Credit Bidding Right_.

Subject to entry of a final order approving the Postpetition Financing Agreement, in any sale of assets of the Debtor, Lender (or Agent, on its behalf) shall be permitted to credit bid any or all amounts owed to Lender, including Prepetition Obligations and Postpetition Obligations, in accordance with section 363(k) of the Bankruptcy Code, and the Court hereby determines that no cause exists to limit such credit bidding right.

21.    _Effectiveness_. This Interim Order shall constitute findings of fact and conclusions of law. Pursuant to Bankruptcy Rule 6004(h) good cause exists for relief from stay provided for therein. Therefore, this Interim Order shall take effect immediately upon execution hereof, and there shall be no stay of the effectiveness of this Interim Order. All objections to the Motion or to the entry of this Interim Order have been withdrawn or overruled and the Motion is granted on an interim basis on the terms and conditions set

forth herein.  Pursuant to Bankruptcy Rule 7052, any findings of fact contained herein that

may be construed as conclusions of law shall be treated as conclusions of law just as though

so denominated, and any conclusions of law that may be construed as findings of fact shall

be treated as findings of fact just as though so denominated.

22.    *Final Hearing; Final Order*.

(a)    *Final Hearing*.  The Final Hearing to consider entry of a final order

on approval of the Postpetition Financing Agreement is scheduled for ~~April~~ *May 1*, 2018,

at _2:00_ *p*.m. (EDT) at the United States Bankruptcy Court for the District of

Massachusetts.

(b)    *Final Order*.  The proposed final order will be filed before the Final

Hearing.

(c)    *Notice*.  Within one (1) business day after entry of this Interim

Order, the Debtor shall serve, by United States mail, first-class postage prepaid (such

service constituting adequate notice of the Final Hearing), notice of the entry of this Interim

Order and of the Final Hearing (the "Final Hearing Notice") upon the Notice Parties and

Committee counsel, if the same shall have been appointed.  The Final Hearing Notice shall

state that any party in interest objecting to the entry of the proposed Final Order shall file

a written objection with the Clerk of this Court no later than April 27, 2018, which

objection shall be served so that it is actually received on or before 4:00 p.m. (EDT) on

such date by: (a) counsel for the Debtor, Scott Moskol, Burns & Levinson LLP, 125

Summer Street, Boston, MA 02110, tel. 617-345-3000, email: smoskol@burnslev.com; (b)

counsel for the Lender, Michael L. Bernstein, Arnold & Porter, 601 Massachusetts Ave.,

NW,      Washington,      D.C.      20001,      tel.      202-942-5000,      email:

Michael.Bernstein@arnoldporter.com, *and* Daniel C. Cohn, Murtha Cullina LLP, 99 High

Street, Boston, MA 02110, tel. 617-457-4100, email: dcohn@murthalaw.com.

