**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF MASSACHUSETTS**
**EASTERN DIVISION**

|  |  |
|---|---|
| In re:<br><br>**NEW ENGLAND CONFECTIONERY<br>COMPANY, INC.**<br><br>            **Debtor.** | **Chapter 11**<br><br>**Case No. 18-11217-MSH** |

**TRUSTEE'S MOTION (A) TO APPROVE BIDDING PROCEDURES, NOTICE
PROCEDURES, AND BREAKUP FEE IN CONNECTION WITH
MOTION FOR ORDER APPROVING PRIVATE SALE OF SUBSTANTIALLY ALL
ASSETS FREE AND CLEAR OF LIENS, CLAIMS, ENCUMBRANCES, AND
INTERESTS; (B) TO AUTHORIZE TRUSTEE TO EFFECTUATE SALE PURSUANT
TO TERMS OF ASSET PURCHASE AGREEMENT AS AMENDED,
AND (C) FOR RELATED RELIEF**
**(Expedited Determination Requested)**

Harold B. Murphy, the Chapter 11 trustee (the "Trustee") of New England Confectionery

Company, Inc. ("NECCO" or the "Debtor"), moves the Court, in conjunction with the *Debtor's*

*Motion for Order Approving Private Sale of Certain of Debtor's Assets Free and Clear of All*

*Liens, Claims, Encumbrances, and Interests and Granting Related Relief* (the "Sale Motion"),

for the entry of an order approving (a) the Bid Procedures (as defined below), (b) notice

procedures related to the proposed sale (the "Sale Notice Procedures"), and (c) provisions

relating to the Breakup Fee (as defined below)(collectively, the "Procedures").  The Trustee

seeks approval of the Procedures in conjunction with a proposed sale of substantially all of the

Debtor's assets (the "Purchased Assets") to CI-N Acquisition, LLC (the "Buyer") pursuant to the

terms of an asset purchase agreement, as amended (the "APA").[1]

---

[1] This motion contains summaries of various terms of the APA but is not meant to be a substitute for the APA
which contains additional terms and conditions.  In the event of a conflict between this motion and the APA, the
APA shall control.

The APA requires that a hearing on the proposed sale be held on or before May 23, 2018, and that a closing of the proposed sale occur not later than May 25, 2018. In light of these deadlines, expedited consideration of the Procedures that will govern the sale process is appropriate.

In further support of this motion, the Trustee states as follows:

## I.    JURISDICTION

1.      This Court has jurisdiction to consider and determine this motion pursuant to 28 U.S.C. § 1334. This is a core proceeding within the meaning of 28 U.S.C. § 157(b). Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

2.      The statutory predicates for the relief requested in this motion include Sections 105(a), 361, 362, and 363 of the Bankruptcy Code, Rules 6004 and 6006 of the Federal Rules of Bankruptcy Procedure, and MLBR 6004-1 and 6006-1.

## II.    BACKGROUND

3.      NECCO is a Delaware corporation formally incorporated in 1901 and a wholly-owned subsidiary of NECCO Holdings, Inc. ("NECCO Holdings"). It manufactures and distributes a wide array of sugar and chocolate candy varieties at its principal place of business and corporate headquarters in Revere, Massachusetts, which property is owned by Atlantic-Revere Realty, LLC (the "Landlord").[2]

4.      All of NECCO Holdings' stock is owned by ACAS, LLC (as defined below, the "Lender"). The Lender asserts, among other things, to be owed not less than $107,000,000, plus certain other amounts, including costs of collection, by the Debtor under two loan facilities and to hold a perfected first-priority lien to secure the Debtor's obligations to it.

---

[2] Additional information regarding the Debtor and its operations and historical background is contained in the Declaration of Michael McGee, President of New England Confectionery Company, Inc. [docket no. 26].

5.      On April 3, 2018, certain creditors of the Debtor (collectively, the "Petitioning Creditors") filed an involuntary petition for relief under Chapter 7 of 11 U.S.C. §101, *et seq*. (the "Bankruptcy Code").

6.      On April 17, 2018, the Debtor filed a motion to convert its case to a case under Chapter 11 of the Bankruptcy Code (the "Motion to Convert") together with, among other things, a motion to authorize use of cash collateral and post-petition borrowing from the Lender [docket no. 61] (the "Cash Collateral Motion") and the Sale Motion, pursuant to which the Debtor moved to sell substantially all of its assets to CI-N Acquisition LLC, an entity related to Gordon Brothers Commercial & Industrial LLC.

7.      On April 19, 2018, the Court held a hearing on the Debtor's various first-day motions.  The Court granted the Motion to Convert and, upon oral motion of the United States Trustee, ordered the appointment of a Chapter 11 trustee [docket nos. 58, 59]. The Trustee was subsequently appointed [docket no. 69].

8.      The Trustee has, since his appointment, reviewed the relevant materials in this proceeding and documents concerning the Debtor's assets, liabilities, and operations, met with the Debtor's President and Chief Financial Officer, toured the Debtor's facility, examined its assets and operations, and conferred with the Petitioning Creditors and the Landlord, among others.  In the course of his examination, the Trustee has reviewed the proposed sale to the Buyer and related documents and has engaged in discussions with the Lender, the Buyer, and the Debtor with respect to the proposed sale, the continued use of cash collateral, and the potential for post-petition borrowing.

9.      Following his discussions, the Trustee has determined to continue to operate the Debtor's business pursuant to an amended arrangement with the Lender to use cash collateral

and for post-petition financing.  In connection therewith, he has negotiated an amended proposed

cash collateral budget with the Lender and is negotiating the terms of an amended cash collateral

order.  Among other things, the Trustee intends to further market the Debtor's assets through its

investment banker in order to solicit counteroffers to the proposed sale.  In connection therewith

the Trustee has negotiated an agreed amendment to the APA with the Buyer, which has been

filed contemporaneously herewith, has negotiated an extension to the Debtor's lease of its

premises with the Landlord, and has developed the proposed Procedures to facilitate his extended

sale efforts.

10.    The Trustee requests the approval of the Bid Procedures, the Sale Notice

Procedures and the Breakup Fee to ensure an orderly sale process and promote the maximum

recovery for the Purchased Assets.

