## UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| In re: | ) |
| | )   **Chapter 11** |
| **NEW ENGLAND CONFECTIONERY** | ) |
| **COMPANY, INC.,** | ) |
| | )   **Case No. 18-11217-MSH** |
| **Debtor.** | ) |
| | ) |

### FINAL ORDER (I) AUTHORIZING CHAPTER 11 TRUSTEE TO OBTAIN POSTPETITION SECURED FINANCING; (II) AUTHORIZING CHAPTER 11 TRUSTEE TO USE CASH COLLATERAL; (III) GRANTING ADEQUATE PROTECTION TO PREPETITION SECURED LENDER; AND (IV) MODIFYING THE AUTOMATIC STAY

This matter having come before the Court for a final hearing on the motion [Doc. No. 20] (the "Financing Motion") of New England Confectionery Company (the "Debtor"), to which Harold B. Murphy, the Chapter 11 Trustee ("Chapter 11 Trustee") of the Debtor succeeded by reason of his appointment, seeking pursuant to sections 105, 361, 362, 363(c), 364(c), 364(d) and 364(e) of title 11 of the United States Code, 11 U.S.C. §§ 101, *et seq.* (as in effect for this case, the "Bankruptcy Code"), and Rules 2002, 4001 and 9014 of the Federal Rules of Bankruptcy Procedure (as in effect for this case, the "Bankruptcy Rules"), and Rule 4001-2 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Massachusetts (the "Local Rules"), interim and final orders:

(1) authorizing the Chapter 11 Trustee to obtain postpetition secured financing from ACAS, LLC, formerly known as American Capital Ltd. ("Lender") on the terms, and subject to the limitations, set forth in the Financing Motion, and to perform such other and further acts as may be necessary or appropriate in connection therewith;

(2) authorizing the Chapter 11 Trustee to (a) continue to use Cash Collateral (as defined below) pursuant to sections 361, 362 and 363 of the Bankruptcy Code, and all other Prepetition Collateral (defined below), and (b) provide adequate protection to the Lender under the following prepetition documents (the "Prepetition Loan Documents"):

A.    Credit Agreement entered into on December 21, 2007, between Debtor as borrower, and American Capital Financial Services, Inc., as Lender's agent (in such capacity, "<u>Agent</u>"), as subsequently revised and amended, concerning certain loans made by Lender to Debtor (the "<u>Term Loans</u>").

B.    Pledge and Security Agreement entered into on December 21, 2007, whereby Debtor, as borrower, granted to Agent, for the benefit of Lender, a lien on and security interest in all of its assets, including all accounts receivable, deposit accounts, inventory and proceeds thereof (the "<u>Term Loan Collateral</u>").

C.    Loan and Security Agreement entered into on August 8, 2008, between Debtor, as borrower, and Core Business Credit, LLC ("<u>Core</u>"), as lender as subsequently revised and amended ("<u>Revolving Credit Agreement</u>") for revolving loans made by Core to the Debtor (the "<u>Revolving Line of Credit</u>"), with all advances and other amounts owed under the Revolving Line of Credit being secured by the Revolving Line of Credit Collateral (as defined below);[1]

D.    Deposit Account Control Agreement entered into on October 10, 2014, between Lender, Debtor and Eastern Bank, pursuant to which Lender perfected its interest in Debtor's deposit account at Eastern Bank (the "<u>Account Agreement</u>").

On April 17, 2018, Debtor filed a Motion for an order approving the sale of certain assets of the Debtor's estate under section 541 of the Bankruptcy Code (the "<u>Debtor's Estate</u>") for the amount of $13,296,900.18, subject to applicable price adjustments, plus certain earn-out rights, all as set forth in an Asset Purchase Agreement between the Debtor and the proposed purchaser [Doc. No. 33] (the "<u>Sale Motion</u>").  The Chapter 11 Trustee has succeeded to the Debtor as proponent of the Sale Motion and is pursuing the Sale Motion subject to certain modifications, including a process for competing bids.[2]  The amended Sale Motion proposes a sale of substantially all assets of the Debtor's Estate in a transaction, and pursuant to documentation, that is acceptable to Lender

---

[1] On August 8, 2008, Core assigned all of its rights under the Revolving Credit Agreement to Core Business Funding, LLC, which on November 1, 2010 assigned all such rights to Agent for the benefit of Lender.

[2] See *Trustee's Motion (A) to Approve Bid Procedures, Notice Procedures, and Breakup Fee in Connection with Motion for Order Approving Private Sale of Substantially All Assets Free and Clear of Liens, Claims, Encumbrances, and Interests; (B) to Authorize Trustee to Effectuate Sale Pursuant to Terms of Asset Purchase Agreement, as Amended, and (C) for Related Relief* filed May 2, 2018 [Doc. No. 124].

and which is subject to approval by the Bankruptcy Court (an "<u>Approved Sale</u>").  In order to continue to operate the Debtor's business, as is a requirement of this Approved Sale, the Chapter 11 Trustee has determined that the Debtor requires the use of Prepetition Collateral, including Cash Collateral, and additional financing.

This Court held the interim hearing on the Financing Motion on April 19, 2018, and on the same date entered an interim order granting emergency relief on the Financing Motion [Doc. No. 61] (the "<u>Interim Order</u>").  On May 1, 2018, this Court held a final hearing on the Financing Motion (the "<u>Final Hearing</u>").[3]  This Court having considered all of the pleadings, documents and other papers of record filed in connection with the Financing Motion; and upon the record made by the Debtor and by the Chapter 11 Trustee at the hearings thereon; and after due deliberation and consideration and sufficient cause appearing therefor;

**IT IS FOUND, DETERMINED, ORDERED AND ADJUDGED,** that:

1.    *Jurisdiction*.

This Court has jurisdiction over this chapter 11 case pursuant to 28 U.S.C. § 1334.  The Financing Motion is a core proceeding pursuant to 28 U.S.C. § 157(b).  Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.  The Chapter 11 Trustee has been duly and properly appointed, and is operating the Debtor's business pursuant to sections 1106, 1107 and 1108 of the Bankruptcy Code.[4]  An official committee of unsecured creditors (a "<u>Committee</u>") has not been appointed as of the time of the Final Hearing.

---

[3] Although the Chapter 11 Trustee filed his *Objection to Motion for Post-Petition Financing and Interim Order* [Doc. 121], a form of final order on the Financing Motion to which he and the Lender had agreed was tendered in open court by the Chapter 11 Trustee and the Lender.  For all purposes in this case, the Financing Motion will be deemed not to have been withdrawn and the Interim Order to have been continuously in effect from the time of its entry through the entry of this Order.

