**UNITED STATES BANKRUPTCY COURT
DISTRICT OF MASSACHUSETTS
EASTERN DIVISION**

| | |
|---|---|
| In re:<br><br>**NEW ENGLAND CONFECTIONERY COMPANY, INC.**<br><br>**Debtor.** | Chapter 11<br><br>Case No. 18-11217-MSH |

**AFFIDAVIT OF JAMES M. DWORKIN IN SUPPORT OF THE MOTION TO APPROVE PRIVATE SALE OF SUBSTANTIALLY ALL OF DEBTOR'S ASSETS FREE AND CLEAR OF ALL LIENS, CLAIMS, ENCUMBRANCES, AND INTERESTS**

Pursuant to 28 U.S.C. § 1746, I, James M. Dworkin, hereby declare as follows:

1. I make this affidavit in support of the *Debtor's Motion for Order Approving Private Sale of Certain of Debtor's Assets Free and Clear of All Liens, Claims, Encumbrances, and Interests and Granting Related Relief* [docket no. 33] (the "Sale Motion").

2. I am a Managing Director of Threadstone Advisors, LP, an investment banking and advisory firm with a specific expertise in advising and selling retail and consumer products companies ("Threadstone"). Threadstone has been engaged by various clients over the years to assist in the sale and marketing of their assets to strategic and financial purchasers, in the context of both going-concern and distressed transactions. Some noteworthy engagements completed by Threadstone have been: advising Crumbs Bake Shop in various capital raises; advising Victoria Beckham Ltd. in a minority capital raise; advising Greats in a private placement led by JH Partners; advising Marc Fisher in its acquisition of Easy Spirit; and, advising Forman Mills in its sale to Goode Partners.

3. In total, I have been working as an advisor and investment professional in consumer and retail service companies for over twenty-seven years. I have been a Managing

Director of Threadstone since 2013. Prior to joining Threadstone, I was a private equity investor with approximately twenty-three years of acquisition and investing experience in the consumer markets. During that time, I oversaw the acquisition and management of Laura Secord, a large Canadian confectionary company. I hold a bachelor's degree in Finance from Georgetown University and juris doctor and Masters of Business Administration degrees from The University of Pennsylvania's law school and Wharton School of Business.

A.	**Engagement of Threadstone by NECCO**[1]

4.	Threadstone was originally engaged by the parent company of New England Confectionery Debtor, Inc. ("NECCO" or the "Debtor") in June 2017 to sell NECCO's assets. Among other things in connection with its engagement, Threadstone conducted a review of the Debtor's business and developed a detailed Confidential Information Memorandum ("CIM"), containing information about the Debtor's operations and assets.

5.	Threadstone initially identified forty-five (45) potential strategic and financial acquirers. Beginning in September 2017, Threadstone initiated contact with potential acquirers it identified and provided them with a summary of the Debtor to help determine their preliminary interest in pursuing a potential transaction with the Debtor. Threadstone invited those parties to execute non-disclosure agreements with the Debtor so that they might receive additional confidential information about the Debtor so as to further explore the possibility of a transaction with the Debtor.

6.	As a result of its efforts, from among the initial 45 parties contacted by Threadstone, 21 of those parties executed non-disclosure agreements and received the CIM.

---

[1] Additional information regarding Threadstone and its prepetition engagement to sell the Debtor's assets is contained in the *Affidavit of James Dworkin in support of the Debtor's Motion for Order Approving Private Sale of Substantially All of Debtor's Assets Free and Clear of All Liens, Claim Encumbrances, and Interests and Granting Related Relief,* which is attached to the Sale Motion as Exhibit B and is hereby incorporated herein by reference.

(Five other parties contacted declined to execute an NDA and the 19 remaining parties did not respond to repeated follow-up from Threadstone to determine their interest in a transaction.) Over the course of this outreach, Management assisted in both soliciting and receiving inbound interest in NECCO.

7. Nine of the 21 parties that executed NDAs and reviewed the NECCO CIM ultimately submitted indications of interest to purchase all or some of the assets of the Debtor.

8. Threadstone and the Debtor reviewed and analyzed the offers received. After substantial consideration and evaluation, Threadstone and the Debtor determined that the highest and best offer received was the offer presented by CI-N Acquisition, LLC (the "Buyer" or "Stalking Horse Bidder"). The Buyer is affiliated with Gordon Brothers, a known and experienced liquidator of distressed assets.

9. The Debtor was not able to complete the sale to the Buyer prior to the filing of an involuntary bankruptcy petition against the Debtor on April 3, 2018 in the United States Bankruptcy Court for the District of Massachusetts (the "Bankruptcy Court"). On April 17, 2018 and among other things, the Debtor filed a motion to convert the case to a Chapter 11 proceeding and the Sale Motion pursuant to which the Debtor moved to sell substantially all of its assets to the Buyer, pursuant to the terms of a proposed asset purchase agreement (the "APA").

10. Pursuant to the APA, in exchange for the purchased assets, the Buyer agreed to pay to the Debtor, an initial payment of $13,296,900 (subject to certain working capital adjustments) plus (a) a share of the any net proceeds from the sale of inventory produced and sold by the Buyer after the purchase of the Debtor's assets, and (b) a share of the any net proceeds in excess of the amount of $15,546,900 from the resale of the Debtor's assets by the Buyer.

