**UNITED STATES BANKRUPTCY COURT
DISTRICT OF MASSACHUSETTS
EASTERN DIVISION**

| | |
|---|---|
| In re:<br><br>**NEW ENGLAND CONFECTIONERY COMPANY, INC.**<br><br>Debtor. | Chapter 11<br><br>Case No. 18-11217-MSH |

**EMERGENCY MOTION BY TRUSTEE FOR ENTRY OF SALE ORDER
TO AUTHORIZE TRUSTEE TO SELL SUBSTANTIALLY ALL ASSETS
TO ROUND HILL INVESTMENTS, LLC**

Harold B. Murphy, the Chapter 11 trustee (the "Chapter 11 Trustee") of New England Confectionery Company, Inc. ("NECCO" or the "Debtor"), submits this motion for the entry of the order attached hereto as Exhibit A (the "Sale Order") authorizing the Trustee to sell substantially all of the assets of NECCO to Round Hill Investments, LLC (together with any permitted assignee thereof, "Round Hill"), the second highest bidder at the auction held before the Court on May 23, 2018 in accordance with the asset purchase agreement (the "RH Asset Purchase Agreement") and transition services agreement (the "RH Transition Services Agreement") attached hereto as Exhibit B and Exhibit C, respectively. In support of this motion, the Trustee states as follows:

**I.    JURISDICTION AND VENUE**

1. This Court has jurisdiction over the motion pursuant to 28 U.S.C. §157 and 1334. The motion is a core matter pursuant to 28 U.S.C. §157(b)(2)(A).

2. Venue is proper in this District pursuant to 28 U.S.C. §1408 and 1409.

3. The statutory predicates for the relief requested herein are sections 105, 363, and 365 of the Bankruptcy Code.

## II. BACKGROUND

4. On April 3, 2018 (the "Petition Date"), three creditors of the Debtor filed an involuntary petition for relief against the Debtor under Chapter 7 of 11 U.S.C. §101, *et seq.* (the "Bankruptcy Code").

5. On April 17, 2018, the Debtor filed a motion to convert its case to a case under Chapter 11 of the Bankruptcy Code [docket no. 18] (the "Motion to Convert") and a motion (the "Sale Motion") to sell substantially all of its assets to the CI-N Acquisition, LLC (the "Stalking Horse Bidder")[1] for a purchase price of $13,296,900 and other consideration, including the right of the Estate to participate in the proceeds of sale of new inventory created during a post-sale transition period and a share of the net proceeds realized by the Stalking Horse Bidder from the subsequent sale of the purchased assets by the Stalking Horse Bidder (the "Additional Consideration").

6. On April 19, 2018, the Motion to Convert was granted and upon oral motion of the United States Trustee, the Court authorized the appointment of the Chapter 11 Trustee.

7. On or about May 2, 2018, the Chapter 11 Trustee filed a *Motion (A) to Approve Bidding Procedures, Notice Procedures, and Breakup Fee in Connection with Motion for Order Approving Private Sale of Substantially All Assets Free and Clear of Liens, Claims, Encumbrances, and Interests; (B) to Authorize Trustee to Effectuate sale Pursuant to Terms of Asset Purchase Agreement, as Amended, and (C) for Related Relief* in connection with the proposed sale to the Stalking Horse Bidder pursuant to the Sale Motion which was approved by order of even date [docket no. 131] (the "Sales Procedure Order").

---

[1] The Sale Motion did not provide an opportunity for third parties to submit higher offers. A counteroffer procedure was established for the sale process after the Chapter 11 Trustee was appointed.

2

8. Pursuant to the Sale Motion and Sales Procedure Order, bids for NECCO's product lines were timely submitted by: (i) Frankford Candy, LLC; (ii) Stichler Products, Inc.; (iii) Melville Candy Corporation. Bids for the entirety of the Purchased Assets, as defined in the Asset Purchase Agreement with the Stalking Horse Bidder, were timely submitted by: (i) Spangler Candy Company ("Spangler"); (ii) Round Hill; and (iii) kgbdeals Shopping, Inc. ("KGB"). Prior to the hearing on the Sale Motion, KGB informed the Trustee that it declined to participate in further bidding.

