## UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF MASSACHUSETTS
## EASTERN DIVISION

| | |
|---|---|
| In re | Chapter 7 |
| NEW ENGLAND CONFECTIONERY COMPANY, INC. | Case No. 18-11217-MSH |
| Debtor. | |

| | |
|---|---|
| HAROLD B. MURPHY, CHAPTER 11 TRUSTEE OF NEW ENGLAND CONFECTIONERY COMPANY, INC., | |
| Plaintiff, | Adversary Proceeding No. 18-01140 |
| v. | |
| ACAS, LLC, | |
| Defendant. | |
| and | |
| NECCO REALTY INVESTMENTS LLC, NECCO REALTY MA I LLC, NECCO REALTY MA II LLC AND NECCO REALTY MA III LLC, | |
| Nominal Defendants. | |

| | |
|---|---|
| In re | Chapter 7 |
| NEW ENGLAND CONFECTIONERY COMPANY, INC. | Case No. 18-11217-MSH |
| Debtor. | |

| | |
|---|---|
| **CHAPTER 11 TRUSTEE OF NEW ENGLAND CONFECTIONARY COMPANY, INC.,**<br><br>             **Plaintiff,**<br><br>**v.**<br><br>**ACAS, LLC, ARES CAPITAL CORPORATION, ARES CAPITAL MANAGEMENT LLC, MICHAEL MCGEE, MYUNG YI, ANUJ KHANNA, GORDON O'BRIEN, STEPHEN CHEHI, DANIEL KATZ, DOUGLAS WEEKES, AND DAVID EATON,**<br><br>             **Defendants.** | **Adversary Proceeding No. 19-01011** |

## SETTLEMENT AGREEMENT

THIS SETTLEMENT AGREEMENT ("**Agreement**") is entered into this 20th day of January 2021, by and between Plaintiff, HAROLD B. MURPHY, in his capacity as the appointed, qualified and serving Chapter 7 Trustee (the "**Trustee**") of New England Confectionery Company, Inc. ("**NECCO**" or the "**Debtor**"), on the one hand, and ACAS, LLC ("**ACAS**"), Ares Capital Corporation ("**ARCC**"), Ares Capital Management LLC, Michael McGee, Myung Yi, Anuj Khanna, Stephen Chehi, Daniel Katz, and nominal defendants NECCO Realty Investments, LLC, NECCO Realty MA I LLC, NECCO Realty MA II LLC, NECCO Realty MA III LLC (collectively, the "**Defendants**") on the other hand.  The Trustee and the Defendants are referred to collectively as the "**Parties**," and individually as a "**Party**."

## BACKGROUND

A.    On April 3, 2018, certain creditors of NECCO filed an involuntary petition for relief under Chapter 7 of 11 U.S.C. § 101, et seq. (the "**Bankruptcy Code**") against NECCO in

the United States Bankruptcy Court for the District of Massachusetts (the "**Bankruptcy Court**").

This case is referred to as the "**NECCO Bankruptcy Case**."  NECCO voluntarily converted the

Chapter 7 proceeding to a Chapter 11 proceeding in order to effectuate an expedited asset sale

pursuant to Section 363 of the Bankruptcy Code to an affiliate of Gordon Brothers without

opportunity for counteroffers.

B.      On April 20, 2018, the Bankruptcy Court appointed Harold B. Murphy as the

Chapter 11 trustee of the Debtor, who conducted a competitive sale process for the Debtor's

assets, solicited seven (7) counteroffers and ultimately consummated a sale to Round Hill

Investments, LLC and its designee for $15,247,000.

C.      Later, on January 15, 2019, the Bankruptcy Court granted the Trustee's

unopposed motion to convert the NECCO Bankruptcy Case back to a Chapter 7 proceeding.  The

Trustee was then appointed to serve as Chapter 7 trustee for NECCO.

D.      On August 31, 2018, the Trustee initiated two actions against the Defendants:

(i) Adversary Proceeding No. 18-01140 filed against ACAS and nominal defendants NECCO

Realty Investments, LLC, NECCO Realty MA I LLC, NECCO Realty MA II LLC, NECCO

Realty MA III LLC (collectively "**NECCO Realty**"); and (ii) a civil case filed against ACAS,

ARCC, Ares Capital Management LLC, Michael McGee, Myung Yi, Anuj Khanna, Stephen

Chehi, and Daniel Katz in the United States District Court for the District of Massachusetts.[1]

The civil case was subsequently referred to the Bankruptcy Court and assigned Adversary

Case 18-11217 Doc 851 Filed 05/05/21 Entered 05/05/21 18:41:05 Desc Main Document Page 3 of 32

---

[1] The case initially named additional defendants Gordon O'Brien, Douglas Weekes, David Eaton, Ares Management LLC and Ares Management L.P.  However, the Parties filed a joint stipulation of dismissal of Ares Management LLC and Ares Management L.P.  D.I. 48, Case No. 19-01011.  By an Order dated December 4, 2019, the Court dismissed all the claims against Mr. O'Brien.  D.I. 63, No. 19-01011.  By an Order dated January 31, 2020, the Court dismissed all of the claims against Mr. Weeks and Mr. Eaton.  D.I. 67, No. 19-01011.

Proceeding No. 19-01011. Together, these two cases are referred to as the "**Adversary Proceedings**," and the claims in these two cases are referred to as the "**Adversary Claims**."

E.  In Adversary Proceeding 18-01140, the Trustee alleges that ACAS, which was an indirect shareholder of and a lender to NECCO, caused NECCO to take certain actions and to enter into certain transactions that, the Trustee claims, were intended to benefit ACAS rather than NECCO.  The Trustee asserts that as a result of its alleged conduct, ACAS should be held liable for breach of fiduciary duty; that ACAS's claims against NECCO should be disallowed, equitably subordinated or recharacterized; that payments allegedly made to or for the benefit of ACAS should be avoided under fraudulent transfer and preference theories; that various entities should be consolidated with one another; that the Trustee should obtain the benefit of certain value that was received by NECCO Realty; and that NECCO Realty's rent claim against NECCO should also be disallowed.

F.  In Adversary Proceeding 19-01011, the Trustee asserts that various officers and directors of NECCO (including Michael McGee, Myung Yi, Anuj Khanna, Stephen Chehi, and Daniel Katz) breached their fiduciary duty by permitting certain transactions to take place, and preventing others from taking place.  The Trustee also asserts that ACAS, ARCC, and Ares Capital Management LLC aided and abetted the alleged breaches of fiduciary duty.