Dated:  April 19, 2018
Boston, Massachusetts

_____

UNITED STATES BANKRUPTCY JUDGE

## Exhibit A

**Approved Budget**

NECCO Dip Budget 4-16-2018 4818-6351-4210 v.1.xlsx
ACAS DIP Budget

**New England Confectionary Company, Inc.**
**Case No. 18-11217**
**Cash Flow Budget**
in thousands

| | WEEK 4/13/2018 | 1 4/20/2018 | 2 4/27/2018 | 3 5/4/2018 | 4 5/11/2018 | 5 5/18/2018 | 6 5/25/2018 | 7 6/1/2018 | 8 6/8/2018 | 9 6/15/2018 |
|---|---|---|---|---|---|---|---|---|---|---|
| **Cash Sources** | | | | | | | | | | |
| AR- Collection | | $ 1,000 | $ 1,000 | $ - | | | | | | |
| GB Cash In | | $ - | $ - | $ 11,752 | $ - | $ - | $ - | $ - | $ - | $ - |
| **TOTAL CASH SOURCES** | | $ 1,000 | $ 1,000 | $ 11,752 | $ - | $ - | $ - | $ - | $ - | $ - |
| **Cash Uses** | | | | | | | | | | |
| Payroll | | $ 191 | $ 388 | $ 243 | $ 144 | $ 102 | $ 50 | $ 25 | $ 8 | $ 49 |
| Management Incentive (SEE NOTE 1) | | | | | $ 700 | | | | | |
| Retention Payments (SEE NOTE 2) | | | | | $ 167 | | | | | |
| BCT Payout (SEE NOTE 3) | | | | | | | | | | |
| PTO | | $ - | $ - | $ - | $ 30 | $ - | $ - | $ 40 | $ - | $ - |
| Benefits | | $ 48 | $ - | $ 148 | | | | | | |
| Insurance | | $ 48 | $ - | $ - | $ - | $ - | $ - | $ - | $ 48 | $ - |
| Security | | $ 3 | $ 4 | $ 3 | $ 3 | $ 3 | $ 4 | $ 3 | $ 3 | $ 3 |
| Rent | | $ 291 | $ - | | | | | | | |
| Materials | | $ 600 | $ 400 | | | | | | | |
| Packaging | | $ - | | | | | | | | |
| Maintenance | | $ 30 | $ 30 | | | | | | | |
| Sanitation/Quality | | $ 8 | $ - | | | | | | | |
| Electricity & Gas | | $ 102 | $ 95 | | | | | | | |
| Office Supplies | | $ 25 | $ 25 | | | | | | | |
| Freight | | $ 65 | $ 65 | | | | | | | |
| Brokers | | $ - | $ 40 | | | | | | | |
| Employee Travel Expense | | $ 20 | $ 20 | | | | | | | |
| **Professional fees:** | | | | | | | | | | |
| I-Banker fee (SEE NOTE 1) | | | | | $ 500 | | | | | |
| B&L | | $ 125 | $ - | $ - | $ 175 | $ - | $ - | $ - | $ 150 | $ - |
| V&L | | $ - | $ - | $ - | $ 50 | $ - | $ - | $ - | $ - | $ - |
| Claims Agent | | $ - | $ - | $ - | $ 10 | $ - | $ - | $ - | $ - | $ - |
| Other Legal | | $ - | $ - | $ - | $ 40 | $ - | $ - | $ - | $ 10 | $ - |
| Cceditors Comm. Attorney | | $ - | $ - | $ - | $ 55 | $ - | $ - | $ - | $ 40 | $ - |
| Cceditors Comm. Financial Advisor | | $ - | $ - | $ - | $ 50 | $ - | $ - | $ - | $ 50 | $ - |
| US Trustee fees | | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ 50 | $ - |
| General Contingency | | $ 20 | $ 20 | | | | | | | |

NECCO Dip Budget 4-16-2018 4B18-6351-4210 v.1.xlsx

ACAS DIP Budget

New England Confectionary Company, Inc.

Case No. 18-11217

Cash Flow Budget

in thousands

| | WEEK | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 |
|---|---|---|---|---|---|---|---|---|---|---|
| | 4/13/2018 | 4/20/2018 | 4/27/2018 | 5/4/2018 | 5/11/2018 | 5/18/2018 | 5/25/2018 | 6/1/2018 | 6/8/2018 | 6/15/2018 |
| Total Disbursements | | $ 1,528 | $ 1,087 | $ 394 | $ 1,924 | $ 105 | $ 54 | $ 68 | $ 359 | $ 52 |
| Net Cash Flow | | $ (528) | $ (87) | $ 11,358 | $ (1,924) | $ (105) | $ (54) | $ (68) | $ (359) | $ (52) |
| Beginning Cash Position | | $ 107 | $ 533 | $ 534 | $ 500 | $ 500 | $ 500 | $ 500 | $ 500 | $ 500 |
| Ending Cash Position | $ 107 | $ 533 | $ 534 | $ 500 | $ 500 | $ 500 | $ 500 | $ 500 | $ 500 | $ 500 |
| | | | | | | | | | | |
| DIP Opening Balance | | $ - | $ (954) | $ (1,042) | $ - | $ - | $ - | $ - | $ - | $ - |
| DIP draws | | $ (954) | $ (88) | $ 1,042 | $ (1,924) | $ (105) | $ (54) | $ (68) | $ (359) | $ (52) |
| DIP Repayment | | $ - | $ (1,042) | $ 1,042 | $ 1,924 | $ 105 | $ 54 | $ 68 | $ 359 | $ 52 |
| Dip ending balance (Maximum Outstanding DIP Balance) | | $ (954) | $ (1,042) | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| | | | | | | | | | | |
| Balance Prepetition 1st Lien Debt (SEE NOTE 4) | $ (107,000) | $ (107,000) | $ (107,000) | $ (96,650) | $ (98,574) | $ (98,679) | $ (98,733) | $ (98,801) | $ (99,160) | $ (99,212) |

NOTE 1: Items payable only after consummation of an Approved Sale.

NOTE 2: Retention payments are triggered by 6/30 date or termination, if earlier.

NOTE 3: BCT payout was collectively bargained and is prompted by an end of operations in Revere MA following the sale of assets.