11.    Among other things, the Purchased Assets include a portfolio of confectionery

products, organized into the following product lines ("Product Lines"):

(a)    NECCO Wafers;
(b)    Sweethearts Conversation Hearts;
(c)    Candy Buttons;
(d)    Mary Jane;
(e)    Canada Mints;
(f)    Mighty Malts;
(g)    Haviland;
(h)    Clark bars; and
(i)    Sky Bar.

12.    The assets associated with each Product Line include the following:

(a)    all raw materials, work-in-process and finished goods, and other items of
inventory owned by Debtor;

(b)    all tangible assets, including all machinery, equipment, tools, vehicles,
computer equipment, software, furniture and fixtures, artwork, pictures, tradebooths, office
supplies, tools, rolling stock, molds, dies, tooling, leasehold improvements and other property and
equipment owned or used by Debtor, but excluding all tangible assets not owned by the Debtor;

4

(c)      all databases, customer lists, mailing lists, patents, trademarks, tradenames, service marks, domain names, copyrights, and other similar designations of source or origin (and all applications and registrations for the foregoing), trade secrets, know how, all historic catalogs, engineering, artwork, copywriting, document and data files, images, pictures, photos, creative copy and drafts, brochures, catalogues, brand logos, corporate photographs, recipes, designs, artwork design and copy for current and future catalogs and marketing materials; provided, that, the foregoing shall not include any assets used but not owned by the Debtor;

(d)      to the extent applicable, all certificates of title and other documentation necessary to convey title to the equipment included in the Purchased Assets;

(e)      all manufacturer and other warranties, to the extent assignable;

(f)      the licenses, permits, authorizations, franchises and certifications of governmental and non-governmental authorities held by the Debtor; and

(g)      all manuals, instructions and other similar documents, to the extent in the possession and control of the Seller.

13.      The Purchased Assets include the machinery, equipment, tools, vehicles, computer equipment, software, furniture and fixtures located in the Debtor's electrical cogeneration facility located at the Debtor's premises (the "Co-Generation Assets").

### III.    RELIEF REQUESTED

**A.     Bid Procedures**

14.      The Trustee requests the approval of the following bid procedures (the "Bid Procedures") for use in the sale of the Purchased Assets:

a.      Competing bids may be submitted for: (i) the Purchased Assets in their entirety (an "Entireties Bid"), and/or (ii) one or more of the Product Lines or the Co-Generation Assets.

b.      Any Entireties Bid shall be deemed to qualify as a competing bid (a "Competing Bid") only if: (1) the cash purchase price to be paid to Seller at closing is at least $13,961,900.18, which is equal to an amount $665,000 higher than the initial purchase price in the APA; and (2) the Competing Bid is accompanied by an executed asset purchase agreement substantially in the same form as the APA and made upon terms substantially similar to those set forth in the APA, except for modifications for the identity of the successful Competing Bidder and the increased consideration to be paid to Seller.

c.     A bid for a Product Line shall be deemed to qualify as a Competing Bid only if
       such bid is in the minimum amount of $500,000 of cash to be paid to Seller at
       closing.

d.     A bid for the Co-Generation Assets shall be deemed to qualify as a Competing
       Bid only if such bid is in the minimum amount of $500,000 of cash to be paid to
       Seller at closing.

e.     A Competing Bid must contain a case caption as set forth above and be filed, in
       accordance with the applicable Federal and local Rules of Bankruptcy Procedure,[3]
       with the United States Bankruptcy Court for the District of Massachusetts, United
       States Courthouse, 5 Post Office Square, Boston, MA 02109, on or before 4:30
       p.m. on May 18, 2018 (the "Bidding Deadline").  A Competing Bid must be
       served on counsel for the Trustee, Harold B. Murphy, Murphy & King,
       Professional Corporation, One Beacon Street, Boston, Massachusetts 02108;
       Counsel for Buyer, Douglas Gooding, Choate Hall & Stewart LLP, 2 International
       Place, Boston, MA 02110; John Fitzgerald, the Office of the United States
       Trustee, 5 Post Office Square, Boston, MA 02109; and Counsel to the Lender,
       Daniel Cohn, Murtha Cullina, LLP, 99 High Street, Boston, MA 02110 and
       Michael L. Bernstein, Arnold & Porter, 601 Massachusetts Ave NW, Washington,
       D.C. 20001.

f.     A Competing Bid must not be subject to contingencies for financing, the
       completion of due diligence or environmental contingencies.

g.     Any bidder submitting a Competing Bid must deliver a cash deposit (the
       "Deposit") to counsel for Seller at the time of submission of such bid that is equal
       to five percent (5%) of the cash value of the Competing Bid (upon delivery of
       such a Deposit, a "Competing Bidder").  The Deposit shall be in the form of a
       certified check or wire transfer, and must be received on or before Bidding
       Deadline.  The Deposit delivered by a Competing Bidder will be forfeited in the
       event that such Competing Bidder is the successful bidder, or one of several
       successful bidders, and fails to close on the sale through no fault of the Trustee.

h.     Any party submitting a Competing Bid shall demonstrate to Seller's satisfaction
       that: (1) it is financially able to consummate the transactions contemplated by the
       Competing Bid, which ability may be demonstrated by submission of bank
       statements, current audited or unaudited financial statements, or other reasonable
       evidence, or, if the bidder is an entity formed for the purpose of acquiring the
       assets in question, current audited or unaudited financial statements or other
       reasonable evidence of the financial capability of the equity holders of the bidder;
       (2) it is able to fulfill any remaining obligations under the respective asset
       purchase agreement; and (3) it has written evidence of a financing commitment
       sufficient to permit the consummation of the transactions in question.