[4] This case was originally commenced as an involuntary chapter 7 by three petitioning creditors (the "<u>Petitioning Creditors</u>") on April 3, 2018 (the "<u>Involuntary Date</u>").  On April 19, 2018, the Debtor consented to the entry of an

2. *Notice*.

On April 17, 2018, pursuant to Bankruptcy Rules 2002, 4001 and 9014, and the Local Rules, the Debtor provided notice of the Financing Motion and the Final Hearing by the same means as specified in the Certificate of Service filed in connection with the Interim Order [Doc. No. 51] to the following parties and/or to their counsel as indicated below: (ii) holders of the thirty (30) largest unsecured claims against the Debtor; (iii) the Lender; (iv) all other secured or potentially secured creditors; (iv) all taxing authorities whom the Debtor believes may have, or may, assert claims against the Debtor or any of the Debtor's assets; (v) counsel to each of the petitioning creditors that are party to Involuntary Petition; and (vi) all parties who have filed a notice of appearance and request for service of papers pursuant to Bankruptcy Rule 2002 (collectively, the "Notice Parties").   Given the nature and exigency of the relief sought in the Financing Motion, this Court concludes that the form, scope and timing of the foregoing notice was sufficient and adequate under the circumstances and complies with the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and any other applicable law, and no further notice relating to the Final Hearing, the Financing Motion, or entry of this Order (the "Final Order") is necessary or required.

3. *Debtor's Stipulations*.

**Without prejudice to the rights of the Chapter 11 Trustee and any other party (but subject to the Objection Date and the limitations contained below), the Debtor has stipulated and agreed that:**

---

order for relief and converted the case to chapter 11 pursuant to Bankruptcy Code § 706(a), after the Debtor filed a motion to do so on April 17, 2018.  The Chapter 11 Trustee was appointed on April 20, 2018.

(a)      **On and as of the Involuntary Date, the outstanding balance on the Term Loans was not less than $85,745,025, plus certain other amounts, including costs of collection;**

(b)      **On and as of the Involuntary Date, the outstanding balance on the Revolving Line of Credit was not less than $21,362,907, plus certain other amounts, including costs of collection;**

(c)      **On December 21, 2007, Debtor, as borrower, and Agent, for the benefit of Lender, entered into a Pledge and Security Agreement, whereby Debtor granted Agent a lien on and security interest in the Term Loan Collateral.  Agent perfected its security interest in the Term Loan Collateral by filing UCC-1 Financing Statements against Debtor, covering all assets;**

(d)      **As security for the Revolving Line of Credit, Debtor granted to Core a continuing security interest in, lien on and collateral assignment of, among other things, all of Debtor's personal property, including its right, title and interest in and to all accounts receivable, inventory, equipment, general intangibles, chattel paper, letter of credit rights, proprietary rights, instruments, documents and documents of title, investment property, deposit accounts, commercial tort claims, money, cash, cash equivalents, securities and other personal property of any kind at any time held directly or indirectly by Core or any affiliate of Core, all books and records, whether in tangible or intangible form, all other assets, if any, and all accessions to, substitutions for and replacements, products and proceeds of any of the foregoing (the "Revolving Line of Credit Collateral").  On August 8, 2008, Core perfected its security interest in the Revolving Line of Credit Collateral by filing**

UCC-1 Financing Statements against Debtor.  On August 8, 2008, Core assigned all of its rights under the Revolving Credit Agreement (including its liens on and security interests in the Revolving Line of Credit Collateral) to Core Business Funding, LLC, which on November 1, 2010, assigned all such rights to Agent for the benefit of Lender.

(e)     On October 10, 2014, Lender, Debtor and Eastern Bank executed a Deposit Account Control Agreement, pursuant to which Lender perfected its interest in Debtor's deposit account at Eastern Bank.  Lender maintains a perfected first-priority security interest in Debtor's deposit accounts, both by reason of the Deposit Account Control Agreement and by reason of the status of funds in such accounts as proceeds of accounts receivable and inventory in which Lender has a first-priority security interest;

(f)     Lender (or Agent on Lender's behalf) continues to maintain duly perfected, unavoidable, first-priority liens on and security interests in the Term Loan Collateral and the Revolving Line of Credit Collateral, including but not limited to the Debtor's accounts, inventory, equipment, general intangibles and all proceeds thereof (such Collateral, together with all proceeds thereof, the "**Prepetition Collateral**"); and

(g)     The aggregate outstanding obligations under the Term Loans and Revolving Line of Credit (collectively, the "**Prepetition Obligations**") constitute the legal, valid and binding obligations of the Debtor, enforceable in accordance with their terms (other than in respect of the stay of enforcement arising under section 362

**of the Bankruptcy Code), and the Debtor has no claims or counterclaims against Agent or Lender and no defenses to any such Prepetition Obligations.**

4.    _Effect of Debtor's Stipulations on Third Parties._

In accordance with Local Rule 4001(d), the Debtor's stipulations set forth in paragraph 3 of this Final Order (the "Debtor's Stipulations") are conspicuously set forth and are approved by this Court notwithstanding their variance from the provisions of Local Rule 4001(c).  The Court finds that such variance is appropriate because, _inter alia_, the right of other parties to challenge such stipulations is preserved, on the terms set forth in this paragraph.  The Debtor's Stipulations shall be binding on all parties-in-interest, including, without limitation, any Committee appointed in the above-captioned chapter 11 case, the Chapter 11 Trustee, and any other trustee of the Debtor's Estate in this case (or in any successor case, including any chapter 7 case to which this case may be converted), except for such of the Debtor's Stipulations as are the subject of a challenge asserted by the Chapter 11 Trustee through the filing of appropriate pleadings commencing appropriate proceedings (a "Challenge") by not later than August 17, 2018 ("Objection Date").  Thereafter, neither the Chapter 11 Trustee (except to the extent of any timely and properly filed Challenge) nor any other party-in-interest may challenge the liens or claims of Lender, or seek to disallow, subordinate, recharacterize or otherwise contest the liens or claims of Lender or commence or prosecute any other claims or causes of action in any way related to the Debtor against Lender and Affiliates (as defined below), or take any other action that is inconsistent with the Debtor's Stipulations.