11. On April 19, 2018, the Court held a hearing on the Debtor's various first-day motions. The Court granted the Motion to Convert and entered an order for relief in the Debtor's case, *nunc pro tunc* to April 17, 2018. The Court further, upon oral motion of the United States Trustee, ordered the appointment of a Chapter 11 trustee [docket nos. 58, 59]. On April 20, 2018, the Bankruptcy Court appointed Harold B. Murphy as Chapter 11 Trustee in this case (the "Chapter 11 Trustee").

B. **Engagement of Threadstone by the Chapter 11 Trustee**

12. The Chapter 11 Trustee contacted Threadstone on the day of his appointment to discuss the potential retention of Threadstone to further market the Debtor's assets in its bankruptcy case. Threadstone developed and provided to the Chapter 11 Trustee with a Chapter 11 sale process recommendation. Threadstone reviewed and discussed the process recommendation with the Chapter 11 Trustee.

13. Contemporaneously, the Chapter 11 Trustee negotiated an agreement with the Buyer for the proposed sale under the existing APA to be subject to objection and counteroffers. In connection therewith, the Trustee and the Stalking Horse Bidder negotiated and documented an amendment to the APA [docket no. 127] (the "APA Amendment") and certain bid procedures which provide, among other things, for agreed upon dates for counteroffers and a continued hearing, certain overbid protections, and a break-up fee for the benefit of the Stalking Horse Bidder [docket no. 124] (the "Bid Procedures"). The Chapter 11 Trustee consulted Threadstone in connection with his negotiation of the Bid Procedures.

14. On May 2, 2018, the Bankruptcy Court entered an order granting the *Chapter 11 Trustee's Motion (A) to Approve Bidding Procedures, Notice Procedures, and Breakup Fee in Connection with Motion for Order Approving Private Sale of Substantially All Assets Free and Clear of Liens, Claims, Encumbrances, and Interests; (B) to Authorize Trustee to Effectuate sale*

4

*Pursuant to Terms of Asset Purchase Agreement, as Amended, and (C) for Related Relief* [docket no. 124] and approving the Bid Procedures [docket no. 131]. On the same date, the Bankruptcy Court docketed an amended notice of sale of the Debtor's assets to the Stalking Horse Bidder, which established May 18, 2018 as the deadline to submit counteroffers and/or object to the proposed sale (the "Bid Deadline") and set a continued hearing on the Sale Motion for May 23, 2018 at 1:30 p.m. [docket no. 127] (the "Sale Notice").

15. Pursuant to the Bid Procedures and the Sale Notice and among other things,

   a. The Trustee was authorized to solicit bids for (a) substantially all of the Debtor's assets on terms substantially similar to those in the existing APA with the Stalking Horse Bidder (an "Entireties Bid"), (b) the Debtor's individual product lines and the assets associated therewith including, without limitation, inventory, machinery, intellectual property, and related licenses and permits (a "Product Line Bid"), and (c) the assets located in the Debtor's electrical cogeneration facility (a "Co-Generation Bid");

   b. The minimum amount of a qualifying competing Entireties Bid was set at $13,961,900, or $665,000 more than the purchase price under the existing APA;

   c. The minimum amount of a qualifying competing Product Line Bid or Co-Generation Bid was set at $500,000; and

   d. An auction for all or any part of the Debtor's assets would be held only if (i) there was a qualifying, timely Entireties Bid, or (ii) there was one or more qualifying, timely Product Line Bids and/or Co-Generation Bids and the aggregate cash purchase price to be paid to Seller at closing by all such qualifying Product Line Bids and/or Co-Generation Bids was at least $11,200,000.00.

16. After documenting his arrangement for the post-petition marketing and solicitation process, the Chapter 11 Trustee and Threadstone negotiated an amendment to Threadstone's original prepetition engagement letter and the Chapter 11 Trustee filed an application to employ Threadstone as his investment banker in connection with the proposed sale of substantially all the Debtor's assets pursuant to the modified retention agreement [docket no. 147].

5

17. Upon approval of the Bid Procedures, Threadstone commenced marketing the Debtor's assets in accordance therewith. In part due to the additional exposure and press regarding NECCO created by its bankruptcy filing, Threadstone and/or the Chapter 11 Trustee were contacted by 67 parties expressing an interest in purchasing some or all of the Debtor's assets. Threadstone added all of these parties to its existing database of potential acquirers. In coordination with the Chapter 11 Trustee, Threadstone routinely kept parties apprised of developments and responded to interested parties' requests for information in conjunction with the Chapter 11 Trustee. The Chapter 11 Trustee and the Debtor assisted in both soliciting and receiving expressions of interest.