9. An auction was held on May 23, 2018 before the Court (the "Auction") amongst the Stalking Horse Bidder, Spangler, and Round Hill (the "Bidders"). The bids submitted prior to the Auction by the Stalking Horse Bidder and Spangler included Additional Consideration in one form or another. Round Hill's bid was an all-cash bid. Before the Auction commenced, the Chapter 11 Trustee identified concerns respecting valuation of the Additional Consideration, particularly the absence of any obligation on the part of a Bidder to sell any or all of the purchased assets by a date certain.

10. Accordingly, the Chapter 11 Trustee and the Bidders agreed that the bids submitted at the Auction would be for cash and not include any Additional Consideration. Bidding commenced at $15,250,000, $250,000 greater than the amount of Round Hill's cash bid submitted prior to the Auction. The Stalking Horse Bidder terminated further bidding following Spangler's bid of $17,330,000. Ultimately, Spangler submitted the highest bid at the Auction consisting of $17,830,000 to be paid in cash at closing and $1,000,000 to be paid in four monthly installments as follows: $250,000 on or before June 30, 2018, $250,000 on or before July 31, 2018, $250,000 on or before August 31, 2018, and $250,000 on or before September 30, 2018 (the "Guaranteed Payments"). Round Hill submitted the second highest bid at the Auction

3

consisting of $17,580,000 to be paid at in cash at closing, and $1,000,000 to be paid pursuant to the Guaranteed Payment schedule. After Spangler had been approved as the high bidder at the Auction and in response to the Court's inquiry, Round Hill agreed to proceed with a purchase of the Debtor's assets for the amount of its last bid ($18,580,000) subject to the terms and conditions of its bid (which has an outside termination date of May 25, 2018), in the event that the sale transaction between the Chapter 11 Trustee and Spangler did not close.

11. On May 24, 2018, the Chapter 11 Trustee intended to close the sale transaction with Spangler in accordance with its high bid. However, on the afternoon of May 24, 2018, Spangler advised the Chapter 11 Trustee that it was unwilling to close without a substantial price reduction and a modified asset purchase agreement that the Trustee found unacceptable.

12. Due to the severity of time restraints, the Chapter Trustee, after determining that Spangler might not close, directed his investment banker to commence negotiations with Round Hill, the second highest bidder. However, Round Hill, in its view felt harmed formidably by, among other things, the following: (1) uncertainty as it related to the license (which only on late Friday -- after it was received a communication directly from the Trustee -- could it get necessary assurances of its assignability to Round Hill); (2) the need for a finding under section 363(m) specific as to Round Hill; and (3) the deferment of the closing date and the opportunity to avail itself of the proximity to the necessary and essential parties due to the Memorial Day weekend. Accordingly, Round Hill considered the substantial expenses it already had incurred and would have to further incur in submitting a revised offer; and coupled with loss of time and opportunity felt a price reduction was warranted which the investment banker, after negotiations, recommended to the Trustee.

13. While the Chapter 11 Trustee believed that Spangler did not have good cause not to close in accordance with its bid, the delays, expense, and uncertainties associated with litigation with a reluctant purchaser were matters that the Debtor's business could not sustain.

14. Therefore, at approximately 2:45 p.m. on May 25, 2018, the Chapter 11 Trustee delivered a notice to both Spangler and Round Hill that, subject to a reservation of all rights, the Chapter 11 Trustee would consider final and best bids from each of Spangler and Round Hill subject to the following conditions:

    a) Such bids were required to be for a minimum purchase price of $17,330,000 (the point at which the Stalking Horse Bidder terminated its bidding), and could include deferred payments of up to $1,000,000 pursuant to the Guaranteed Payment schedule.

    b) Such bids were required to be for the entirety of the Debtor's assets, and that the splitting of purchased assets and the purchase price between the Bidder and another party would not be considered acceptable by the Chapter 11 Trustee.

    c) Such bids were required to be received by 6:00 p.m. Eastern that evening and accompanied by the following:

        i. An executed Asset Purchase Agreement;

        ii. An executed Transition Services Agreement; and

        iii. A form of proposed Sale Order substantially consistent with the form of order most recently circulated between the Chapter 11 Trustee and to each Bidder.