G.  All of the Defendants in the Adversary Proceedings deny the Trustee's claims in their entirety.

H.  On November 5, 2018, the Defendants filed motions to dismiss the Adversary Proceedings.  After hearing, the Bankruptcy Court entered an order granting in part and denying in part the Defendants' motion in Adversary Proceeding 18-01140.  DI 44, No. 18-01140.  On August 16, 2019, the Trustee filed an amended complaint in that proceeding.  After hearing, the

Bankruptcy Court entered an order granting in part and denying in part the Defendants' motion in Adversary Proceeding 19-01101.  DI 63, No. 19-01011.  On February 14, 2020, the Trustee filed an amended complaint in that matter.

I.       In order to avoid incurring further cost and expense, the Trustee and the Defendants have agreed to settle and compromise the Trustee's claims against the Defendants in the Adversary Proceedings, upon the terms and conditions set forth in this Agreement.

NOW THEREFORE, in consideration of the promises and mutual covenants and agreements contained herein, the receipt and sufficiency of which are hereby acknowledged, the Parties hereto, intending to be legally bound, hereby covenant and agree as follows:

**1.       Settlement Subject to Court Approval.**

1.1      The enforceability of this Agreement shall be subject to and conditioned upon the approval of this Agreement by "Final Approval Order" (as defined in paragraph 1.2 below) of the Bankruptcy Court in the NECCO Bankruptcy Case.  The Trustee shall use his best efforts to obtain entry of a Final Approval Order approving this Agreement as promptly as possible.  The Defendants shall cooperate with the Trustee in his effort to obtain Bankruptcy Court approval of this Agreement.

1.2      The Trustee shall promptly file a motion to approve this Agreement (the "**Motion**"), together with a proposed order in the form attached hereto as Exhibit A ("**Approval Order**"), in accordance with Rule 9019 of the Federal Rules of Bankruptcy Procedure.  The motion shall be in form and content reasonably acceptable to the Defendants.   A "**Final Approval Order**" shall be the Approval Order, without any changes that have not been approved in writing by all Parties, upon the expiration of fourteen (14) days following the entry of the Approval Order unless an appeal from such Approval Order has been taken or a motion

5

for reconsideration, rehearing or to vacate or modify the Approval Order (collectively, a "**Reconsideration Motion**") has been filed, in which event the Approval Order shall be deemed "Final" if and when both (a) the appeal or Reconsideration Motion, as applicable, has been finally adjudicated or dismissed and is not subject to any further judicial review and (b) the Approval Order remains unchanged or has been changed only in a manner that is agreed to in writing by all Parties. The date on which the Approval Order, without any changes that have not been approved in writing by all Parties, becomes a Final Approval Order is the "**Final Approval Date**." In the event of an appeal or Reconsideration Motion of the Approval Order, the Parties shall use their best efforts to seek denial of the Reconsideration Motion, dismissal of the appeal, or an affirmance of the Approval Order, as applicable.

2.     **No Admission of Liability.**

2.1     The Parties intend this settlement to be a final and complete resolution of all claims asserted by the Trustee, and any other claims that could have been asserted by the Trustee, against the Defendants in the Adversary Proceedings and all claims that have been or could have been filed or asserted by the Defendants in the NECCO Bankruptcy Case, except as specifically provided herein. The Defendants do not admit any liability, nor do they admit any wrongdoing, however described, including without limitation, any violations of federal or state laws, and the Defendants expressly deny any such wrongdoing or liability. Nothing herein

Case 18-11217   Doc 831   Filed 07/30/19   Entered 07/30/19 18:44:01   Desc Main   Document   Page 6 of 15

contained shall constitute an adjudication or finding on the merits as to the Trustee's Adversary Claims, and shall not be deemed to be, intended to be, or construed as an admission of liability, in any way on the part of any Party, or any evidence of the truth of any fact alleged or the validity of any claims that have been, could have been, or could be asserted.

2.2    Neither this Agreement, nor any act performed or document executed pursuant to or in furtherance of this Agreement: (a) is or may be deemed to be or may be used as an admission of, or evidence of, any fact, the validity of any claim, or of any wrongdoing or liability of the Defendants; (b) is or may be deemed to be or may be used as an admission of, or evidence of, any fault or omission of the Defendants in any civil, criminal or administrative proceeding in any court, administrative agency or other tribunal; or (c) is or shall be construed against the Defendants as an admission or concession that the consideration to be given hereunder represents the amount which could be or would have been recovered after trial.  Moreover, while neither this Agreement nor any negotiations or proceedings connected with it may be construed, offered or received in evidence in any action or proceeding of any kind as an admission or concession of any liability or wrongdoing or otherwise, this Agreement may be offered as necessary to consummate, defend or enforce this Agreement or as otherwise specifically provided in this Agreement.

3.    **Payment Of Net Proceeds of the Debtor's Estate.**

In full settlement and release of the Trustee's claims in the Adversary Proceedings, any other claims that could have been asserted by the Trustee, and any and all claims that have been or could have been filed or asserted by the Defendants in the NECCO Bankruptcy Case, the Parties agree to the following:  from the net proceeds of the liquidation of NECCO's assets, which the Trustee represents were $9,449,748 as of October 23, 2020 (the "**Proceeds**"), the Trustee shall retain the amount of $7,400,000 (the "**Estate Amount**") and shall pay to ACAS or ARCC (as directed by counsel for ACAS and ARRC) the sum of $2,049,748, plus any interest and additional proceeds from the liquidation of the Debtor's assets, excluding any recoveries from avoidance actions under sections 544, 545, 547, 548, 549, and 550 of the Bankruptcy Code,

Case 18-11513    Doc 837    Filed 01/30/21    Entered 01/30/21 16:47:07    Desc Main
Document    Page 1 of 12

other than claims for recovery of any unauthorized disposition of post-petition collateral, received by the Trustee after October 23, 2020 through the Final Approval Date (the "**Lender Amount**"). The Trustee shall pay or cause to be paid the Lender Amount to ACAS or ARCC, in immediately available funds, not later than ten (10) days after the Final Approval Date.