NOTE 4: After GB sale proceeds are received and used to pay down DIP loan to zero and the balance applied to Prepetition 1st Lien Debt, DIP loan repayments (Weeks 4 to 13) are made by adding back to the Prepetiti

NECCO Dip Budget 4-16-2018 4818-6351-4210 v.1.xlsx
ACAS DIP Budget

**New England Confectionary Company, Inc.**
Case No. 18-11217
**Cash Flow Budget**
in thousands

| | 10 6/22/2018 | 11 6/29/2018 | 12 7/6/2018 | 13 7/13/2018 | TOTAL |
|---|---|---|---|---|---|
| **Cash Sources** | | | | | |
| AR- Collection | | | | | $ 2,000 |
| CB Cash In | $ - | $ - | $ - | $ - | $ 11,752 |
| TOTAL CASH SOURCES | $ - | $ - | $ - | $ - | $ 13,752 |
| **Cash Uses** | | | | | |
| Payroll | $ 8 | $ 39 | $ 7 | $ 20 | $ 1,274 |
| Management Incentive (SEE NOTE 1) | | | | | $ 700 |
| Retention Payments (SEE NOTE 2) | | | | $ 251 | $ 418 |
| BCT Payout (SEE NOTE 3) | | | | $ 213 | $ 213 |
| PTO | $ - | $ - | $ - | $ 165 | $ 235 |
| Benefits | | | | | $ 148 |
| Insurance | $ - | $ - | $ - | $ 48 | $ 144 |
| Security | $ 3 | $ 4 | $ 3 | $ 3 | $ 42 |
| Rent | | | | | $ 291 |
| Materials | | | | | $ 1,000 |
| Packaging | | | | | $ - |
| Maintenance | | | | | $ 60 |
| Sanitation/Quality | | | | | $ 8 |
| Electricity & Gas | | | | | $ 197 |
| Office Supplies | | | | | $ 50 |
| Freight | | | | | $ 130 |
| Brokers | | | | | $ 40 |
| Employee Travel Expense | | | | | $ 40 |
| **Professional fees:** | | | | | |
| I-Banker fee (SEE NOTE 1) | | | | | $ 500 |
| B&L | $ - | $ - | $ 125 | $ - | $ 575 |
| V&L | $ - | $ - | $ - | $ - | $ 50 |
| Claims Agent | $ - | $ - | $ 10 | $ - | $ 30 |
| Other Legal | $ - | $ - | $ 40 | $ - | $ 120 |
| Creditors Comm. Attorney | $ - | $ - | $ 40 | $ - | $ 145 |
| Creditors Comm. Financial Advisor | $ - | $ - | $ 50 | $ - | $ 150 |
| US Trustee fees | $ - | $ - | $ - | $ 47 | $ 47 |
| General Contingency | | | | | $ 40 |

NECCO Dip Budget 4-16-2018 4818-6351-4210 v.1.xlsx
ACAS DIP Budget

**New England Confectionary Company, Inc.**
Case No. 18-11217
Cash Flow Budget
in thousands

| | 10 | 11 | 12 | 13 | TOTAL |
|---|---|---|---|---|---|
| | 6/22/2018 | 6/29/2018 | 7/6/2018 | 7/13/2018 | |
| Total Disbursements | $ 11 | $ 43 | $ 275 | $ 747 | $ 6,647 |
| | | | | | |
| Net Cash Flow | $ (11) | $ (43) | $ (275) | $ (747) | $ 7,105 |
| | | | | | |
| Beginning Cash Position | $ 500 | $ 500 | $ 500 | $ 500 | |
| | | | | | |
| Ending Cash Position | $ 500 | $ 500 | $ 500 | $ 500 | |
| | | | | | |
| DIP Opening Balance | $ - | $ - | $ - | $ - | |
| DIP draws | $ (11) | $ (43) | $ (275) | $ (747) | $ (4,680) |
| DIP Repayment | $ 11 | $ 43 | $ 275 | $ 747 | $ 4,680 |
| Dip ending balance (Maximum Outstanding DIP Balance) | $ - | $ - | $ - | $ - | |
| | | | | | |
| Balance Prepetition 1st Lien Debt (SEE NOTE 4) | $ (99,223) | $ (99,266) | $ (99,541) | $ (100,288) | |

NOTE 1: Items payable only after consummation of an Approved S
NOTE 2: Retention payments are triggered by 6/30 date or termin
NOTE 3: BCT payout was collectively bargained and is prompted b)
NOTE 4: After G8 sale proceeds are received and used to pay down on 1st Lien Debt.