---

[3] Among the applicable provisions of the Local Rules of Bankruptcy Procedure is the restriction on facsimile filings
pursuant to MLBR 5005-4.

i.      Subject to Court approval, the Trustee shall be authorized to sell the Debtor's assets to the second highest bidder(s) in the event that the successful bidder does not close the sale within the time prescribed.

j.      An auction for all or any part of the Purchased Assets shall be held only if (i) there is an Entireties Bid that is a Competing Bid at the Bid Deadline, or (ii) if at the Bid Deadline one or more Product Line bids and/or Co-Generation Asset bids constitute a Competing Bid and the aggregate cash purchase price to be paid to Seller at closing by all Competing Bids at the Bid Deadline for the individual Product Lines and the Co-Generation Asset is at least $11,200,000.00.  If no Auction is held because (x) at the Bid Deadline there is no Entireties Bid that is a Competing Bid, (y) at the Bid Deadline no Product Line bids or Co-Generation Asset bids constitute a Competing Bid, or (z) at the Bid Deadline the aggregate purchase price to be paid to Seller at closing by all Competing Bids for the individual Product Lines and the Co-Generation Asset is less than $11,200,000.00, then the Purchased Assets shall be sold to Buyer immediately after the Sale Hearing pursuant to the terms of the APA.  Bidding at any auction for all or any part of the Purchased Assets shall be by open bid and shall conducted by the Court immediately prior to the Sale Hearing.  Any bid by Buyer shall be credited with the Breakup Fee (defined below) by adding the Breakup Fee to the aggregate amount of any bid by Buyer when comparing it to other Competing Bids.  When comparing bids, the Trustee shall not ascribe any value to any Purchased Assets that are not sold at the auction.

k.      In the event the Buyer's bid is not approved by the court as the highest and best bid, the Buyer shall receive a breakup fee in an amount equal to $400,000.00 (the "Breakup Fee").  The Breakup Fee will be payable only from the proceeds of the closing of the respective alternative transaction, in immediately available funds, on the closing with the successful bidder.

15.     Subject to the Bid Procedures, the Trustee and the Lender each reserve their respective rights on the issue of whether a bid constitutes the highest and best bid for the Purchased Assets.

16.     In the event the party, or parties, who submits the highest and best bid for the Purchased Assets fails to close on the sale through no fault of the Trustee, the Trustee requests that the order approving the Bid Procedures provide that such party's Deposit be forfeited to the Trustee.

**B.**     <u>**Notice Procedures**</u>

17.     The Trustee will serve copies of this motion, the *Amended Notice of (1) Intent to Sell Assets by Private Sale Free and Clear of Liens, Claims, Encumbrances, and Interests, (2) Deadlines for Submitting Counterbids and Objections, and (3) Hearing Date* attached to this motion as <u>Exhibit A</u> (the "<u>Sale Notice</u>"), the APA and all associated notices of hearing upon: (a) the United States Trustee, (b) counsel for the Lender, (c) counsel for the Buyer, (d) federal and state governmental authorities, (e) the Debtor's twenty largest creditors, (h) all parties who have expressed an interest in purchasing the Debtor's assets, and (i) all parties who have filed a notice of appearance (collectively the "<u>Notice Parties</u>").

18.     Service to all creditors of the full package of sale documents would be unnecessarily costly and burdensome to the Debtor's bankruptcy estate.  The Sale Notice provides information regarding, among other things, the proposed sale, instructions on how to obtain full copies of the proposed pleadings and sale documents at no cost, counteroffer and objection requirements, and the notice of the sale hearing.  The Trustee proposes to serve only the Sale Notice upon all creditors and parties-in-interest, other than the Notice Parties.

19.     The Trustee requests approval of the form of the Sale Notice as part of this motion.

**C.**     <u>**Breakup Fee Provisions**</u>

20.     Subject to the Court's approval, the APA provides that the Buyer is entitled to the Breakup Fee, which is equal to $400,000.00.  The APA provides that the Breakup Fee will be payable only from the proceeds of the closing of the respective alternative transaction(s), in immediately available funds on the closing with the successful Competing Bidder(s).

IV.    THE SALE PROCEDURES AND BREAKUP FEE PROVISIONS SHOULD BE APPROVED

21.    Good and sufficient cause exists to approve the proposed Bid Procedures and the

Sale Notice Procedures (collectively the "Sale Procedures") as well as the Breakup Fee.

22.    The Sale Procedures and the Breakup Fee are the product of arms-length

negotiations between the Trustee and the Buyer.  The Sale Procedures and the Breakup Fee will

assist in administering an orderly sale process and provide reasonable protection to the Buyer.

23.    The Sale Procedures and the Breakup Fee are typical of sales of this size and

complexity in this district.

24.    In *In re O'Brien Environmental Energy, Inc.*, the Third Circuit held that

termination fees should be allowed where such "fees were actually necessary to preserve the

value of the estate."  *In re O'Brien Environmental Energy, Inc.*, 181 F.3d 527, 535 (3d Cir.

1999).  A break-up fee will provide a benefit to an estate if, for example, "assurance of a break-

up fee promoted more competitive bidding, such as by inducing a bid that otherwise would not

have been made and without which bidding would have been limited."  *Id*.  Other examples of a

benefit provided by a break-up fee would be if the initial offer which included the break-up fee

"served as a catalyst to higher bids" or "if the availability of break-up fees and expenses were to

induce a bidder to research the value of the assets and convert that value to a dollar figure on

which other bidders can rely . . . ."  *Id*.

25.    The Buyer is unwilling to act as the stalking-horse bidder without the Breakup

Fee.  By having Buyer as a stalking-horse bidder, much of the due diligence, contract negotiation

and other work necessary to submit a bid for the Purchased Assets will have been completed.

This will shorten the time and cost required for prospective bidders to submit a Competing Bid

and will therefore promote such bids.  The sale of the Purchased Assets without a stalking-horse

bidder would be more time consuming, more expensive and could result in a significantly lower price for the Purchased Assets.  The approval of the Breakup Fee will therefore benefit the Debtors' bankruptcy estates.

**WHEREFORE**, the Trustee requests that the Court enter an order:

(a) approving this motion by order in the form attached as Exhibit "C";

(b) approving the Sale Notice in the form attached as Exhibit "A" and the manner and method of service of notice;

(c) approving the Bid Procedures in the form attached hereto as Exhibit "B";

(d) establishing deadlines for the submission of counter-offers and the filing of objections;

(e) approving the Breakup Fee; and

(f) granting such other relief as is just and proper.

> Respectfully Submitted,
>
> HAROLD B. MURPHY,
> Chapter 11 Trustee,
> By his counsel,
>
> */s/ Andrew G. Lizotte*
> Harold B. Murphy (BBO #362610)
> Andrew G. Lizotte (BBO #559609)
> MURPHY & KING, Professional Corporation
> One Beacon Street
> Boston, MA  02108-3107
> Tel: (617) 423-0400
> Fax: (617) 556-8985

Dated: May 2, 2018                     alizotte@murphyking.com

## <u>CERTIFICATE OF SERVICE</u>

I, Andrew G. Lizotte hereby certify that on May 2, 2018, I caused a copy of the foregoing motion and all exhibits thereto to be filed through CM/ECF system and served electronically upon all parties entitled to notice thereunder.