5.    _The Postpetition Financing Agreement._

The Lender has agreed to lend funds to the Chapter 11 Trustee in accordance with the terms and provisions of this Final Order in a principal amount not to exceed the Maximum

Amount (the "Postpetition Financing Agreement").   Such funds may be used solely for the purposes set forth in the budget annexed as **Exhibit A** to this Final Order, which Lender has approved (the "Approved Budget")   In connection therewith, the Chapter 11 Trustee and the Lender have agreed and stipulated to the following terms and conditions, which the Court approves and orders:

(a)      The actual disbursements by the Chapter 11 Trustee shall not exceed by more than ten percent (10%) any line item in the Approved Budget for the period from the commencement of the Approved Budget through the end of any particular week, nor shall the Chapter 11 Trustee exceed by more than five (5%) the aggregate expenditures under the Approved Budget from commencement thereof to the end of any particular week, without the express written prior consent of the Lender (the "Permitted Variances");

(b)      Lender shall have a perfected first-priority lien on the Postpetition Collateral (as defined below), including the Prepetition Collateral;

(c)      Notwithstanding anything herein or in the Approved Budget, (i) the Chapter 11 Trustee may not, without Lender's express written consent, borrow funds under the Postpetition Financing Agreement or spend any Cash Collateral for the payment of any expense or obligation unless and until such expense or obligation is due and payable, and (ii) Sale Expenses (as defined below) and any other expense denoted on the Approved Budget as being payable only after consummation of an Approved Sale, may not, without Lender's express written consent, be paid prior to consummation of such Approved Sale.

(d)      The Chapter 11 Trustee shall:  (i) maintain the Debtor's existence, qualification, and good standing in any jurisdiction in which the failure to maintain such existence, qualification or good standing could reasonably be expected to have a material

adverse effect on Debtor's business or the value of Debtor's Estate or on the legality,

validity, binding effect or enforceability of any of the Prepetition Loan Documents or the

Postpetition Financing Agreement, (ii) continue to maintain all licenses and permits

necessary for the conduct of Debtor's business and the ownership and operation of property

of the Debtor's Estate used in the conduct of the Debtor's business and shall comply with

all applicable laws where failure to do so would reasonably expected be expected to have

a material adverse effect on the Debtor's business or the value of the Debtor's Estate; (iii)

use or hold all equipment of the Debtor for use in the ordinary course of the Debtor's

business and maintain such equipment in good operating condition and repair; (iv)

maintain, preserve, protect, and keep all Postpetition Collateral and all other property used

and property reasonably expected to be used in the conduct of the Debtor's business in

good condition (ordinary wear and tear excepted) in accordance with prudent industry

standards, and in material compliance with all applicable laws, in material conformity with

all applicable material contracts, servitudes, leases and agreements, and make all repairs,

renewals and replacements reasonably needed to enable the business and operations carried

on in connection therewith to be conducted in substantially the same manner as currently

conducted; and (v) keep and maintain insurance with respect to the Debtor's business and

all Postpetition Collateral that shall be in form and in substance reasonably acceptable to

Lender. Such insurance shall be with respect to loss, damages, and liability of amounts

reasonably acceptable to Lender and shall include, at a minimum, business interruption,

workers' compensation, general premises liability, fire, theft, casualty and all risk.  The

Chapter 11 Trustee has included in the Approved Budget and will timely pay all premiums

required to maintain such insurance in force, and shall cause Lender to be an additional

insured and loss payee under all policies of insurance covering any of the Postpetition

Collateral, to the extent of Lender's interest, in form reasonably satisfactory to Lender.

> *(e)* The following shall constitute an Event of Default with respect to

the Postpetition Financing Agreement:

(i)     any failure by the Chapter 11 Trustee or the Debtor to timely pay any Postpetition Obligations to the Lender upon the Maturity Date (defined below) or when otherwise due;

(ii)    the use of proceeds of the Postpetition Financing Agreement or any Cash Collateral other than in accordance with the Approved Budget and subject the Permitted Variances or the payment of any Sale Expenses other than in accordance with the provisions of this Final Order, except to the extent Lender has expressly consented to such use of funds prior to such use;

(iii)   failure of the Chapter 11 Trustee in any material respect to satisfy his reporting requirements in paragraph 8(c) below;

(iv)    denial by this Court of a motion for authority to enter into an Approved Sale, or an Approved Sale has not, for any reason, been consummated on or before May 25, 2018 ("Approved Sale Consummation");

(v)     if an event has occurred that prevents, or with the passage of time would prevent, Approved Sale Consummation, including withdrawal of or failure by the Chapter 11 Trustee to diligently prosecute the Sale Motion, or termination or occurrence of an event that would entitle the buyer to terminate its obligation to close an Approved Sale;

(vi)    conversion of this chapter 11 case to a case under chapter 7 of the Bankruptcy Code, or dismissal of this case;

(vii)   entry of an order granting relief from the automatic stay to any party (other than one sought or consented to by Lender) permitting such party to take any action against the Debtor, the Chapter 11 Trustee, or any property that is property of the Debtor's Estate, not including property which is leased, but not owned by the Debtor if such relief will not interfere with an Approved Sale;

(viii)  commencement of any litigation by the Debtor or any person authorized to act on behalf of the Debtor or the Debtor's Estate, including the Chapter 11 Trustee, against any of the Lender and Affiliates;

(ix)    if the Debtor or the Chapter 11 Trustee is enjoined, restrained or in any way prevented by any legislative, administrative or regulatory action, or by any

court order (other than an order of this Court consented to by Lender) from continuing to conduct all or any material part of the Debtor's business;

(x)    if the Chapter 11 Trustee shall grant or suffer any lien on any Postpetition Collateral without Lender's express written consent; or

(xi)    failure by the Chapter 11 Trustee to abide by any of his obligations set forth in this Final Order.