18. On May 4, 2018, Threadstone sent an electronic mail transmission to its database of 109 potential acquirers, including the forty-five (45) parties contacted by Threadstone in connection with its prepetition marketing efforts. The May 4 correspondence was prepared by the Chapter 11 Trustee and Threadstone to help determine parties' preliminary interest in pursuing a potential transaction with the Chapter 11 Trustee. It contained information regarding the proposed sale and the Chapter 11 case and included copies of the following:

    a. The Sale Notice and the Bid Procedures;

    b. The asset purchase agreement with the Stalking Horse Bidder and APA Amendment; and

    c. A form nondisclosure agreement developed by the Chapter 11 Trustee and required to be executed and returned by any potential bidder who had not previously executed one so that they might receive additional confidential information about the Debtor (the "NDA").

19. As a result of these initial communications, from among the 109 parties contacted by Threadstone, 34 of those parties executed NDAs and received a revised CIM.[2] The revised

---

[2] Three (3) other parties contacted declined to execute an NDA and the 72 remaining parties did not respond to repeated follow-up from Threadstone to determine their interest in a transaction.

CIM is a detailed 48-page document with historical background and financial information about NECCO including, without limitation:

    a.    Historical financials both on a consolidated basis and individually by brand, from 2014-2017;

    b.    Customer information relating to each of the company's principal brands;

    c.    Geographic sales information; and

    d.    Updated 12-month financials.

20. In response to various inquiries and requests with parties who executed NDAs, Threadstone worked with the Chapter 11 Trustee and the Debtor's management to provide financial and other requested information to potential acquirers including without limitation:

    a.    Fixed asset listings;

    b.    Accounts receivable detail;

    c.    Inventory detail;

    d.    Intellectual property detail;

    e.    Debtor's order backlog;

    f.    Copies of contracts and other agreements related to the operation of the Debtor's business;

    g.    Certain customer information;

    h.    Historical audited financials and reconciliations; and

    i.    Various analyses relating to the Debtor's operations.

21. On multiple occasions between May 7, 2018 and May 18, 2018, Threadstone, the Debtor's management, and in some cases, the Chapter 11 Trustee participated in conference calls with potential bidders to respond to their inquiries and address questions and issues regarding the Debtor's operations and finances. This process continued through the Bid Deadline.

22. Among other things, the Chapter 11 Trustee and Threadstone arranged two management presentations at the Debtor's facility to allow interested parties to tour the facility

and to access the Debtor's management and the Chapter 11 Trustee with respect to any inquiries regarding the Debtor's business and the sale. Each presentation commenced at 9:30 a.m. and lasted approximately 4 hours. The first such presentation was held on the morning of May 10, 2018 from 9:30 a.m. to approximately 1:00 p.m. Three (3) interested bidders attended. The second management presentation was held on May 15, 2018. Seven (7) potential bidders attended.

23.     Following each management presentation, the Chapter 11 Trustee, the Debtor's management, and Threadstone conducted additional meetings with potential bidders to address issues raised and respond to requests for information.

24.     On the Bid Deadline, the Chapter 11 Trustee received three (3) Entireties Bids, from Round Hill Investments, LLC, kgbdeals Shopping, Inc., and Spangler Candy Company. The Chapter 11 Trustee also received four (4) Product Line Bids from Frankford Candy, LLC, Stichler Products, Inc., and two from Melville Candy Corporation. The aggregate amount of the Product Line Bids was less than $11,200,000.

25.     Subsequent to receiving the bids described above, the Chapter 11 Trustee, Threadstone and management have continued to respond to diligence requests from the Entireties Bidders in addition to accommodating various requests for conference calls. The Product Line Bidders have been informed that their relevant threshold was not met and, thus, no Product Line auction process would be held.

26. To the extent that I subsequently discover any facts bearing on this Affidavit, I will supplement this Affidavit.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

_____
James M. Dworkin
Threadstone Advisors, LP
477 Madison Avenue, 24th Floor
New York, NY  10022
jdworkin@threadstonelp.com

Dated:  May 22, 2018

UNITED STATES BANKRUPTCY COURT
DISTRICT OF MASSACHUSETTS
EASTERN DIVISION

| | |
|---|---|
| In re:<br><br>NEW ENGLAND CONFECTIONERY COMPANY, INC.<br><br>Debtor. | Chapter 11<br><br>Case No. 18-11217-MSH |

## DECLARATION REGARDING ELECTRONIC FILING

I, James M. Dworkin, hereby declare under penalty of perjury that all of the information contained in the *Affidavit of James M. Dworkin in Support of Motion to Approve Private Sale of Substantially All of Debtor's Assets Free and Clear of Liens, Claims, Encumbrances, and Interests* (the "Affidavit") filed electronically is true and correct. I understand that this DECLARATION is to be filed with the Clerk of Court electronically concurrently with the electronic filing of the Affidavit. I understand that failure to file this DECLARATION may cause the Affidavit to be struck and any request contained or relying thereon to be denied, without further notice.

I further understand that pursuant to the Massachusetts Electronic Filing Local Rule (MEFLR)-7(a) all paper documents containing original signatures executed under the penalties of perjury and filed electronically with the Court are the property of the bankruptcy estate and shall be maintained by the authorized CM/ECF Registered User for a period of five (5) years after the closing of this case.

Dated: May 22, 2018

Signed: _____
James M. Dworkin

742686