The Trustee's notice provided that upon acceptance of a final and best offer, the Chapter 11 Trustee would seek Court approval of such bid, without further bidding by any party, with a closing to occur one (1) business day following entry of the approved Sale Order.

15. Spangler did not respond to the Chapter 11 Trustee's May 26 notice and did not submit a further bid.

16. Prior to the 6:00 p.m. deadline, Round Hill delivered to the Chapter 11 Trustee the Sale Order attached as Exhibit A, the executed RH Asset Purchase Agreement attached as Exhibit B, and the executed RH Transition Services Agreement attached as Exhibit C providing for payment to the Chapter 11 Trustee in exchange for the Purchased Assets of $17,330,000, consisting of $16,330,000 in cash at closing and $1,000,000 pursuant to the Guaranteed Payment schedule.

17. On the morning of May 26, 2018, the Chapter 11 Trustee executed and returned to Round Hill the RH Asset Purchase Agreement and the RH Transition Services Agreement.

18. The Sale Order resolves the objections filed by the United States Environmental Protection Agency ("EPA") and the Pension Benefit Guaranty Corporation ("PBGC"). The terms contained in paragraph X of the Sale Order include the proposed inserts of the EPA, as set forth in its limited objection and subsequent electronic mail correspondence with the Chapter 11 Trustee. The terms respecting the PBGC in paragraphs X of the Sale Order reflect the language proposed by the PBGC in its limited objection, as further modified by subsequent electronic mail correspondence with the Chapter 11 Trustee. A blackline comparison of the Sale Order to the proposed sale order attached to the Sale Motion is attached hereto as Exhibit D. Blackline comparisons of the RH Asset Purchase Agreement and the RH Transition Services Agreement to the asset purchase agreement and transition services agreement submitted by Round Hill prior to the auction [docket no. 182] are attached hereto as Exhibit E and Exhibit F, respectively. An affidavit by Round Hill with respect to the findings in the Sale Order pursuant to Section 363(m) of the Bankruptcy Code is attached hereto as Exhibit G.

### III. EMERGENCY RELIEF REQUESTED

19. By this motion and for the reasons set forth in the Sale Motion, the Chapter 11 Trustee requests entry of the Sale Order without further bidding, authorizing the Chapter 11 Trustee to consummate the sale of the Purchased Assets to Round Hill upon the terms set forth in such Sale Order, the RH Asset Purchase Agreement, and the RH Transition Services Agreement.

20. In light of the uncertainty associated with the Debtor's operations and financial condition, immediate approval of the Sale Order is requested. [2]

21. The Chapter 11 Trustee reserves all rights against Spangler.

**WHEREFORE**, the Chapter 11 Trustee respectfully requests that the Court:

(a) Enter the Sale Order in the form attached hereto authorizing the Chapter 11 Trustee to consummate the sale of the Purchased Assets to Round Hill upon the terms set forth in such Sale Order, the RH Asset Purchase Agreement, and the RH Transition Services Agreement; and

(b) Grant such other relief as is just and proper.

Respectfully submitted,

HAROLD B. MURPHY,
CHAPTER 11 TRUSTEE

By his counsel,

/s/ Andrew G. Lizotte
Harold B. Murphy (BBO #362610)
Andrew G. Lizotte (BBO #559609)
Christopher M. Condon (BBO #652430)
MURPHY & KING, Professional Corporation
One Beacon Street
Boston, MA 02108
Tel: (617) 423 0400
Email: alizotte@murphyking.com

DATED: May 29, 2018

---

[2] Pursuant to Section 7.1(d) thereof, Round Hill may terminate the RH Asset Purchase Agreement in the event that the Sale Order does not enter by today, May 29, 2018. Contemporaneously with the filing of this motion, Round Hill has agreed in writing to extend the deadline for entry of the Sale Order by one (1) day to May 30, 2018.