4. **Release From the Defendants.**

Effective as of the Final Approval Date and full payment of the Lender Amount, the Defendants, any successors and assigns, and any other person or entity claiming or that could claim (now or in the future) by, through or on behalf of any of them, remises, relinquishes, acquits, releases and discharges the Trustee, the Debtor, the Debtor's bankruptcy estate, and each of their agents, and attorneys, and the predecessors, successors, assigns, and agents of all such parties (but only in said parties' capacities as such) (collectively, the "**Trustee Releasees**") of and from any claim, as that term is defined in Section 101(5) of the Bankruptcy Code, actions, causes of action, rights of action, dues, sums of money, accounts, bonds, bills, covenants, contracts, controversies, agreements, promises, suits, demands, rights, damages, costs, losses, fees, judgments, debts, obligations and liabilities, of any and every kind, character, nature and/or description whatsoever, whether matured or unmatured, accrued or unaccrued, known or unknown, suspected or unsuspected, contingent or non-contingent, liquidated or unliquidated, choate or inchoate, whether or not asserted, threatened, alleged or litigated, at law, equity or otherwise, that they have or may have against the Trustee Releasees arising out of, based upon or relating to in any way: (i) the Adversary Proceedings or any acts alleged or that could have been alleged therein; (ii) the Adversary Claims; and (iii) the NECCO Bankruptcy Case, including but not limited to claims under any revolving loan agreement, term note agreements, security agreements, or any other agreements, along with any claims for rent, indemnification,

8

Case 18-11563 Doc 837 Filed 01/05/21 Entered 01/05/21 18:41:01 Desc Main Document Page 8 of 45

contribution, or deficiency and hereby release any and all liens, claims, encumbrances, and interests in any of the assets of the Debtor's estate, including, but not limited to, all claims set forth in in Claim Nos. 138-1, 139-1, 151-1, 152-1, 153-1, 154-1, 155-1, 157-1, 158-1, 158-1, 160-1, and 161-1 in the NECCO Bankruptcy Case, and any claims to the Estate Amount, which shall be retained by the Trustee free and clear of all liens, claims, encumbrances, and interests of the Defendants, provided, however, that the secured claims of ACAS or ARCC shall be preserved solely to the extent necessary for ACAS or ARCC to receive the Lender Amount as set forth in Paragraph 3 (the "**Preserved Secured Claim**").

    **5.**    **Release Of the Defendants**.

    5.1    Effective as of the Final Approval Date, the Trustee, in his capacity as trustee and on behalf of the Debtor, the Debtor's bankruptcy estate, any successors and assigns and any other person or entity claiming or that could claim (now or in the future) by, through or on behalf of any of them, remises, relinquishes, acquits, releases and discharges the Defendants, and each of their officers, directors, agents, servants, employees, affiliates, managers, shareholders, members, attorneys in the Adversary Proceedings, insurers, co-insurers and reinsurers, and the predecessors, successors, assigns, estates, heirs, personal representatives, trustees, agents, executors and administrators of all such parties (but only in said parties' capacities as such), as well as any person or entity insured under the Debtor's Directors & Officers liability insurance policies (collectively, the "**Defendant Releases**") of and from any and all actions, causes of action, rights of action, dues, sums of money, accounts, bonds, bills, covenants, contracts, controversies, agreements, promises, preferences, fraudulent conveyances, fraudulent transfers, claims, suits, demands, rights, damages, costs, losses, fees, judgments, debts, obligations and liabilities, of any and every kind, character, nature and/or description whatsoever, whether

9

matured or unmatured, accrued or unaccrued, known or unknown, suspected or unsuspected, contingent or non-contingent, liquidated or unliquidated, choate or inchoate, whether or not asserted, threatened, alleged or litigated, at law, equity or otherwise, including, without limitation, claims for breach of fiduciary duty, aiding and abetting breach of fiduciary duty, fraudulent transfer, preference or other avoidance, any other right of recovery under any provision of the United States Bankruptcy Code, or violations of any federal, state or local statutes, common law, or other laws, rules or regulations, that now exist or heretofore existed, that have been or could have been asserted or alleged in the Adversary Proceedings, or any other forum or proceeding of any kind against the Defendants (or any of them) which arise out of, are based upon or relate to, or are in connection with the Defendants' transactions or dealings with, acts or omissions relating to, and/or relationships to (i) the Trustee (but only in his capacity as Trustee of the Debtor), or (ii) the Debtor or any of its business or assets, including but not limited to any such actions, causes of action, rights of action, dues, sums of money, accounts, bonds, bills, covenants, contracts, controversies, agreements, promises, preferences, fraudulent conveyances, fraudulent transfers, preferences, claims, suits, demands, rights, damages, costs, losses, fees, judgments, variances, executions, debts, obligations and liabilities arising out of, based upon or relating to in any way: (i) the Adversary Proceedings or any acts alleged or that could have been alleged therein; (ii) the Adversary Claims; and (iii) the NECCO Bankruptcy

5.2    The Trustee, in his capacity as trustee and on behalf of the Debtor and its estate, further waives and releases any objection that the Trustee or the Debtor might have to the Preserved Secured Claim, as defined in Paragraph 4, including without limitation any claim to subordinate, recharacterize or otherwise impair in any way such Preserved Secured Claim.

10

6.    **Non-Disparagement.**

The Parties agree that they shall not disparage or otherwise take any action which could reasonably be expected to adversely affect the personal or professional reputation of any Party or of any of the Parties' current or former directors, officers, employees, agents, executives, or attorneys.   This Agreement in no way restricts or prevents any Party from providing truthful testimony concerning the other as required to enforce the terms of the Agreement or to comply with a court order or other  legal process or from providing truthful statements made in response to governmental inquiries.

7.    **Assumption of The NECCO Pension Plan.**

7.1    ARCC, the Trustee, and the Pension Benefit Guaranty Corporation ("**PBGC**") shall  enter into a tri-party agreement, substantially in the form attached hereto as **Exhibit A** (the "**Tri-Party Agreement**"), pursuant to which, inter alia (i) ARCC or an affiliated entity designated by ARCC shall assume for purposes of all applicable provisions of the Employee Retirement Income Security Act of 1974 ("**ERISA**"), as amended and Section 412 of the Internal Revenue Code of 1986, as amended, sponsorship of the frozen NECCO Pension Plan Sixth Amended and Restated NECCO Pension Plan EIN 26-1509879, Plan Number 202, Plan ID 275787 (the "**NECCO Pension Plan**"), and (ii) PBGC shall withdraw its claims against the Debtor's estate including, without limitation, Claim Nos. 100, 101, and 102 in the NECCO Bankruptcy Case.  The Tri-Party Agreement shall not require any payment by the Trustee or the Debtor's bankruptcy estate.  The Trustee shall seek Bankruptcy Court authority to enter into the Tri-Party Agreement at the same time that he seeks authority to enter into this Agreement.  If seeking  such approval of the Tri-Party Agreement requires filing such agreement with the Bankruptcy Court, the Trustee shall make such filing under seal or shall redact the Tri-Party

Agreement in a manner acceptable to ARCC. ARCC, on behalf of itself and all of its affiliates, expressly denies that it (or any of its affiliates) is or was under "common control," or a member of a "controlled group," with NECCO (within the meaning of ERISA or Section 414 of the Internal Revenue Code.