*/s/ Andrew G. Lizotte*
Andrew G. Lizotte

EXHIBIT A

UNITED STATES BANKRUPTCY COURT
DISTRICT OF MASSACHUSETTS
EASTERN DIVISION

|  |  |
|---|---|
| In re:<br><br>**NEW ENGLAND CONFECTIONERY COMPANY, INC.**<br><br>              **Debtor.** | **Chapter 11**<br><br>**Case No. 18-11217-MSH** |

**AMENDED NOTICE OF (1) INTENT TO SELL ASSETS BY PRIVATE SALE
FREE AND CLEAR OF LIENS, CLAIMS, ENCUMBRANCES, AND INTERESTS
(2) DEADLINES FOR SUBMITTING COUNTEROFFERS AND
OBJECTIONS, AND (3) HEARING DATE**

To Creditors and Parties in Interest:

NOTICE IS HEREBY GIVEN, pursuant to 11 U.S.C. §§ 105 and 363, Federal Rules of Bankruptcy Procedure 2002(a)(2) and 6004, and MLBR 2002-5 and 6004-1, and pursuant to an Order of the Court dated May 2, 2018 approving *the Trustee's Motion (A) to Approve Bid Procedures, Notice Procedures, and Breakup Fee in Connection with Motion for Order Approving Private Sale of Substantially All Assets Free and Clear of Liens, Claims, Encumbrances, and Interests; (B) to Authorize Trustee to Effectuate Sale Pursuant to Terms of Asset Purchase Agreement, as Amended, and (C) for Related Relief* (the "Bid Procedures Order"), that Harold B. Murphy, the duly appointed Chapter 11 trustee (the "Trustee") for the bankruptcy estate (the "Estate") of New England Confectionery Company, Inc. ("NECCO" or the "Debtor"), intends to sell at private sale all of the Estate's right, title, and interest in certain of the Debtor's assets (the "Purchased Assets") to CI-N Acquisition, LLC (the "Buyer") for the sum of $13,296,900.18 subject to certain purchase price adjustments (the "Purchase Price") on the terms set forth in the Asset Purchase Agreement dated April 17, 2018, as amended, by and between the Trustee and the Buyer (the "APA"). The Purchased Assets shall be sold "as is" and "where is" with no representations or warranties whatsoever, either express or implied.

The sale shall be free and clear of all liens, claims, encumbrances, and interests pursuant to 11 U.S.C. §363(f). Any perfected, enforceable, and valid liens shall attach to the proceeds of the sale in accordance with the priorities established under applicable law. Nothing in this notice constitutes a waiver of the Trustee's right to review and challenge the extent, priority or validity of any lien, claim, encumbrance or interest.

Any objections to the proposed sale shall be filed in writing with the Clerk, United States Bankruptcy Court at 5 Post Office Square, Boston, MA 02109 on or before **May 18, 2018 at 4:30 p.m.** ("Objection Deadline"). A copy of any timely objection must be served upon the following parties (the "Notice Parties"):

a.      counsel for the Trustee, Harold B. Murphy, Murphy & King, Professional Corporation, One Beacon Street, Boston, Massachusetts 02108;

      b.      Counsel for Buyer, Douglas Gooding, Choate Hall & Stewart LLP, 2 International Place, Boston, MA 02110;

      c.      John Fitzgerald, the Office of the United States Trustee, 5 Post Office Square, Boston, MA 02109;

      d.      Counsel to ACAS, LLC, Daniel Cohn, Murtha Cullina, LLP, 99 High Street, Boston, MA 02110 and Michael L. Bernstein, Arnold & Porter, 601 Massachusetts Ave NW, Washington, D.C. 20001.

Any objection to the sale must state with particularity the grounds for the objection and why the intended sale should not be authorized.  Any objection shall be governed by Federal Rule of Bankruptcy Procedure 9014.

Through this Notice, the Trustee solicits counteroffers for the Purchased Assets.  Counteroffers must be submitted on or before **May 18, 2018 at 4:30 p.m.** (the "Counteroffer Deadline") in order to be considered timely.  Counteroffers may be submitted as to the Purchased Assets in their entirety ("Entireties Bid"), to individual product lines ("Product Lines"), or to the assets located in the Debtor's electrical cogeneration facility at the Debtor's premises (the "Co-Generation Assets"), as further set forth below.

NECCO's assets include a portfolio of confectionery products, organized into two units: Sugar and Chocolate.  Within each unit there are several Product Lines.

The Product Lines associated with the Sugar portfolio are as follows:
(i)      NECCO Wafers;
(ii)     Sweethearts;
(iii)    Candy Buttons;
(iv)    Mary Jane; and
(v)     Canada Mints.

The Product Lines associated with the Chocolate portfolio are as follows:
(vi)    Mighty Malts;
(vii)   Haviland;
(viii)  Clark bars; and
(ix)    Sky Bar;

The assets available for purchase as a Product Line include the following categories of assets, only with respect to that particular Product Line:[1]
(a)  raw materials, work-in-process, and finished goods and other items of inventory;
(b)  machinery, equipment, tools, molds, dies, and related items used at the work stations to manufacture the Product Line;
(c)  patents, trademarks, tradenames, trade secrets and related intellectual property;
(d)  manufacturer and other warranties;
(e)  licenses, permits, and other certificates;
(f)  manuals, instructions, and other documents.

The minimum counterbid for an Entireties Bid to qualify as a competing bid ("Competing Bid") is $13,961,900.18, which is equal to an amount $665,000 higher than the initial purchase price.  The minimum counterbid for a Product Line bid or a Co-Generation Asset bid to be a Competing Bid is $500,000.  Competing Bids must be filed with the Court, accompanied by a cashier's check made

---

[1] For a more detailed description of assets available for sale, please see the APA, the Bid Procedures, and the Bid Procedures Order.  A copy of the Bid Procedures is appended hereto.

payable to the Trustee in an amount equal to five percent (5%) of the counteroffer, and must be received on or before the Counteroffer Deadline.