(f)    Upon an Event of Default, (i) the Lender shall have no obligation to provide any further financing or other advances or financial accommodations to the Chapter 11 Trustee, provided that the payment of expenses set forth in the Approved Budget that were accrued but unpaid prior to the occurrence of an Event of Default may be paid, with advance written notice to Lender setting forth the amounts to be paid and the recipients of each payment to be made, solely through Cash Collateral, and (ii) the Lender shall have the right to request from this Court an emergency hearing, on three (3) business days' notice, to seek relief from the automatic stay, including without limitation for the purposes of exercising any or all rights and remedies available with respect to the Postpetition Collateral (including the Prepetition Collateral) whether under the Prepetition Loan Documents, this Final Order or applicable law (including, without limitation, the Uniform Commercial Code) and any other relief this Court determines to be just and proper, *provided, however,* that if the automatic stay is no longer in effect as to Lender, Lender may exercise all such rights and remedies without further order of this Court;

(g)    The following shall be conditions precedent to advances under the Postpetition Financing Agreement (except to the extent waived in writing by the Lender): (i) This Final Order shall be in form and substance acceptable to Lender; (ii) this Final Order shall remain in full force and effect, and shall not have been modified in any way without Lender's consent; (iii) Lender shall be satisfied that all Postpetition Obligations

are secured by valid, enforceable and non-avoidable first-priority priming liens and security interests; (iv) there shall have been no Event of Default under this Final Order, and no event that, with the passage of time or the giving of notice, could become an Event of Default; and (v) the Chapter 11 Trustee shall not have sold or otherwise disposed of any of the assets of the Debtor's Estate outside the ordinary course of business without the Lender's consent.

(h)      Upon closing of an Approved Sale, sale proceeds sufficient to pay in full the Postpetition Obligations shall be remitted to the Lender (which shall apply such proceeds in payment of the Postpetition Obligations), and the balance of such sale proceeds (the "Excess Proceeds") shall be retained by the Chapter 11 Trustee, subject to the Lender's liens, and shall not be disbursed, other than for Sale Expenses as and to the extent specifically permitted by this Final Order, without Lender's written consent.  On August 20, 2018, the Chapter 11 Trustee shall turn over all remaining Excess Proceeds to the Lender, other than any amounts necessary to pay remaining unpaid, budgeted Sale Expenses, for application to the Prepetition Obligations, except for such Excess Proceeds as are the subject of a Challenge timely and properly brought by the Chapter 11 Trustee pursuant to paragraph 4 of this Final Order.

(i)      The Maximum Amount shall consist of (a) an amount equal, for any week, to the Debtor's "Ending Cash Position" for such week (to the extent negative) as set forth in the Approved Budget, plus (b) an additional amount (the "Additional DIP Availability") not to exceed (i) the amount by which the actual Ending Cash Position for such week is less than the Ending Cash Position set forth for such week in the Approved Budget solely by reason of the incurrence of Permitted Variances, and (ii) if, during any

such week during the period of the Approved Budget, the Chapter 11 Trustee's actual collections of accounts receivable are less than the dollar amount of accounts receivable projected in the Approved Budget to be collected for such week, the Chapter 11 Trustee may borrow the amount of such shortfall; *provided, however,* that (i) the aggregate amount of borrowings pursuant to the Additional DIP Availability may not exceed $500,000 for the duration of the case, and (ii) the Additional DIP Availability shall not increase the amount that the Chapter 11 Trustee is entitled to spend under the Approved Budget or any line item therein, subject to the Permitted Variances.

      6.      <u>*Findings Regarding the Postpetition Financing*</u>.

      (a)      <u>*Good Cause*</u>.  Good cause has been shown for the entry of this Final Order.  The Chapter 11 Trustee has an immediate need to obtain postpetition financing and to continue to use the Prepetition Collateral, including Cash Collateral, in order to, among other things, permit the orderly continuation of the Debtor's business, preserve the going concern value of the Debtor's Estate, make payroll and satisfy other working capital needs of the Debtor's Estate.  The Postpetition Financing and the Chapter 11 Trustee's continued use of Cash Collateral are necessary to ensure that the Chapter 11 Trustee has sufficient working capital and liquidity to preserve and maintain the going concern value of the Debtor's Estate, during the course of this bankruptcy proceeding.  Further, the Postpetition Financing Agreement and the Chapter 11 Trustee's continued use of Cash Collateral are necessary to facilitate an orderly process (a) for Debtor's operations to be conducted until the assets of the business can be sold, and (b) for sale of the assets of the Debtor's Estate to take place on such terms and within such time frame as will maximize the value to be received for such assets.  The Debtor's Estate will suffer immediate and irreparable harm

unless the Chapter 11 Trustee is immediately authorized to obtain postpetition financing as contemplated herein and to use Cash Collateral on the terms and subject to the conditions set forth in this Final Order.

(b)  *No Alternative Sources of Financing*.  The Chapter 11 Trustee has represented that the exigent circumstances of this case have prevented the Chapter 11 Trustee from seeking or obtaining financing on more favorable terms than those provided for under this Final Order (which terms, however, the Court finds to be reasonable in all respects).  As a consequence thereof, the Chapter 11 Trustee is unable to obtain adequate unsecured credit allowable under section 503(b)(1) of the Bankruptcy Code as an administrative expense.  The Chapter 11 Trustee is also unable to obtain secured credit allowable under sections 364(c)(1), 364(c)(2), 364(c)(3) and 364(d) of the Bankruptcy Code other than from Lender on the terms set forth in this Final Order.  Because the Chapter 11 Trustee requires immediate financing in order to be able to continue to operate the business of the Debtor's Estate, so that he can preserve and realize the value of the assets of the Debtor's Estate through a sale transaction, and because there is no source of financing available to the Chapter 11 Trustee other than pursuant to the Postpetition Financing Agreement as described in this Final Order, denial of the relief sought by the Chapter 11 Trustee would result in an immediate liquidation of the Debtor and a resulting substantial dissipation of value.

(c)  *Reasonably Equivalent Value*.  The terms of the Postpetition Financing Agreement and the continued use of Cash Collateral pursuant to this Final Order are fair and reasonable, reflect the Chapter 11 Trustee's exercise of prudent business judgment consistent with his fiduciary duties, and constitute reasonably equivalent value

and fair consideration. The Chapter 11 Trustee requires both additional financing and the continued use of Cash Collateral under the terms of this Final Order for legitimate business purposes and in order to satisfy postpetition liquidity needs.  After considering all of his alternatives, the Chapter 11 Trustee has concluded, in an exercise of his sound business judgment, that the financing to be provided by the Lender pursuant to the terms set forth in this Final Order represents the best financing available to the Chapter 11 Trustee.

*(d)*     *Good Faith*.     The Postpetition Financing Agreement and the continued use of Cash Collateral have been the subject of extensive negotiations conducted in good faith.  The Postpetition Obligations have been, and shall be deemed to have been, extended by the Lender in "good faith" as such term is used in section 364(e) of the Bankruptcy Code, and in express reliance upon the protections set forth therein, and shall be entitled to, and are hereby granted, the full protection of section 364(e) of the Bankruptcy Code in the event that this Final Order or any provision hereof is stayed, vacated, reversed, amended or modified on appeal or otherwise.