7.2     The Trustee has signed, in his capacity as Chapter 7 Trustee, Form 5500 filed with the Internal Revenue Service for 2018 and 2019. In connection with the transfer of the sponsorship of the NECCO Pension Plan to ARCC or an affiliated entity, the Trustee agrees that he will comply with the statutory fiduciary duties imposed upon "plan administrators" by Part 4 of Subtitle B of Title I of ERISA. The Trustee agrees to use reasonable efforts as a fiduciary of the NECCO Pension Plan to cooperate with the assumption of the NECCO Pension Plan by providing ARCC or its affiliated entity with all plan documents and all other related documents, records and data necessary to effectuate the assumption of sponsorship of the NECCO Pension Plan and for the administration of the NECCO Pension Plan following assumption. To the extent such documents, records and data are not within the actual possession of the Trustee but held by third parties on behalf of the Trustee, the Trustee agrees to direct such third parties to cooperate with ARCC or the affiliated entity in connection with any documents so requested. The Trustee further agrees to execute such documents as may be reasonably necessary or appropriate to effect the assumption of the obligations of the NECCO Pension Plan by ARCC or its affiliated entity (including, but not limited to, formal agreements assigning (i) sponsorship of the NECCO Pension Plan and the power to amend and terminate such plan to ARCC or its affiliated entity; (ii) the trust agreement associated with the NECCO Pension Plan to ARCC or its affiliated entity, and (iii) such service provider agreements relating to the NECCO Pension Plan as may be designated by ARCC or its affiliated entity). Trustee agrees to promptly provide a copy of all

12

current service provider contracts relating to the NECCO Pension Plan to ARCC or its designated affiliate so that a determination can be made by them regarding which contracts will be assigned. To the extent such service provider contracts are not within the actual possession of the Trustee but held by third parties on behalf of the Trustee, the Trustee agrees to direct such third parties to cooperate with ARCC or the affiliated entity in connection with any documents so requested.

**8.** **Miscellaneous.**

8.1  Incorporation of Background Paragraphs.  Background paragraphs A-H above are incorporated herein by reference and shall be part of this Agreement and not merely recitals.

8.2  IAM National Pension Fund Claim.  On September 17, 2018, IAM National Pension Fund ("IAM") filed Claim No. 148 in the amount of $1,490,237 in the NECCO Bankruptcy Case.  ARCC and ACAS represent that they paid IAM good and valuable consideration in exchange for IAM's withdrawal of Claim No. 148.  On June 10, 2020, IAM withdrew its claim in the NECCO Bankruptcy Case.  D.I. 795, Case No. 18-11217 (Bankr. D. Mass.).

8.3  Further Instruments.  The Parties acknowledge that it is their intent to consummate this Agreement and agree to cooperate to the extent reasonably necessary to effectuate and implement all terms and conditions of this Agreement and, except as otherwise required herein, to exercise their commercially reasonable efforts to accomplish the terms and conditions of the Agreement, including executing any further documentation and taking such further action as may be reasonably necessary to further effectuate or carry out the intent of this Agreement.

Case 18-11317  Doc 831  Filed 07/30/07  Entered 07/30/07 18:17:07  Desc Main
Document  Page 13 of 45

8.4     Confidentiality.  All agreements made and orders entered during the course of the Adversary Proceedings relating to the confidentiality of information shall survive this Agreement.

8.5     Amendment.  This Agreement may be amended or modified only by a written instrument signed by or on behalf of all Parties or their respective successors-in-interest.

8.6     Integration.  This Agreement constitutes the entire agreement between the Parties and no representations, warranties or inducements have been made to any Party concerning this Agreement other than the representations, warranties and covenants contained and memorialized herein.

8.7     Counterparts.  This Agreement may be executed in one or more counterparts.  All executed counterparts and each of them shall be deemed to be one and the same instrument. Signatures by facsimile or scanned PDF shall have the same effect as original signatures.

8.8     Advice of Counsel.  Each Party to this Agreement has had the opportunity to discuss the matter with legal counsel and enters into this Agreement only after such consultation.

8.9     Binding.  This Agreement shall be binding upon, and inure to the benefit of, the successors and assigns of the Parties.

8.10    Dismissal of Claims.  Upon entry of the Approval Order, the Trustee's claims against the Defendants in the Adversary Proceedings shall be deemed settled and dismissed, with prejudice, pursuant to Rule 41 of the Federal Rules of Civil Procedure, made applicable to the Adversary Proceedings pursuant to Rule 7041 of the Federal Rules of Bankruptcy Procedure.

8.11    Retention of Jurisdiction; Enforcement of the Agreement.  The Parties request that this Agreement, upon approval, be incorporated in the Approval Order or otherwise entered as an order of the Bankruptcy Court in the NECCO Bankruptcy Case.  The Parties further agree that

the Bankruptcy Court in the NECCO Bankruptcy Case shall retain exclusive jurisdiction to enforce this Agreement, provided, however, that the if the Bankruptcy Court shall decline to exercise such jurisdiction, the United States District Court for the District of Massachusetts shall have jurisdiction to enforce this Agreement.

8.12    Governing Law.  Except to the extent governed by the Bankruptcy Code, this Agreement and the rights and duties of the Parties hereunder shall be governed, construed, enforced, and performed in accordance with the law of the State of Delaware, without giving effect to principles of conflicts of laws that would require the application of laws of another jurisdiction.

8.13    Authorization.  Having read and understood the foregoing, each person executing this Agreement on behalf of each respective Party warrants and represents that he/she is authorized and empowered to execute and deliver this Agreement on behalf of such Party, and consents to the foregoing terms and conditions by signing below.

IN WITNESS WHEREOF, the Parties have executed this Agreement as of the day and year set forth above.

ACAS, LLC

HAROLD B. MURPHY, Chapter 7 Trustee
of the Estates of New England Confectionery
Company, Inc.

By: Joshua Bloomstein, Authorized Signatory

ARES CAPITAL CORPORATION

By: Joshua Bloomstein, Authorized Signatory

ARES CAPITAL MANAGEMENT LLC.

By: Joshua Bloomstein, Authorized Signatory

MICHAEL MCGEE

MYUNG YI

ANUJ KHANNA

STEPHEN CHEHI

DANIEL KATZ

16

IN WITNESS WHEREOF, the Parties have executed this Agreement as of the day and year set forth above.

ACAS, LLC

_____
HAROLD B. MURPHY, Chapter 7 Trustee
of the Estates of New England Confectionery
Company, Inc.

_____
By: Joshua Bloomstein, Authorized Signatory

ARES CAPITAL CORPORATION


_____
By: Joshua Bloomstein, Authorized Signatory

ARES CAPITAL MANAGEMENT LLC.


_____
By: Joshua Bloomstein, Authorized Signatory


_____
MICHAEL MCGEE


_____
MYUNG YI


_____
ANUJ KHANNA


_____
STEPHEN CHEHI


_____
DANIEL KATZ

IN WITNESS WHEREOF, the Parties have executed this Agreement as of the day and year set forth above.