A hearing on the Sale Motion (the "Sale Hearing") and any timely objections is scheduled to take place on **May 23, 2018 at 1:30 p.m.** before the Honorable Melvin S. Hoffman, Chief United States Bankruptcy Judge, at the address listed above.  Any party who has filed a timely objection must be present at the hearing, failing which the objection may be overruled.

An auction for all or any part of the Purchased Assets shall be held only if (i) there is an Entireties Bid that is a Competing Bid at the Counteroffer Deadline, or (ii) if at the Counteroffer Deadline one or more Product Line bids and/or Co-Generation Asset bids constitute a Competing Bid and the aggregate cash purchase price to be paid to Seller at closing by all Competing Bids at the Counteroffer Deadline for the individual Product Lines and the Co-Generation Asset is at least $11,200,000.00.  The Buyer and any parties submitting Competing Bids will be required to attend the Auction.  Terms and conditions for the Auction are set forth in the Bid Procedures Order and the attached Bid Procedures.  At the Sale Hearing, the Court may (i) consider any requests to strike any counteroffer; (ii) determine further terms and conditions of the sale; and (iii) determine the conditions for the Auction.

**IF YOU HAVE ANY INTEREST IN ACQUIRING ASSETS OF THE DEBTOR, YOU SHOULD CONTACT THE DEBTOR'S INVESTMENT BANKER, THREADSTONE ADVISORS, LP, C/O JAMES M. DWORKIN, AT (646) 790-8915, jdworkin@threadstonelp.com.**

Copies of the Sale Motion and Bid Procedures Order may be obtained, upon written request, from undersigned counsel to the Trustee.

HAROLD B. MURPHY,
CHAPTER 11 TRUSTEE,

By his counsel,

*/s/ Andrew G. Lizotte*
Dated:  May 2, 2018                    Harold B. Murphy (BBO #362610)
Andrew G. Lizotte BBO #559609
MURPHY & KING,
Professional Corporation
One Beacon Street
Boston, MA  02108
(617) 423-0400
alizotte@murphyking.com

742411

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF MASSACHUSETTS**
**EASTERN DIVISION**

| | |
|---|---|
| In re:<br><br>**NEW ENGLAND CONFECTIONERY**<br>**COMPANY, INC.**<br><br>             **Debtor.** | **Chapter 11**<br><br>**Case No. 18-11217-MSH** |

**BID PROCEDURES**

       **SET FORTH BELOW ARE THE BID PROCEDURES ASSOCIATED WITH THE SALE OF THE ASSETS OF NEW ENGLAND CONFECTIONERY COMPANY, INC. (THE "DEBTOR" OR "SELLER").   IF YOU HAVE ANY INTEREST IN ACQUIRING ASSETS OF THE DEBTOR, YOU SHOULD CONTACT THE DEBTOR'S INVESTMENT BANKER, THREADSTONE ADVISORS, LP, C/O JAMES M. DWORKIN, AT (646) 790-8915, [jdworkin@threadstonelp.com](mailto:jdworkin@threadstonelp.com).**

a.      Competing bids may be submitted for: (i) substantially all of the assets of the Debtor (the "Purchased Assets") in their entirety (an "Entireties Bid"), and/or (ii) one or more of the Product Lines or the assets located in the Debtor's electrical cogeneration facility at the Debtor's premises (the "Co-Generation Assets").

b.      Any Entireties Bid shall be deemed to qualify as a competing bid (a "Competing Bid") only if: (1) the cash purchase price to be paid to Seller at closing is at least $13,961,900.18, which is equal to an amount $665,000 higher than the initial purchase price in the asset purchase agreement as amended ("APA"); and (2) the Competing Bid is accompanied by an executed asset purchase agreement substantially in the same form as the APA and made upon terms substantially similar to those set forth in the APA, except for modifications for the identity of the successful Competing Bidder and the increased consideration to be paid to Seller.

c.      A bid for a Product Line shall be deemed to qualify as a Competing Bid only if such bid is in the minimum amount of $500,000 of cash to be paid to Seller at closing.

d.      A bid for the Co-Generation Assets shall be deemed to qualify as a Competing Bid only if such bid is in the minimum amount of $500,000 of cash to be paid to Seller at closing.

e.      A Competing Bid must contain a case caption as set forth above and be filed, in accordance with the applicable Federal and local Rules of Bankruptcy Procedure,[1] with the United States Bankruptcy Court for the District of Massachusetts, United States Courthouse, 5 Post Office Square, Boston, MA 02109, on or before **4:30 p.m. on May 18, 2018** (the "Bidding Deadline").  A Competing Bid must be served on counsel for the Trustee, Harold B. Murphy, Murphy & King, Professional Corporation, One Beacon Street, Boston, Massachusetts 02108; Counsel for Buyer, Douglas Gooding, Choate Hall & Stewart LLP, 2 International Place, Boston, MA 02110; John Fitzgerald, the Office of the United States Trustee, 5 Post Office Square, Boston, MA 02109; and Counsel to the Lender, Daniel Cohn, Murtha Cullina, LLP, 99 High Street, Boston, MA 02110 and Michael L. Bernstein, Arnold & Porter, 601 Massachusetts Ave NW, Washington, D.C. 20001.

f.      A Competing Bid must not be subject to contingencies for financing, the completion of due diligence or environmental contingencies.

g.      Any bidder submitting a Competing Bid must deliver a cash deposit (the "Deposit") to counsel for Seller at the time of submission of such bid that is equal to five percent (5%) of the cash value of the Competing Bid (upon delivery of such a Deposit, a "Competing Bidder").  The Deposit shall be in the form of a certified check or wire transfer, and must be received on or before Bidding Deadline.  The Deposit delivered by a Competing Bidder will be forfeited in the event that such Competing Bidder is the successful bidder, or one of several successful bidders, and fails to close on the sale through no fault of the Trustee.

h.      Any party submitting a Competing Bid shall demonstrate to Seller's satisfaction that: (1) it is financially able to consummate the transactions contemplated by the Competing Bid, which ability may be demonstrated by submission of bank statements, current audited or unaudited financial statements, or other reasonable evidence, or, if the bidder is an entity formed for the purpose of acquiring the assets in question, current audited or unaudited financial statements or other reasonable evidence of the financial capability of the equity holders of the bidder; (2) it is able to fulfill any remaining obligations under the respective asset purchase agreement; and (3) it has written evidence of a financing commitment sufficient to permit the consummation of the transactions in question.