*(e)*     *Immediate Entry/Effectiveness of Order*.     The Chapter 11 Trustee has requested immediate entry and effectiveness of this Final Order pursuant to Bankruptcy Rules 4001(b)(2) and 4001(c)(2) and Local Rule 4001-2(b).  Absent immediate granting of the relief set forth in this Final Order, the Debtor's Estate will be immediately and irreparably harmed. Therefore, it is in the best interest of the Debtor's Estate for the Final Order to take effect immediately.

7.     *Authorization of the Postpetition Financing Agreement*.

*(a)*     *Maximum Amount*.     The terms and conditions of the Postpetition Financing Agreement are hereby approved on a final basis. The Chapter 11 Trustee is

hereby authorized to enter into and perform the transactions contemplated by this Final Order, including to borrow principal up to the Maximum Amount. The Maximum Amount may be increased, without further Court order, but only with the express written consent of Lender, in Lender's sole discretion. **For the purposes of this Final Order, the term "Postpetition Obligations" shall include the principal amount advanced by Lender, interest on such amounts at the rates provided for in this Final Order, reasonable attorneys' fees incurred in connection with the negotiation, documentation and Court approval of the Postpetition Financing Agreement (including the Interim Order and this Final Order), and any reasonable attorneys', experts, or other professional's fees and expenses incurred by Lender in connection with the enforcement of Lender's rights under the Postpetition Financing Agreement or this Final Order, but only following an Event of Default.**

(b)     *Maturity Date*. All Postpetition Obligations shall mature and become immediately due and payable in full by Chapter 11 Trustee to Lender, without the need for any notice by Lender, on the earliest of (a) May 25, 2018, (b) the occurrence of an Event of Default, or (c) the consummation of an Approved Sale (the earliest of such dates, the "Maturity Date").  Lender may, in its sole discretion, extend the Maturity Date in writing.

(c)     *Interest Rate*.  All loans and advances under the Postpetition Financing Agreement (including funds advanced pursuant to the Additional DIP Availability) shall bear interest at the per annum rate of 7.47%; *provided, however,* that upon the occurrence of an Event of Default, all loans and advances under the Postpetition Financing Agreement shall bear interest at the per annum rate of  9.47%.

(d)      *Further Assurances*.  In furtherance of the foregoing and without further notice, motion or application to, order of, or hearing before, this Court, the Chapter 11 Trustee is authorized and directed to promptly perform all acts required under or in connection this Final Order, including, without limitation, payment to Lender of the Postpetition Obligations as and when due as set forth in this Final Order, execution and delivery of financing statements, deposit account control agreements, and any other documents, instruments and agreements that Lender reasonably determines to be necessary or appropriate in connection with the Postpetition Financing Agreement, which shall be prepared by Lender, and executed and returned by the Chapter 11 Trustee, within two (2) business days after  receipt of such documentation.

8.      *Permitted Use*.

(a)      *Generally*.  Subject to paragraph (b) of this Section 8, the Chapter 11 Trustee may use Cash Collateral and proceeds of the Postpetition Financing Agreement solely in accordance with and pursuant to the terms and conditions set forth in the Approved Budget and this Final Order, but in all events only until the occurrence of the Maturity Date (and regardless of whether the Chapter 11 Trustee, prior to the Maturity Date, has expended the entire amount of Cash Collateral or proceeds of the postpetition financing permitted by the terms of this Final Order).  Notwithstanding the foregoing, (i) if the Lender in its discretion advances funds, provides other extensions of credit to the Chapter 11 Trustee or permits the continued use of Cash Collateral (as applicable) in excess of the amounts set forth in the Approved Budget, such advances, extensions of credit and uses of Cash Collateral shall be entitled to, and are hereby granted, the rights, priorities, benefits and protections of this Final Order, and (ii) upon any sale of its assets, Chapter 11

Trustee shall be required to utilize the proceeds from such sale to pay any obligations set forth in the Approved Budget incurred by the Chapter 11 Trustee before the Maturity Date but that remain unpaid at the Maturity Date and to repay the Postpetition Obligations in full, unless Lender expressly agrees otherwise in writing.  Lender has consented and the Chapter 11 Trustee has acknowledged that the Lender has consented to the use of its Cash Collateral on the condition that the Chapter 11 Trustee abide by the Approved Budget and all applicable provisions of this Final Order.

(b)      *Sale Expenses.*  Absent an Event of Default, the Chapter 11 Trustee may pay, from the proceeds of an Approved Sale or other Cash Collateral, the items listed on **Exhibit B** (the "Sale Expenses") provided that an Approved Sale has closed and such expenses are required to be paid by the Debtor's Estate after closing of such Approved Sale pursuant to the express provisions of the agreement(s) governing such Approved Sale, including the Debtor's obligations under the Transition Services Agreement or other similar agreement approved by this Court, consisting of, among other things, employee retention and severance, PTO, TSA labor, benefits, security, insurance and ongoing professional fees, *provided*, *however*, that (i) in connection with the proposed sale to CI-N Acquisition LLC, a Delaware limited liability company (the "GB Sale"), such expenses shall not exceed the amounts set forth in each line item, and in the aggregate, on **Exhibit B** to this Final Order, (ii) in connection with any Approved Sale that is determined by this Court to constitute a higher and better offer than the proposed sale to CI-N Acquisition LLC, a Delaware limited liability company, expenses paid by the Chapter 11 Trustee shall not exceed the amounts provided for on **Exhibit B**, without Lender's express written consent, and (iii) even if an Event of Default has occurred, but such Event of Default is not

within the Chapter 11 Trustee's control (or is an exercise of the Chapter 11 Trustee's right of Challenge under paragraph 4 above) and does not jeopardize receipt by the Debtor's Estate of payments after the sale closing under the GB Sale (or equivalent payments under a higher and better Approved Sale), the Chapter 11 Trustee shall have the right to use Cash Collateral to pay Sale Expenses and incurred but unpaid expenses under the Approved Budget as permitted by paragraph 5(f) notwithstanding such Event of Default.

(c)     *Budget Reports*.  The Chapter 11 Trustee shall provide to Lender a budget-to-actual report for each week covered by the Approved Budget, not later than Wednesday at 5:00 p.m. of the following week, commencing on May 9, 2018, and reasonable access to the Debtor's books and records upon the Lender's request.