ACAS, LLC

_____
HAROLD B. MURPHY, Chapter 7 Trustee
of the Estates of New England Confectionery
Company, Inc.

_____
By: Joshua Bloomstein, Authorized Signatory

ARES CAPITAL CORPORATION

_____
By: Joshua Bloomstein, Authorized Signatory

ARES CAPITAL MANAGEMENT LLC.

_____
By: Joshua Bloomstein, Authorized Signatory

_____
MICHAEL MCGEE

_____
MYUNG YI

_____
ANUJ KHANNA

_____
STEPHEN CHEHI

_____
DANIEL KATZ

16

IN WITNESS WHEREOF, the Parties have executed this Agreement as of the day and year set forth above.

ACAS, LLC

HAROLD B. MURPHY, Chapter 7 Trustee
of the Estates of New England Confectionery
Company, Inc.

_____

By: Joshua Bloomstein, Authorized Signatory

ARES CAPITAL CORPORATION

_____

By: Joshua Bloomstein, Authorized Signatory

ARES CAPITAL MANAGEMENT LLC.

_____

By: Joshua Bloomstein, Authorized Signatory

_____

MICHAEL MCGEE

_____

MYUNG YI

_____

ANUJ KHANNA

_____

STEPHEN CHEHI

_____

DANIEL KATZ

16

IN WITNESS WHEREOF, the Parties have executed this Agreement as of the day and

year set forth above.

ACAS, LLC

_____

HAROLD B. MURPHY, Chapter 7 Trustee
of the Estates of New England Confectionery        By: Joshua Bloomstein, Authorized Signatory
Company, Inc.

ARES CAPITAL CORPORATION

_____

By: Joshua Bloomstein, Authorized Signatory

ARES CAPITAL MANAGEMENT LLC.

_____

By: Joshua Bloomstein, Authorized Signatory

_____

MICHAEL MCGEE

_____

MYUNG YI

_____

ANUJ KHANNA

_____

STEPHEN CHEHI

_____

DANIEL KATZ

16

IN WITNESS WHEREOF, the Parties have executed this Agreement as of the day and year set forth above.

ACAS, LLC

HAROLD B. MURPHY, Chapter 7 Trustee
of the Estates of New England Confectionery
Company, Inc.

_____
By: Joshua Bloomstein, Authorized Signatory

ARES CAPITAL CORPORATION

_____
By: Joshua Bloomstein, Authorized Signatory

ARES CAPITAL MANAGEMENT LLC.

_____
By: Joshua Bloomstein, Authorized Signatory

_____
MICHAEL MCGEE

_____
MYUNG YI

_____
ANUJ KHANNA

_____
STEPHEN CHEHI

_____
DANIEL KATZ

16

EXHIBIT A

**UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MASSACHUSETTS
EASTERN DIVISION**

|  |  |
|---|---|
| **In re**<br><br>**NEW ENGLAND CONFECTIONERY COMPANY, INC.**<br><br>**Debtor.** | **Chapter 7**<br><br>**Case No. 18-11217-MSH** |

**ORDER APPROVING SETTLEMENT AGREEMENT RESOLVING PENDING
ADVERSARY PROCEEDINGS AGAINST ACAS, LLC AND RELATED ENTITIES
AND AUTHORIZING TRUSTEE TO ENTER INTO RELATED AGREEMENTS**

Upon consideration of the motion (the "**Motion**") of Harold B. Murphy, the Chapter 7 trustee (the "**Trustee**" or "**Chapter 7 Trustee**") of New England Confectionery Company, Inc. ("**NECCO Candy**" or the "**Debtor**"), for the entry of an order pursuant to Rule 9019 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**") approving he Settlement Agreement dated as of December __, 2020 (the "**Settlement Agreement**")[1] between and among the Trustee and ACAS, LLC ("**ACAS**"), Ares Capital Corporation ("**ARCC**"), Ares Capital Management LLC, Michael McGee, Myung Yi, Anuj Khanna, Stephen Chehi, Daniel Katz, and nominal defendants NECCO Realty Investments, LLC, NECCO Realty MA I LLC, NECCO Realty MA II LLC, NECCO Realty MA III LLC (collectively, the "**Defendants**") and authorizing the Trustee to enter into certain related agreements which are in furtherance of the terms of the Settlement Agreement (the "**Related Agreements**"); the Court having reviewed the Motion and considered argument in support of such Motion; and it further appearing that the relief sought in the Motion is appropriate based on the record of the hearing held before this Court; and after due deliberation

---

[1] Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Settlement Agreement.

and sufficient cause appearing therefor; the Court hereby makes the following findings of fact and

conclusions of law.  The findings and conclusions set forth herein constitute the Court's findings

of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this

proceeding pursuant to Bankruptcy Rule 9014.  To the extent any of the following findings of fact

constitute conclusions of law, they are adopted as such.  To the extent that any of the following

conclusions of law constitute findings of fact, they are adopted as such.

**FINDINGS OF FACT:**

A.    On April 3, 2018 (the "**Petition Date**"), three (3) of NECCO Candy's trade

creditors filed an involuntary petition against NECCO Candy in the United States Bankruptcy

Court for the District of Massachusetts (the "**Court**"). On April 19, 2018, the Court held a hearing,

entered an order for relief, and granted a motion to convert the case to Chapter 11 (the

"**Bankruptcy Case**").  On April 20, 2018, the Court authorized the appointment of the Trustee as

Chapter 11 Trustee for NECCO Candy.  On January 15, 2019, upon motion by the Chapter 11

Trustee, the case was converted to a case under Chapter 7 and the Trustee was appointed Chapter

7 Trustee of NECCO Candy.

B.    The Defendants have filed multiple claims against the Debtor and the Debtor's

estate including without limitation, Claim Nos. 138-1, 139-1, 151-1 through 155-1, 157-1 through

159-1, and 160-1 on account of among other things, amounts purported to be loaned to the Debtor

by ACAS, asserted indemnification rights, and rent and related charges asserted to be due under a

certain lease of the Debtor's premises.

C.    Following investigation, the Trustee commenced two actions against the

Defendants, respectively captioned as *Murphy v. ACAS, LLC, et al*., Adv. Proc. No. 18-01140 and

*Murphy v. ACAS, LLC, et al*., Adv. Proc. No. 19-01011 in which the Trustee seeks to disallow the

2

Defendants' claims against estate, certain affirmative recoveries against the Defendants, and related relief (collectively, the "**Adversary Proceedings**").