i.      Subject to Court approval, the Trustee shall be authorized to sell the Debtor's assets to the second highest bidder(s) in the event that the successful bidder does not close the sale within the time prescribed.

j.      An auction for all or any part of the Purchased Assets shall be held only if (i) there is an Entireties Bid that is a Competing Bid at the Bid Deadline, or (ii) if at the Bid Deadline one or more Product Line bids and/or Co-Generation Asset bids

---

[1] Among the applicable provisions of the Local Rules of Bankruptcy Procedure is the restriction on facsimile filings pursuant to MLBR 5005-4.

constitute a Competing Bid and the aggregate cash purchase price to be paid to Seller at closing by all Competing Bids at the Bid Deadline for the individual Product Lines and the Co-Generation Asset is at least $11,200,000.00. If no Auction is held because (x) at the Bid Deadline there is no Entireties Bid that is a Competing Bid, (y) at the Bid Deadline no Product Line bids or Co-Generation Asset bids constitute a Competing Bid, or (z) at the Bid Deadline the aggregate purchase price to be paid to Seller at closing by all Competing Bids for the individual Product Lines and the Co-Generation Asset is less than $11,200,000.00, then the Purchased Assets shall be sold to Buyer immediately after the Sale Hearing pursuant to the terms of the APA. Bidding at any auction for all or any part of the Purchased Assets shall be by open bid and shall conducted by the Court immediately prior to the Sale Hearing. Any bid by Buyer shall be credited with the Breakup Fee (defined below) by adding the Breakup Fee to the aggregate amount of any bid by Buyer when comparing it to other Competing Bids. When comparing bids, the Trustee shall not ascribe any value to any Purchased Assets that are not sold at the auction.

k.    In the event the Buyer's bid is not approved by the court as the highest and best bid, the Buyer shall receive a breakup fee in an amount equal to $400,000.00 (the "Breakup Fee"). The Breakup Fee will be payable only from the proceeds of the closing of the respective alternative transaction, in immediately available funds, on the closing with the successful bidder.

742507

EXHIBIT B

UNITED STATES BANKRUPTCY COURT
DISTRICT OF MASSACHUSETTS
EASTERN DIVISION

| | |
|---|---|
| In re:<br><br>**NEW ENGLAND CONFECTIONERY COMPANY, INC.**<br><br>Debtor. | Chapter 11<br><br>Case No. 18-11217-MSH |

**BID PROCEDURES**

SET FORTH BELOW ARE THE BID PROCEDURES ASSOCIATED WITH THE SALE OF THE ASSETS OF NEW ENGLAND CONFECTIONERY COMPANY, INC. (THE "DEBTOR" OR "SELLER").  IF YOU HAVE ANY INTEREST IN ACQUIRING ASSETS OF THE DEBTOR, YOU SHOULD CONTACT THE DEBTOR'S INVESTMENT BANKER, THREADSTONE ADVISORS, LP, C/O JAMES M. DWORKIN, AT (646) 790-8915, jdworkin@threadstonelp.com.

a. Competing bids may be submitted for: (i) substantially all of the assets of the Debtor (the "Purchased Assets") in their entirety (an "Entireties Bid"), and/or (ii) one or more of the Product Lines or the assets located in the Debtor's electrical cogeneration facility at the Debtor's premises (the "Co-Generation Assets").

b. Any Entireties Bid shall be deemed to qualify as a competing bid (a "Competing Bid") only if: (1) the cash purchase price to be paid to Seller at closing is at least $13,961,900.18, which is equal to an amount $665,000 higher than the initial purchase price in the asset purchase agreement as amended ("APA"); and (2) the Competing Bid is accompanied by an executed asset purchase agreement substantially in the same form as the APA and made upon terms substantially similar to those set forth in the APA, except for modifications for the identity of the successful Competing Bidder and the increased consideration to be paid to Seller.

c. A bid for a Product Line shall be deemed to qualify as a Competing Bid only if such bid is in the minimum amount of $500,000 of cash to be paid to Seller at closing.

d. A bid for the Co-Generation Assets shall be deemed to qualify as a Competing Bid only if such bid is in the minimum amount of $500,000 of cash to be paid to Seller at closing.

e.  A Competing Bid must contain a case caption as set forth above and be filed, in accordance with the applicable Federal and local Rules of Bankruptcy Procedure,[1] with the United States Bankruptcy Court for the District of Massachusetts, United States Courthouse, 5 Post Office Square, Boston, MA 02109, on or before **4:30 p.m. on May 18, 2018** (the "Bidding Deadline").  A Competing Bid must be served on counsel for the Trustee, Harold B. Murphy, Murphy & King, Professional Corporation, One Beacon Street, Boston, Massachusetts 02108; Counsel for Buyer, Douglas Gooding, Choate Hall & Stewart LLP, 2 International Place, Boston, MA 02110; John Fitzgerald, the Office of the United States Trustee, 5 Post Office Square, Boston, MA 02109; and Counsel to the Lender, Daniel Cohn, Murtha Cullina, LLP, 99 High Street, Boston, MA 02110 and Michael L. Bernstein, Arnold & Porter, 601 Massachusetts Ave NW, Washington, D.C. 20001.

f.  A Competing Bid must not be subject to contingencies for financing, the completion of due diligence or environmental contingencies.

g.  Any bidder submitting a Competing Bid must deliver a cash deposit (the "Deposit") to counsel for Seller at the time of submission of such bid that is equal to five percent (5%) of the cash value of the Competing Bid (upon delivery of such a Deposit, a "Competing Bidder").  The Deposit shall be in the form of a certified check or wire transfer, and must be received on or before Bidding Deadline.  The Deposit delivered by a Competing Bidder will be forfeited in the event that such Competing Bidder is the successful bidder, or one of several successful bidders, and fails to close on the sale through no fault of the Trustee.

h.  Any party submitting a Competing Bid shall demonstrate to Seller's satisfaction that: (1) it is financially able to consummate the transactions contemplated by the Competing Bid, which ability may be demonstrated by submission of bank statements, current audited or unaudited financial statements, or other reasonable evidence, or, if the bidder is an entity formed for the purpose of acquiring the assets in question, current audited or unaudited financial statements or other reasonable evidence of the financial capability of the equity holders of the bidder; (2) it is able to fulfill any remaining obligations under the respective asset purchase agreement; and (3) it has written evidence of a financing commitment sufficient to permit the consummation of the transactions in question.