9.     *Superpriority Liens*.

As security for the full and timely repayment of all of the Postpetition Obligations, Lender is hereby granted, pursuant to sections 364(c)(2) and 364(d) of the Bankruptcy Code, valid, binding, enforceable, unavoidable and fully perfected first-priority priming security interests and liens (collectively, the "Postpetition Liens") in and upon the Prepetition Collateral and all other prepetition and postpetition real and personal, tangible and intangible property and assets of the Debtor or Debtor's Estate of any kind or nature whatsoever, wherever located, whether now existing or hereafter acquired or arising, including, without limitation, all cash (including all Cash Collateral, wherever held), cash equivalents, bank accounts, accounts, other receivables, chattel paper, contract rights, inventory, instruments, documents, securities (whether or not marketable), equipment, goods, fixtures, real property interests, intellectual property, general intangibles, investment property, supporting obligations, letter of credit rights, commercial tort claims, one hundred percent (100%) of the capital stock of the Debtor's direct and indirect domestic

subsidiaries (if any), all notes or other securities held by the Debtor, trademarks, trade names, licenses, rights to payment including tax refund claims, and causes of action, excepting, however, avoidance actions under sections 544, 545, 547, 548, 549, and 550 of the Bankruptcy Code, **other than claims for recovery of any unauthorized disposition of Postpetition Collateral**), and any and all proceeds, products, offspring, rents and profits of all of the foregoing, including insurance proceeds (all of the foregoing, together with the Prepetition Collateral, the "Postpetition Collateral").  The Postpetition Liens shall be senior to any and all other liens on, security interests in, or rights with respect to the Postpetition Collateral, subject only to the Carve-Out (as defined below).

10.     *Super-Priority Claims*.

In addition to the Postpetition Liens, Lender is  hereby granted, for all Postpetition

Obligations, an allowed super-priority administrative expense claim pursuant to section 364(c)(1)

of the Bankruptcy Code (the "Super-Priority Claim"), which claim shall be senior in priority to

any and all other administrative expenses, subject only to the 507(b) Claim (as defined below)

and to a carve-out for Sale Expenses (including professional fees of estate professionals and as

allowed by the Court) incurred prior to an Event of Default or pursuant to paragraph 8(b)(iii)

above, plus fees owed to the Clerk of the Court or to the Office of the United States Trustee

pursuant to 28 U.S.C. § 1930 (the "Carve-Out").   Any such allowed professional fees and

expenses in the Carve-Out shall be paid from the proceeds of an Approved Sale or, to the extent

not yet allowed at the time of an Approved Sale, shall be paid to the Chapter 11 Trustee to be

deposited in a separate trust account of the Chapter 11 Trustee pending such approval.   The

foregoing shall not excuse the filing of fee applications by estate professionals nor shall it limit

the right of Lender or any other party-in-interest to object to any such fee applications.

11.     *Modification of Automatic Stay; Exercise of Remedies*.

The Court hereby orders that (i) the automatic stay pursuant to section 362 of the

Bankruptcy Code is hereby modified as to Agent and Lender to permit such parties to perform the

actions described in or permitted by this Final Order, in each case without further notice,

application or motion to, or order from the Court, (ii) such modification shall take effect

immediately, notwithstanding Bankruptcy Rule 4001(a)(3) or any other applicable rule that would

otherwise stay or delay the effectiveness of such modification, and (iii) neither section 105 of the

Bankruptcy Code nor any other provision of the Bankruptcy Code or applicable law shall be

utilized to prohibit such party's exercise, enjoyment and enforcement of any of such rights,

benefits, privileges and remedies regardless of any change in circumstances (whether or not foreseeable).

>    12.    *Cash Collateral*.

For purposes of this Order, the term "Cash Collateral" shall mean and include all "cash collateral" as defined by section 363(a) of the Bankruptcy Code and shall include, without limitation, all of the cash, cash equivalents, or other proceeds of the accounts, inventory and other property constituting Prepetition Collateral in which Agent or Lender has an interest (including, without limitation, any adequate protection lien or security interest), whether such interest existed as of the Involuntary Date or arises thereafter pursuant to this Final Order, any other order of this Court, applicable law or otherwise.

>    13.    *Use of Prepetition Collateral including Cash Collateral*.

Subject to the Lender's rights under this Final Order, the Chapter 11 Trustee is hereby authorized to continue to use all Cash Collateral during the period from his appointment through and including the Maturity Date and following the Maturity Date (absent an Event of Default) to pay the Sale Expenses in accordance with subparagraph (b) of Section 8 of this Final Order, or such other date as may be extended by written agreement by the Lender and Chapter 11 Trustee (but in no event thereafter, without Lender's written consent at that time or pursuant to a further order of this Court) for general corporate purposes in accordance with and subject to the terms of this Final Order and the Approved Budget and any supplementary budget that may be agreed upon by the Trustee and Lender following the consummation of the Approved Sale.   The foregoing authorization includes the Debtor's and then the Chapter 11 Trustee's use of Cash Collateral from the Involuntary Date through the entry of this Final Order (the "Previous Use"), for which the Debtor and Chapter 11 Trustee obtained the Lender's consent pursuant to section

363(c)(2)(A) of the Bankruptcy Code, and the provisions of this Final Order apply in all respects to such Previous Use.

      14.    *Adequate Protection*.

Lender is entitled to and is hereby granted, pursuant to sections 361, 363(c)(2) and 363(e) of the Bankruptcy Code, adequate protection of its interests in property of the Debtor and the Debtor's Estate, including the Prepetition Collateral and Cash Collateral, in an amount equal to the aggregate diminution in value of such collateral occurring on or after the Involuntary Date, including, without limitation, any such diminution resulting from the use (including the Previous Use) by the Debtor and Chapter 11 Trustee of the Cash Collateral and any other Prepetition Collateral and the imposition of the automatic stay pursuant to section 362 of the Bankruptcy Code (such diminution in value, the "Adequate Protection Obligations"). As adequate protection (and without prejudice to Lender's right to seek additional adequate protection at any time), the Lender is hereby granted the following (but only to the extent of any Adequate Protection Obligations):

      (a)    *Adequate Protection Liens*.