D.      In Adversary Proceeding 18-01140, against ACAS, NECCO Realty Investments LLC, and NECCO Realty (the "**Debt Action**"), the Trustee alleges, among other things, that ACAS, which was an indirect shareholder of and a lender to NECCO Candy, caused NECCO Candy to take certain actions and to enter into certain transactions that, the Trustee claims, were intended to benefit ACAS rather than NECCO Candy.  As a result of its alleged conduct the Trustee asserts twenty-eight (28) counts against the Defendants in the Debt Action including, among others, that ACAS should be held liable for breach of fiduciary duty; that ACAS's claims against NECCO Candy should be disallowed, equitably subordinated or recharacterized; that payments allegedly made to or for the benefit of ACAS should be avoided under fraudulent transfer and preference theories; that various entities should be consolidated with one another; that the Trustee should obtain the benefit of certain value that was received by NECCO Realty; and that NECCO Realty's rent claim against NECCO Candy should also be disallowed.

E.      In Adversary Proceeding 19-01011, against ACAS, ARCC, Ares Capital Management LLC, and certain Defendants who served as directors and officers of the Debtor (the "**D&O Action**"), the Trustee asserts that those officers and directors of NECCO Candy breached their fiduciary duty by permitting certain transactions to take place, and preventing others from taking place.  As a result of the alleged conduct, the Trustee asserts four (4) counts for breach of fiduciary duties against various Director Defendants in the D&O Action relating to and in connection with (a) the Cannon Deal, (b) the termination of the Revere Lease and the imposition of the Atlantic Lease, and (c) the liquidation of NECCO Candy's assets.  The Trustee asserts six

(6) corresponding aiding and abetting actions against ACAS, ARCC, and Ares Capital Management, LLC.

     F.     The Defendants dispute that they engaged in any wrongdoing, breached any fiduciary duties, violated any laws, statutes or regulations, or that the Trustee is entitled to relief on any claims brought or that could have been brought in the Adversary Proceedings.

     G.     On November 5, 2018, the Defendants filed motions to dismiss the Adversary Proceedings.  The Trustee filed oppositions to those motions.  After hearing, the Bankruptcy Court entered an order granting in part and denying in part the Defendants' motion in the Debt Action. DI 44, No. 18-01140.  On August 16, 2019, the Trustee filed an amended complaint in that proceeding.  After hearing, the Bankruptcy Court entered an order granting in part and denying in part the Defendants' motion in the D&O Action.  DI 63, No. 19-01011.  On February 14, 2020, the Trustee filed an amended complaint in that matter.  The Defendants in the Debt Action subsequently filed a separate motion to dismiss Counts VI-XVI, XIII, and XXV of the Trustee's amended complaint.  The Defendants in the D&O Action have answered the Trustee's complaint.

     H.     The Trustee and the Defendants have engaged in good faith negotiations with respect to resolution of the Defendant's claims against the estate and the claims asserted in the Adversary Proceedings, with the aim of resolving all outstanding disputes between the Trustee, the Debtor, the Debtor's bankruptcy estate, and the Defendants.

     I.     Following their negotiations and an all-day mediation session on September 9, 2020, the Trustee and the Defendants have reached a comprehensive settlement of all of their outstanding disputes, as memorialized in the Settlement Agreement. The Related Agreements effectuate certain material provisions of the Settlement Agreement relating to the assumption of a certain pension plan.

4

## CONCLUSIONS OF LAW:

1.      This Court has subject matter jurisdiction to consider the Motion and the relief requested therein, in accordance with 28 U.S.C. §§157 and 1334.

2.      Venue for the consideration of the Motion is properly laid in this judicial district pursuant to 28 U.S.C. §1409.

3.      Proper, timely, adequate and sufficient notice of the Motion, the hearing thereon and the related objection deadline has been given in accordance with Bankruptcy Rules 2002 and 9019. The foregoing notice constitutes good, appropriate and sufficient notice, and no other or further notice need be given.

4.      The Court has considered the probability of success with respect to the claims of the Defendants against the Debtor's estate and the claims asserted in the Adversary Proceedings, the complexity of the related litigation, and the attendant expense, inconvenience and delay, as well as the paramount interests of creditors in this proceeding. The Court has also considered and credited the opinion of the Trustee and his counsel in determining whether the proposed Settlement Agreement is fair and equitable.

5.      The Settlement Agreement falls well above the lowest point in the range of reasonableness with respect to potential litigation outcomes. The Settlement Agreement is fair, reasonable, equitable and in the best interests of the Debtor and its bankruptcy estate. The Trustee exercised reasonable and appropriate business and legal judgment in determining to enter the Settlement Agreement.

6.      The Related Agreements are necessary to effectuate the terms of the Settlement Agreement and the Trustee's request for authority to enter into the Related Agreements is warranted and should be granted.

5

7.      The Settlement Agreement will confer a significant benefit on the Debtor and its bankruptcy estate.

For all of the foregoing reasons, it is hereby

**ORDERED** that all objections to the Motion are overruled; and it is further

**ORDERED** that the Motion is granted in its entirety; and it is further

**ORDERED** that the Settlement Agreement is approved, and the parties to the Settlement Agreement are authorized to take such action as is necessary to effectuate the terms of the Settlement Agreement; and it is further

**ORDERED** that the Trustee is authorized to execute and enter into the Related Agreements and to take such further actions as are reasonably necessary to effectuate the terms of the Settlement Agreement; and it is further

**ORDERED** that this Court shall retain jurisdiction over any and all disputes arising under or otherwise relating to this Order.

Dated:          Boston, Massachusetts
                   _____, 2021


                   _____
                   Honorable Melvin S. Hoffman,
                   United States Bankruptcy Judge

## SETTLEMENT AGREEMENT

This Settlement Agreement ("Agreement"), effective as of the Effective Date (defined below), is entered into by ACAS, LLC ("ACAS"); Necco Holdings, Inc. ("NHI"), ███████ ███████████████████████████████████████████████████████████████████ Harold B. Murphy acting in his capacity as chapter 7 trustee of the estate of the New England Confectionary Company, Inc. (the "Trustee"); and the Pension Benefit Guaranty Corporation, a wholly owned United States government corporation and agency of the United States ("PBGC", and collectively with ACAS, NHI and the Trustee, the "Parties").

## RECITALS

New England Confectionary Company, Inc. ("NECCO") sponsors and maintains the Sixth Amended And Restated NECCO Pension Plan (the "Plan").

On April 17, 2018, NECCO filed a voluntary petition for relief under Chapter 7 of Title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the District of Massachusetts (the "Bankruptcy Court").

The Trustee is performing the obligations of the Plan's administrator pursuant to 11 U.S.C. § 704(a)(11).



The Parties are in a dispute ████████████████████████████████████████

██████████████████████████████

The Parties have previously exchanged a draft Non-Binding Term Sheet (the "Term Sheet") in an effort to move toward resolution of such dispute.

As contemplated in the Term Sheet superseded hereby, the Parties have agreed to settle such dispute on the terms and subject to the conditions set forth hereinbelow.