i.  Subject to Court approval, the Trustee shall be authorized to sell the Debtor's assets to the second highest bidder(s) in the event that the successful bidder does not close the sale within the time prescribed.

j.  An auction for all or any part of the Purchased Assets shall be held only if (i) there is an Entireties Bid that is a Competing Bid at the Bid Deadline, or (ii) if at the Bid Deadline one or more Product Line bids and/or Co-Generation Asset bids

---

[1]  Among the applicable provisions of the Local Rules of Bankruptcy Procedure is the restriction on facsimile filings pursuant to MLBR 5005-4.

constitute a Competing Bid and the aggregate cash purchase price to be paid to Seller at closing by all Competing Bids at the Bid Deadline for the individual Product Lines and the Co-Generation Asset is at least $11,200,000.00. If no Auction is held because (x) at the Bid Deadline there is no Entireties Bid that is a Competing Bid, (y) at the Bid Deadline no Product Line bids or Co-Generation Asset bids constitute a Competing Bid, or (z) at the Bid Deadline the aggregate purchase price to be paid to Seller at closing by all Competing Bids for the individual Product Lines and the Co-Generation Asset is less than $11,200,000.00, then the Purchased Assets shall be sold to Buyer immediately after the Sale Hearing pursuant to the terms of the APA. Bidding at any auction for all or any part of the Purchased Assets shall be by open bid and shall conducted by the Court immediately prior to the Sale Hearing. Any bid by Buyer shall be credited with the Breakup Fee (defined below) by adding the Breakup Fee to the aggregate amount of any bid by Buyer when comparing it to other Competing Bids. When comparing bids, the Trustee shall not ascribe any value to any Purchased Assets that are not sold at the auction.

k.     In the event the Buyer's bid is not approved by the court as the highest and best bid, the Buyer shall receive a breakup fee in an amount equal to $400,000.00 (the "Breakup Fee"). The Breakup Fee will be payable only from the proceeds of the closing of the respective alternative transaction, in immediately available funds, on the closing with the successful bidder.

742507

EXHIBIT C

**UNITED STATES BANKRUPTCY COURT
DISTRICT OF MASSACHUSETTS
EASTERN DIVISION**

|  |  |
|---|---|
| In re:<br><br>**NEW ENGLAND CONFECTIONERY COMPANY, INC.**<br><br>　　　　　**Debtor.** | **Chapter 11**<br><br>**Case No. 18-11217** |

**ORDER ON TRUSTEE'S MOTION (A) TO APPROVE BIDDING PROCEDURES, NOTICE PROCEDURES, AND BREAKUP FEE IN CONNECTION WITH MOTION FOR ORDER APPROVING PRIVATE SALE OF SUBSTANTIALLY ALL ASSETS FREE AND CLEAR OF LIENS, CLAIMS, ENCUMBRANCES, AND INTERESTS; (B) TO AUTHORIZE TRUSTEE TO EFFECTUATE SALE PURSUANT TO TERMS OF ASSET PURCHASE AGREEMENT AS AMENDED, AND (C) FOR RELATED RELIEF**

Harold B. Murphy (the "Trustee"), the Chapter 11 trustee (the "Trustee") for New England Confectionery Company, Inc. (the "Debtor"), having filed his *Trustee's Motion (A) to Approve Bidding Procedures, Notice Procedures, and Breakup Fee in Connection with Motion for Order Approving Private Sale of Substantially All Assets Free and Clear of Liens, Claims, Encumbrances, and Interests; (B) to Authorize Trustee to Effectuate Sale Pursuant to Terms of Asset Purchase Agreement as Amended, and (C) for Related Relief* (the "Bid Procedures Motion") [doc. no. 124] seeking the approval of bid procedures, notice procedures, and termination fee with respect to the Trustee's proposed sale of substantially all of the Debtor's assets; and the Court having considered the Bid Procedures Motion and all pleadings associated with that motion; and upon the arguments of counsel and the evidence presented at the hearing on the Bid Procedures Motion; and after due deliberation and sufficient cause therefore,

**THIS COURT HEREBY FINDS THAT**:

A.      Capitalized terms not otherwise defined in this order shall have the meanings attributed to such terms in the Bid Procedures Motion.

B.      This Court has jurisdiction over these bankruptcy cases pursuant to 28 U.S.C. §§ 1334(a) and 157(b)(1).  Venue of the bankruptcy case in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409.  This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

C.      On April 3, 2018 (the "<u>Involuntary Date</u>"), an involuntary petition pursuant to Chapter 7 of the Bankruptcy Code was filed against the Debtor.

D.      On April 17, 2018 (the "<u>Conversion Date</u>"), the Debtor consented to the entry of an order for relief and filed a motion seeking to convert the case to one under Chapter 11 of the Bankruptcy Code.

E.      On the Conversion Date, the Debtor filed its *Debtor's Motion for Order Approving Private Sale of Certain of Debtor's Assets Free and Clear of All Liens, Claims, Encumbrances, and Interests and Granting Related Relief* (the "<u>Sale Motion</u>") [docket no. 33]. The Sale Motion requested the authority to sell substantially all of the Debtor's assets (the "<u>Purchased Assets</u>") to CI-N Acquisition, LLC (the "<u>Buyer</u>").

F.      The Debtor initially operated as a debtor-in-possession pursuant to Sections 1107 and 1108 of the Bankruptcy Code.

G.      On April 20, 2018, Harold B. Murphy was appointed Trustee.

H.      The Trustee and the Buyer have agreed to proceed with the sale of the Purchased Assets, subject to certain modifications to the asset purchase agreement (as amended, the "<u>APA</u>").

2

I.      The Trustee requests approval of certain bid procedures and sale notice

requirements in connection with the proposed sale, as well as the approval of a termination fee

payable to the Buyer should the Buyer not be the successful bidder.