Pursuant to sections 361(2), 362, 363(c)(2), and 363(e) of the Bankruptcy Code, the Lender is hereby granted continuing valid, binding, enforceable and perfected, first-priority liens and security interests in and on all of the Postpetition Collateral of the same types as the Prepetition Collateral, together with proceeds thereof, to the extent of the Adequate Protection Obligations (the "Adequate Protection Liens"). For all purposes in this chapter 11 case or any successor case, the Adequate Protection Liens shall be deemed legal, valid, binding, enforceable, and perfected liens, and not subject to subordination, impairment or avoidance, subject to the Challenge right set forth in paragraph 4 of this Final Order. The Adequate Protection Liens shall be senior to any and all other liens on,

security interests in, or rights with respect to the Postpetition Collateral except for the liens granted to secure the Postpetition Obligations and except with respect to the Carve-Out. In no event shall any person or entity other than Lender (including the Debtor, any creditor, Chapter 11 Trustee or any other trustee or other estate representative) have, or be granted, any interest in or right with respect to the Adequate Protection Liens, without Lender's express written consent.

(b)      *507(b) Claims*.

Pursuant to section 507(b) of the Bankruptcy Code, Lender is hereby allowed a super-priority administrative expense claim (the "507(b) Claim") to the extent that the adequate protection afforded herein for any Adequate Protection Obligations proves to be inadequate.  Such claim shall be senior in priority to all other claims, including administrative expense claims, in this case, except for the Carve-Out.  In no event shall any person or entity other than Lender (including the Debtor, any creditor, the Chapter 11 Trustee, or any other trustee or estate representative) have, or be granted, any interest in or right with respect to the 507(b) Claim, without Lender's express written consent.

15. *Limitation on Use of Postpetition Financing Agreement Proceeds and Collateral*.

Notwithstanding anything herein or in the Postpetition Financing Agreement, no portion or proceeds of the Postpetition Financing Agreement, the Postpetition Collateral, the Prepetition Collateral, the Cash Collateral, or disbursements set forth in the Approved Budget, and no Carve-Out funds, shall be used for the payment of professional fees, professionals' expenses, or other disbursements, costs or expenses incurred in connection with: (a) objecting to, contesting, seeking to avoid, subordinate, recharacterize or otherwise impair, or raising any defense to the validity, perfection, priority or enforceability of, any amount due under the Postpetition Financing

Agreement or Prepetition Loan Documents or any security interests, liens or claims granted under the Prepetition Loan Documents or this Final Order or the Interim Order, or any other claim or lien asserted by Agent or Lender; (b) asserting any claims, actions or causes of action against Agent, Lender, or any of their respective agents, affiliates, subsidiaries, directors, officers, representatives, employees, attorneys or advisors (collectively, or any of the foregoing, "Lender and Affiliates"); (c) preventing, hindering or otherwise delaying Agent's or Lender's assertion, enforcement or realization on the Prepetition Collateral or the Postpetition Collateral in accordance with the terms and conditions of this Final Order, the Postpetition Financing Agreement and any other loan or security documents as applicable; or (d) contesting or seeking to amend, modify or impair any of the rights granted to Lender or Agent under the Postpetition Financing Agreement or this Final Order.  Notwithstanding same, the Trustee may use a portion of the Carve-Out not to exceed $100,000 to investigate the validity, perfection and priority of the Lender's liens and any claims against the Lender and Affiliates; *provided, however,* that no such funds may be used to prepare any pleadings or commence or continue any litigation against Lender and Affiliates.

16.    *Perfection of Postpetition Liens and Adequate Protection Liens.*

The Postpetition Liens shall not be subject to challenge on any basis.  The Adequate Protection Liens shall not be subject to challenge on any basis other than a Challenge brought by the Chapter 11 Trustee in accordance with paragraph 4 of this Final Order.  The Postpetition Liens and (subject to paragraph 4 of this Final Order) the Adequate Protection Liens shall attach and become valid, perfected, enforceable, non-avoidable and effective pursuant to this Final Order and by operation of law as of the Involuntary Date without any further notice, act or action of or by any person or entity, and without the necessity of execution by the Chapter 11 Trustee, or the filing or recordation, of any financing statements, security agreements, vehicle lien applications,

mortgages, filings with the U.S. Patent and Trademark Office, or other documents.  Agent or Lender may, however, if it so desires, make any filings or take any other actions in order to further evidence, confirm or perfect any such liens, and Chapter 11 Trustee shall cooperate in any such action, including executing and delivering any necessary or appropriate instruments and documents, upon Agent's or Lender's request as applicable.

17.    __*Waiver of Section 506(c) Surcharge.*__

**In exchange for, *inter alia*, the Lender's agreement to payment of Sale Expenses on the terms set forth in this Final Order, including, without limitation, paragraph 8(b)(iii), no costs or expenses of administration or other charge, lien, assessment or claim incurred at any time (including, without limitation, any expenses set forth in the Approved Budget) by the Debtor or the Chapter 11 Trustee or any other person or entity shall be imposed or charged against the Lender's claims, or the Postpetition Collateral, under section 506(c) of the Bankruptcy Code or otherwise, and the Chapter 11 Trustee, on behalf of the Debtor's Estate, successors and assigns (including any other trustee in this case or in any successor case), waives any and all such rights.  It is expressly understood by the Chapter 11 Trustee that in making all such undertakings and proceeding in compliance with this Final Order, the Lender has relied on the foregoing provisions of this paragraph.  Notwithstanding any approval of or consent to an Approved Budget, nothing in this Final Order shall constitute or be deemed to constitute consent by the Lender to the imposition of any costs or expense of administration or other charge, lien, assessment or claim (including, without limitation, any amounts set forth in the Approved Budget) against the Lender, its claims or its collateral under section 506(c) of the Bankruptcy Code or otherwise and no such consent shall be implied from any other action or inaction by Lender (or Agent acting on its behalf).**

18.    _Preservation of Rights Granted Under this Order._

The provisions of this Final Order and any actions taken pursuant hereto: (a) shall survive the occurrence of the Maturity Date or entry of any order: (i) converting this chapter 11 case to a case under chapter 7 of the Bankruptcy Code; (ii) dismissing or closing this case, or (iii) confirming a plan of reorganization; and (b) shall continue in full force and effect notwithstanding the occurrence of the Maturity Date or entry of any such order.  The claims, liens, and security interests granted pursuant to this Final Order shall maintain their priority, validity and perfection as provided by this Final Order until all of the Postpetition Obligations and any Adequate Protection Obligations have been indefeasibly paid in full in cash.

19.    _Effectiveness_.