**NOW, THEREFORE**, in consideration of the foregoing, and other good and valuable consideration, the Parties agree as follows:

1.     <u>**COMMITMENTS BY ACAS AND NHI**</u>

**A. Assumption of Plan Sponsorship by NHI**

As soon as practicable but in no event later than five Business Days after the Effective Date (as defined below), ACAS shall cause NHI to and NHI shall, pursuant to the terms of an assumption agreement which ACAS, NHI and the Trustee shall execute (the "Assumption Agreement"), assume for purposes of all applicable provisions of the Employee Retirement Income Security Act of 1974, as amended ("ERISA") and the Internal Revenue Code of 1986, as amended (the "Code") including without limitation Sections 412 and 430 thereof, sponsorship of the Plan from NECCO, including the power to amend and terminate the Plan by action of NHI subject to the requirements of ERISA (such assumption, the "Plan Assumption" and the date thereof, the "Assumption Date"). ACAS or NHI shall provide to PBGC evidence of the Plan Assumption ██████████████

█████████████████████████████████████████████████████████████████████

███████████████████████████████████████████████

**B. Make Up Contribution**

Within ten Business Days after the Assumption Date, NHI shall make a contribution to

the Plan equal to ███████████████████████████████████████████████

████████████████████████████████████████████████████████████████

███████████ (the "<u>Make Up Contribution</u>"; the date of such contribution, the

"<u>Contribution Date</u>").



██████████████████████████████████████████████

## 2.    **COMMITMENTS BY PBGC**

### A.  Release

Upon the later of the Plan Assumption Date and the Contribution Date, PBGC, on behalf of itself, its successors, and their officers, directors, employees, agents, representatives, and attorneys, shall be deemed to withdraw, release, remise, forgive, acquit, settle, compromise and forever discharge the Trustee, NECCO, NECCO's bankruptcy estate, and related parties ███████████████████████████ ██████████████████████████████████████████ ██████████████████████████████████████████ ████████████████████████████████  from and against any and all claims of every kind or nature whatsoever, relating in any way to the Plan, including, without limitation, filed Claim Nos. 100-1, 101-1, and 102-1 (PBGC shall withdraw such filed Claims as soon as practicable following the effectiveness of this release). ████████████████████████████████████ ██████████████████████████████████████████ █████████████████████.

### B.  Acknowledgement

Other than payment of the Make Up Contribution, PBGC represents that it is not aware of any action that is required for the Plan or the sponsor thereof to presently come into

compliance with Title IV of ERISA and the minimum funding standards set forth in Title I of ERISA and the Code.

**C.  No Further Claims**

PBGC agrees that, upon payment of the Make Up Contribution to the Plan after the Assumption Date, PBGC will have no claims relating to the Plan against ACAS or NHI ███████████████████████████████████████ or any officers or employees thereof or any other ACAS affiliates that arose prior to the Assumption Date. ████████████ ████████████████████████████████████████████ ████████████████████████████████████████████ ████████████████████████████████████████████ ███████████████████ .

████████████████████████████████████████████ ████████████████████████████████████████████ ████████████████████████████████████████████ ███████████████████ .

**3.    COMMITMENTS BY THE TRUSTEE**

**A.  All Necessary Actions**

The Trustee agrees to take all actions reasonably necessary to expeditiously cause the transfer of sponsorship from NECCO to NHI, including, but not limited to, entering into the Assumption Agreement with ACAS and NHI as contemplated by Section 1.A. hereof and making any required governmental filings.

**B. Court Approval**

The Trustee shall seek Bankruptcy Court authority to enter into this Agreement at the same time the Trustee seeks Bankruptcy Court approval of that certain settlement agreement between the Trustee and ACAS, Ares Capital Corporation, Ares Capital Management LLC, et al ███████████████████████

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████ .

### 4. <u>MISCELLANEOUS PROVISIONS</u>

**A. Specific Performance**

The Parties agree that irreparable damage for which monetary relief, even if available, would not be an adequate remedy, would occur in the event that any provision of this Agreement is not performed in accordance with its specific terms or is otherwise breached, including if a Party fails to take any action required of it hereunder to consummate the transactions contemplated by this Agreement.  To the fullest extent permitted by law, the Parties acknowledge and agree that (i) the Parties shall be entitled to seek an injunction or injunctions, specific performance or other equitable relief to prevent breaches of this Agreement and to enforce specifically the terms and provisions hereof, without proof of damages or otherwise, this being in addition to any other remedy to which they are entitled under this Agreement, ██████, or at law or in equity, and (ii) the right of specific enforcement is an integral part of the transactions contemplated by this Agreement and without that right, the Parties would not have entered into this Agreement.  The Parties

agree not to assert that a remedy of specific enforcement is unenforceable, invalid, contrary

to law or inequitable for any reason, and not to assert that a remedy of monetary damages

would provide an adequate remedy or that the Parties otherwise have an adequate remedy

at law.  The Parties acknowledge and agree that any party seeking an injunction or

injunctions to prevent breaches of this Agreement and to enforce specifically the terms and

provisions of this Agreement shall not be required to provide any bond or other security in

connection with any such order or injunction.

### B.  Successors and Assigns

This Agreement shall be binding upon and shall inure to the benefit of the successors

and assigns of each Party.  No assignment or delegation of the obligations hereunder shall

be made by any Party without the prior written consent of the other Parties, except by

operation of law; provided, however, that ACAS or NHI may, without consent, assign or

delegate any obligations hereunder, except those under Section 1 hereof, to an affiliate.

### C.  No Third Party Beneficiaries Except the Plan

Nothing in this Agreement is intended or may be construed to give any person or entity,

other than ACAS, NHI, PBGC, the Plan, and the Trustee and their respective successors,

any legal or equitable right, remedy, or claim under or in respect to this Agreement or any

conditions and provisions contained herein.  This Agreement and any conditions and

provisions hereof are intended to be for the sole and exclusive benefit of ACAS, NHI,

PBGC, the Plan, and the Trustee and their respective successors, and for the benefit of no

other person or entity.  Nothing expressed or mentioned in or to be implied from this

Agreement gives any other person or entity any legal or equitable right, remedy, or claim

against the Parties under or in respect of this Agreement.

### D.  No Admissions

This Agreement shall not operate as an admission of liability, or of any fact, by any

Party.  Neither this Agreement nor any action taken pursuant to this Agreement may be

offered or received in evidence in any action or proceeding as an admission of liability or

wrongdoing by any Party except in connection with any Party's obligations hereunder █████

███████████.  No Party may seek to offer this Agreement, or any communications

related to it, as evidence in any adversary proceeding or other litigation (other than

proceedings to enforce this Agreement ██████████).