J.      Good and sufficient cause exists for the entry of this order.

**NOW THEREFORE,** it is **HEREBY ORDERED, ADJUDGED AND DECREED AS**

**FOLLOWS:**

1.      The Bid Procedures Motion is hereby granted.

2.      The following bidding procedures shall apply in connection with the proposed

sale of the Purchased Assets (the "Sale"):

a.      Competing bids may be submitted for: (i) the Purchased Assets in their entirety
        (an "Entireties Bid"), and/or (ii) one or more of the Product Lines or the Co-
        Generation Assets.

b.      Any Entireties Bid shall be deemed to qualify as a competing bid (a "Competing
        Bid") only if: (1) the cash purchase price to be paid to Seller at closing is at least
        $13,961,900.18, which is equal to an amount $665,000 higher than the initial
        purchase price in the APA; and (2) the Competing Bid is accompanied by an
        executed asset purchase agreement substantially in the same form as the APA and
        made upon terms substantially similar to those set forth in the APA, except for
        modifications for the identity of the successful Competing Bidder and the
        increased consideration to be paid to Seller.

c.      A bid for a Product Line shall be deemed to qualify as a Competing Bid only if
        such bid is in the minimum amount of $500,000 of cash to be paid to Seller at
        closing.

d.      A bid for the Co-Generation Assets shall be deemed to qualify as a Competing
        Bid only if such bid is in the minimum amount of $500,000 of cash to be paid to
        Seller at closing.

e.      A Competing Bid must contain a case caption as set forth above and be filed, in
        accordance with the applicable Federal and local Rules of Bankruptcy Procedure,[1]
        with the United States Bankruptcy Court for the District of Massachusetts, United
        States Courthouse, 5 Post Office Square, Boston, MA 02109, on or before 4:30

---

[1] Among the applicable provisions of the Local Rules of Bankruptcy Procedure is the restriction on facsimile filings
pursuant to MLBR 5005-4.

p.m. on May 18, 2018 (the "Bidding Deadline").  A Competing Bid must be served on counsel for the Trustee, Harold B. Murphy, Murphy & King, Professional Corporation, One Beacon Street, Boston, Massachusetts 02108; Counsel for Buyer, Douglas Gooding, Choate Hall & Stewart LLP, 2 International Place, Boston, MA 02110; John Fitzgerald, the Office of the United States Trustee, 5 Post Office Square, Boston, MA 02109; and Counsel to the Lender, Daniel Cohn, Murtha Cullina, LLP, 99 High Street, Boston, MA 02110 and Michael L. Bernstein, Arnold & Porter, 601 Massachusetts Ave NW, Washington, D.C. 20001.

f.      A Competing Bid must not be subject to contingencies for financing, the completion of due diligence or environmental contingencies.

g.      Any bidder submitting a Competing Bid must deliver a cash deposit (the "Deposit") to counsel for Seller at the time of submission of such bid that is equal to five percent (5%) of the cash value of the Competing Bid (upon delivery of such a Deposit, a "Competing Bidder").  The Deposit shall be in the form of a certified check or wire transfer, and must be received on or before Bidding Deadline.  The Deposit delivered by a Competing Bidder will be forfeited in the event that such Competing Bidder is the successful bidder, or one of several successful bidders, and fails to close on the sale through no fault of the Trustee.

h.      Any party submitting a Competing Bid shall demonstrate to Seller's satisfaction that: (1) it is financially able to consummate the transactions contemplated by the Competing Bid, which ability may be demonstrated by submission of bank statements, current audited or unaudited financial statements, or other reasonable evidence, or, if the bidder is an entity formed for the purpose of acquiring the assets in question, current audited or unaudited financial statements or other reasonable evidence of the financial capability of the equity holders of the bidder; (2) it is able to fulfill any remaining obligations under the respective asset purchase agreement; and (3) it has written evidence of a financing commitment sufficient to permit the consummation of the transactions in question.

i.      Subject to Court approval, the Trustee shall be authorized to sell the Debtor's assets to the second highest bidder(s) in the event that the successful bidder does not close the sale within the time prescribed;

j.      An auction for all or any part of the Purchased Assets shall be held only if (i) there is an Entireties Bid that is a Competing Bid at the Bid Deadline, or (ii) if at the Bid Deadline one or more Product Line bids and/or Co-Generation Asset bids constitute a Competing Bid and the aggregate cash purchase price to be paid to Seller at closing by all Competing Bids at the Bid Deadline for the individual Product Lines and the Co-Generation Asset is at least $11,200,000.00.  If no Auction is held because (x) at the Bid Deadline there is no Entireties Bid that is a Competing Bid, (y) at the Bid Deadline no Product Line bids or Co-Generation Asset bids constitute a Competing Bid, or (z) at the Bid Deadline the aggregate

4

purchase price to be paid to Seller at closing by all Competing Bids for the individual Product Lines and the Co-Generation Asset is less than $11,200,000.00, then the Purchased Assets shall be sold to Buyer immediately after the Sale Hearing pursuant to the terms of the APA.  Bidding at any auction for all or any part of the Purchased Assets shall be by open bid and shall conducted by the Court immediately prior to the Sale Hearing.  Any bid by Buyer shall be credited with the Breakup Fee (defined below) by adding the Breakup Fee to the aggregate amount of any bid by Buyer when comparing it to other Competing Bids.  When comparing bids, the Trustee shall not ascribe any value to any Purchased Assets that are not sold at the auction.

k.      In the event the Buyer's bid is not approved by the court as the highest and best bid, the Buyer shall receive a breakup fee in an amount equal to $400,000.00 (the "Breakup Fee").  The Breakup Fee will be payable only from the proceeds of the closing of the respective alternative transaction, in immediately available funds, on the closing with the successful bidder.

3.      Subject to the Bid Procedures, the Trustee and the Lender each reserve their respective rights on the issue of whether a bid constitutes the highest and best bid for the Purchased Assets.

4.      The procedures for notice of the Sale proposed in the Bid Procedures Motion, as well as the proposed forms of notices attached to the Bid Procedures Motion, are approved.  The Breakup Fee is approved.

5.      Any objections to the Sale Motion must be filed with the United States Bankruptcy Court for the District of Massachusetts, 5 Post Office Square, Boston, Massachusetts 02109 by **May 18, 2018 at 4:30 p.m**.

6.      A hearing on the Sale Motion (the "Sale Hearing") shall be held on **May 23, 2018 at 1:30 p.m.**, at the United States Bankruptcy Court for the District of Massachusetts, 5 Post Office Square, Boston, Massachusetts 02109.

5

7.      This Court shall retain jurisdiction over any matters related to or arising from the

implementation of this order.

_____ _____
Honorable Melvin S. Hoffman
Chief United States Bankruptcy Judge

Dated: May _____, 2018

742438