This Final Order shall constitute findings of fact and conclusions of law.  Pursuant to Bankruptcy Rule 6004(h) good cause exists for relief from stay provided for therein.  Therefore, this Final Order shall take effect immediately upon execution hereof, and there shall be no stay of the effectiveness of this Final Order.  All objections to the Financing Motion or to the entry of this Final Order have been withdrawn or overruled and the Financing Motion is granted on a final basis on the terms and conditions set forth herein.  Pursuant to Bankruptcy Rule 7052, any findings of fact contained herein that may be construed as conclusions of law shall be treated as conclusions of law just as though so denominated, and any conclusions of law that may be construed as findings of fact shall be treated as findings of fact just as though so denominated.

      20.    <u>*Credit Bidding*</u>.

Lender shall not credit bid against an Approved Sale offer.  Otherwise, the Lender and

the Chapter 11 Trustee reserve their rights as to credit-bidding.


Dated:  May 3x 2018
Boston, Massachusetts

_____
Melvin S. Hoffman,
United States Bankruptcy Judge

## Exhibit A

**Approved Budget**

| Exhibit A | | | | | | |
|---|---|---|---|---|---|---|
| **New England Confectionary Company, Inc.** | | | | | | |
| **Case No. 18-11217** | | | | | | |
| | | | | | | |
| | **Recommended that available liquidity exceed projected cash need by $500K.** | | | | | |
| **Cash Flow Budget** | | | | | | |
| **in thousands** | | | | | | |
| | 2 | 3 | 4 | 5 | 6 | TOTAL |
| | 4/27/2018 | 5/4/2018 | 5/11/2018 | 5/18/2018 | 5/25/2018 | |
| | | | | | | |
| Cash Sources | | | | | | |
| AR- Collection | $ 400 | $ 660 | $ 660 | $ 660 | $ 660 | $ 3,040 |
| | | | | | | |
| GB Cash In | $ - | | $ - | $ - | $ - | $ - |
| | | | | | | |
| TOTAL CASH SOURCES | $ 400 | $ 660 | $ 660 | $ 660 | $ 660 | $ 3,040 |
| | | | | | | |
| Cash Uses | | | | | | |
| Payroll | $ 344 | $ 172 | $ 365 | $ 172 | $ 172 | $ 1,225 |
| hourly week of 5/25 in arrears- pd 6/1 | | | | | $ 172 | $ 172 |
| salaried thru 5/25 accrual- pd 5/31 | | | | | $ 133 | $ 133 |
| Mass Healthcare initiative (unbudgeted payroll expense) | $ 33 | | | | | $ 33 |
| Benefits | | $ 148 | | | | $ 148 |
| Insurance | $ 38 | $ - | $ 48 | $ - | $ - | $ 86 |
| Security (NOTE5) | | $ 3 | $ 3 | $ 3 | $ 4 | $ 13 |
| Rent(NOTE5) | $ - | $ 291 | | | | $ 291 |
| Materials | $ 150 | $ 255 | $ 255 | $ 255 | $ 255 | $ 1,170 |
| Packaging | $ - | $ 55 | $ 55 | $ 55 | $ 55 | $ 220 |
| Maintenance | $ 20 | $ 25 | $ 25 | $ 25 | $ 25 | $ 120 |
| Sanitation/Quality | $ 5 | $ 5 | $ 5 | $ 5 | $ 5 | $ 25 |
| Electricity & Gas | | | | $ 150 | $ 30 | $ 180 |
| Utilities deposit | $ 97 | | | | | $ 97 |
| Office Supplies | $ 10 | $ 10 | $ 10 | $ 10 | $ 10 | $ 50 |
| Freight | $ 25 | $ 50 | $ 50 | $ 50 | $ 50 | $ 225 |
| Brokers | | | | | $ 100 | $ 100 |
| Employee Travel Expense | $ 30 | $ 4 | $ 4 | $ 4 | $ 4 | $ 44 |
| Work Fee pursuant to APA | | $ 100 | | | | $ 100 |
| | | | | | | |
| General Contingency | | $ 20 | $ 20 | $ 20 | $ 20 | $ 80 |
| | | | | | | |
| Total disbursements from OPERATIONS | $ 752 | $ 1,138 | $ 840 | $ 749 | $ 1,035 | $ 4,512 |
| | | | | | | |
| Net Cash Flow from OPERATIONS | $ (352) | $ (478) | $ (180) | $ (89) | $ (375) | $ (1,472) |
| | | | | | | |
| Beginning Cash Position | $ 623 | $ 271 | $ (207) | $ (386) | $ (475) | |
| | | | | | | |
| Ending Cash Position | $ 271 | $ (207) | $ (386) | $ (475) | $ (849) | |

## Exhibit B

**Sale Expense Budget**

Exhibit B

| Sale Proceeds | Amounts |
|---|---|
| Purchase Price | $13,297 |
| Work Fee recovery | $200 |
| | |
| **Adjustments:** | |
| Working Capital Adjustment- projected | (700) |
| | |
| **Net Proceeds at close** | **$12,797** |
| | |
| **Less:** | |
| Refund of interim DIP (thru May) | (849) |
| ⟩ Rent through November | (2,033) |
| | |
| Professional Fees- per Interim DIP | |
| ⟩ Ibanker | (500) |
| ⟩ MK | (575) |
| ⟩ Trustee | (295) |
| ⟩ VL | (50) |
| ⟩ Other estate fees | (197) |
| - Claims Agent | |
| - Committee Counsel | |
| - VL | |
| - Other Legal (special counsel under § 327(e), if needed) | |
| - US Trustee Fees | |
| | |
| Employee expenses | |
| ⟩ Mgt KEIP | (700) |
| | |
| **Adjusted Net Sale Proceeds** | **$7,598** |
| | |
| TSA Costs (during term of TSA): | |
| | |
| ⟩ Employee retention | (418) |
| ⟩ Employee severance | (213) |
| ⟩ PTO* | (235) |
| ⟩ TSA Labor (power plant, equipment expert) | (934) |
| ⟩ Accrued payroll from we 5/25 | (305) |
| Energy Contract revenues | 278 |
| Benefits | - |
| ⟩ Security | (78) |
| ⟩ Insurance | (175) |
| Utility deposit recovery (refund to estate) | ~~(97)~~ 97 |
| ⟩ VL | (130) |

*If not TSA with approved buyer, PTO will be paid from proceeds.

⟩ denotes "Sale Expenses" as that term is used in the Final Order.