### E.  Amendments

This Agreement may not be changed, modified or altered except in writing signed by

all Parties.

### F.  Entire and Integrated Agreement

████████████████████████████, the Parties agree that this

Agreement represents the sole and exclusive agreement between the Parties with respect

to all matters set forth herein and that all prior communications, representations,

undertakings and understandings with respect hereto including, without limitation, the

Term Sheet, are merged into and superseded by this Agreement.

### G.  Severability

If any provision of this Agreement, or the application thereof, shall for any reason or

to any extent be construed by a court of competent jurisdiction to be invalid or unenforceable, then the remainder of this Agreement, and application of such provisions to other circumstances, shall remain in effect if both the economic and legal substance of the transactions contemplated thereby are not materially affected in any manner adverse to the Parties.  Otherwise, the Parties shall negotiate in good faith to rewrite any such provision so as to, as nearly and fairly as possible, approach the economic and legal substance originally intended.

### H.  Waiver of Breach

Any waiver by a Party of a breach shall be effective only if made in writing and duly executed by the Party alleged to have waived the breach.  The waiver by any Party of a breach by another Party of any provision of this Agreement shall not operate or be construed as a waiver of any subsequent breach.

### I.  Consideration

The Parties agree that sufficient consideration has passed among them by virtue of this Agreement, including the releases, promises, payments and other provisions herein, all of which the Parties deem valid, valuable and enforceable.

### J.  Notices

All notices, demands or other communications which may be or are required to be given under this Agreement shall be in writing and shall be given electronically and by a nationally recognized overnight delivery service, addressed to the Party who is to receive same (or to such other address as any Party shall notify the other Party by notice given in accordance with this Section 4.I.) as follows:

As to ACAS:



As to NHI:



As to the PBGC:



As to the Trustee:



**K.  Joint Drafting**

Each of the Parties participated in drafting this Agreement, and each has read, fully

reviewed, and understands each of the provisions of this Agreement.  Each Party has relied

on the advice and representation of competent legal counsel of its own choosing in

connection with the drafting and execution of this Agreement.  Therefore, the language of

this Agreement shall not be presumptively construed in favor of or against any Party in

accordance with any rule of law, legal decision or doctrine.

**L.   Governing Law; Jurisdiction and Venue; No Jury**

This Agreement shall be governed by and construed and enforced in accordance with ERISA, the Code and any other applicable federal law and to the extent not preempted by federal law, the laws of the Commonwealth of Massachusetts, without regard to Massachusetts's choice of law provisions.   To the fullest extent permitted by law, the Parties irrevocably agree to submit to the jurisdiction of the Bankruptcy Court in the event that any action or proceeding is brought with respect to or in connection with this Agreement and agree that the Bankruptcy Court shall be the exclusive venue for any such action or proceeding.   In the event that the Bankruptcy Court determines that either jurisdiction or venue is inappropriate, the Parties agree that to the fullest extent permitted by law, jurisdiction and venue under this paragraph shall instead be in the United States District Court, District of Massachusetts.   To the fullest extent permitted by law, each of the Parties waives any objection that they may now or hereafter have to the venue of such action or proceeding in such court or that such action or proceeding was brought in an inconvenient court and agree not to plead or claim the same.

**TO THE FULLEST EXTENT PERMITTED BY LAW, THE PARTIES HEREBY KNOWINGLY, VOLUNTARILY AND INTENTIONALLY WAIVE ANY RIGHT THEY MAY HAVE TO A TRIAL BY JURY IN RESPECT OF SUCH ACTION OR PROCEEDING.**

**M. Section Headings**

The section headings contained in this Agreement are for reference purposes only and

shall not affect in any way the meaning or interpretation of this Agreement.

### N.  Pronouns

All references made and all pronouns used herein shall be construed in the singular or plural and in such gender as the context or circumstances require.

### O.  Voluntary Execution

This Agreement is executed voluntarily by each of the Parties. At the time of the execution of this Agreement, each of the Parties acknowledges that it was not under duress or undue influence and that he or it has relied upon the advice of competent legal counsel of he or its own choosing in connection with the execution of this Agreement.

### P.  Authority of Signatories

The individuals signing this Agreement and the Party on whose behalf such individuals are signing, hereby represent and warrant that they are empowered and authorized to sign on behalf of and bind the Party for whom they have signed.

### Q.  Execution in Counterparts

This Agreement may be executed in one or more counterparts, each of which shall, for all purposes, be deemed to be an original and all of which, when taken together, shall constitute the same instrument notwithstanding that the Parties may not have signed the same counterpart.

### R.  Electronic Signatures

This Agreement may be executed in one or more counterparts and by different Parties on separate counterparts, each of which will be deemed an original, but all of which together will constitute one and the same instrument.  Delivery of an executed counterpart

by emailed PDF file ███████████████████████████████████████████

████████████████████████████████████████████████████████████

███████████████████████████████████ will be equally as effective as delivery of an

original executed counterpart.

**S.   Cooperation; Further Assurances;** ████████████

The Parties agree to reasonably cooperate in the implementation of this Agreement.

From time to time, as and when reasonably requested by any Party hereto, any other Party

hereto shall execute and deliver, or cause to be executed and delivered, all such documents

and instruments and shall take, or cause to be taken, all such further or other actions as

such other Party may reasonably deem necessary or desirable to consummate the

transactions contemplated by this Agreement. ████████████████████████

██████████████████████████████████████████████████████████

████████████████████████████████.

**T.   Certain Definitions**

"<u>Effective Date</u>" shall mean the date upon which all of the Parties have exchanged

executed signature pages or, if later, the date that the Bankruptcy Court enters an order

approving this Agreement.

"<u>Business Day</u>" means any day other than Saturday, Sunday, federal holiday or other

day on which PBGC is authorized or required by law, executive order or government

decree to be closed.

[Remainder of Page Left Intentionally Blank]

IN WITNESS WHEREOF, the Parties have caused this Agreement to be executed on the date(s) indicated below their respective signatures.

ACAS, LLC:

By:_____

Name:_____

Title:_____

Date:_____

IN WITNESS WHEREOF, the Parties have caused this Agreement to be executed on the date(s) indicated below their respective signatures.

NECCO Holdings, Inc.:

By:_____

Name:_____

Title:_____

Date:_____

IN WITNESS WHEREOF, the Parties have caused this Agreement to be executed on the date(s) indicated below their respective signatures.

PBGC:

By:_____

Name:_____

Title:_____

Date:_____

IN WITNESS WHEREOF, the Parties have caused this Agreement to be executed on

the date(s) indicated below their respective signatures.


Chapter 7 Trustee for the estate of NECCO:


By:_____


Name:__Harold B. Murphy_____


Title:__Bankruptcy Trustee_____


Date:_____